UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

        Plaintiff,

v.                          CASE NO.  8:12-CV-1837-T-17MAP

MARVIN I. KAPLAN, etc.,
et al.,

        Defendants.

_____/

MARVIN I. KAPLAN, etc.,
et al.,

   Counterclaim/Crossclaim Plaintiffs,

v.

REGIONS BANK, etc., et al.,

   Counterclaim/Crossclaim Defendants.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 99 | Motion to Strike or Dismiss Counts XIX and XX (FBA) |
| Dkt. 110 | Response |
| Dkt. 100 | Motion to Dismiss Amended Crossclaims or Motion to Strike, or Motion for More Definite Statement (Wells Fargo Bank, N.A.)(Counts XIV, XVI, XVIII) |
| Dkt. 132 | Response |

| Dkt. 102 | Motion to Strike Counts XXI, XXII, XXIII of Counterclaim/Crossclaim (Regions, Shaw) |
| Dkt. 130 | Response |
| | |
| Dkt. 106 | Motion to Dismiss Amended Crossclaims/Counterclaims Against BBG (Bridgeview Bank Group) |
| Dkt. 121 | Response |
| | |
| Dkt. 123 | Motion to Strike Re-Pled Counts I and III and to Dismiss Amended Crossclaims (Starr) |
| Dkt. 131 | Response |

Counterclaim/Crossclaim Defendants Florida Bankers Association ("FBA"), Wells Fargo Bank, N.A. ("WF"), Regions Bank ("RB"), Robert Shaw ("Shaw"), Bridgeview Bank Group ("BBG"), and Charles L. Starr III a/k/a Larry Starr ("Starr") move to dismiss or strike various Amended Counterclaims/Crossclaims asserted in the Amended Counterclaim and Crossclaims ("AC/C") (Dkt. 93) filed by Counterclaim/Crossclaim Plaintiffs Marvin Kaplan, R1A Palms, LLC ("R1A"), Triple Net Exchange, LLC ("TNE"), MK Investing, LLC ("MK"), and BNK Smith, LLC ("BNK") ("the Investment Companies").

The Amended Counterclaim and Crossclaims (Dkt. 93) include the following claims:

| Count I | Fraud | Starr, T. Smith, SAA |
| Count II | Conspiracy to Defraud | Starr, T. Smith, G. Smith, L. Smith, Bridgeview, SAA |
| Count III | Negligent Misrepresentation | Starr, T. Smith, SAA |
| Count IV | Violation of 18 USC Sec. 1962(c) and Sec. 1964 | Starr, T. Smith, G. Smith, L. Smith, Bridgeview, SAA |
| Count V | Violation of 18 U.S.C. Sec. 1962(d) and Sec. 1964 | Starr, T. Smith, G. Smith, L. Smith, Bridgeview, SAA |

Case No. 8:12-CV-1837-T-17MAP

| Count VI | Violation Fla. Stat. 772.103(3) and 772.104 | T. Smith, L. Smith, Bridgeview, SAA |
|---|---|---|
| Count VII | Violation Fla. Stat. 772.103(4) and 772.104 | T. Smith, L. Smith, G. Smith, Bridgeview, SAA |
| Count VIII | Violation of Fla. Stat. 772.11 | T. Smith, G. Smith, L. Smith, SAA |
| Count IX | Conversion | T. Smith, G. Smith, L. Smith, SAA |
| Count X | Violation of FDUTPA | T. Smith, G. Smith, L. Smith, Bridgeview, SAA |
| Count XI | Violation Fla. Stat. 68.065 | SAA |
| Count XII | Breach of Contract | SAA, T. Smith, G. Smith |
| Count XIII | Breach of UCC 4-302(A) | Bridgeview |
| Count XIV | Breach of UCC 4-302(A) | Wells Fargo |
| Count XV | Breach of 12 CFR Part 229 | Bridgeview |
| Count XVI | Breach of 12 CFR Part 229 | Wells Fargo |
| Count XVII | Negligence | Bridgeview |
| Count XVIII | Negligence | Wells Fargo |
| Count XIX | Fraud | Bridgeview |
| Count XX | Negligent Misrepresentation | Bridgeview |
| Count XXI | Defamation Per Se | Regions, FBA, Shaw |
| Count XXII | Invasion of Privacy | Regions, FBA, Shaw |
| Count XXIII | Negligence/Negligent Misrepresentation | Regions |

Case No. 8:12-CV-1837-T-17MAP

The Court previously ruled on Motions to Dismiss filed by Counterclaim/Crossclaim Defendants (Dkt. 84).

I. Standard of Review

A. Rule 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570.   A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  Two working principles underlie Twombly.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556.  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

4

Case No. 8:12-CV-1837-T-17MAP

B.  Rule 12(f)

In reviewing a Motion to Strike, "a court will not exercise its discretion ... unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  Dennis v. Northwestern Mutual Life Ins. Co., 2006 WL 1000308 (M.D. Fla. 2006) (citing Nankivil v. Lockheed Martin Corp. 216 F.R.D. 689, 691 (M.D. Fla. 2003)).

Courts have defined "immaterial" or "impertinent" for the purposes of conducting a Rule 12(f) analysis.   An allegation which has no value in developing the issues in a case is "immaterial."   Oaks v. City of Fairhope, 515 F.Supp. 1004, 1032 (S.D. Ala.1981) (quoting 2A Moore's Federal Practice P 12.21(1) at 2420 (2d ed.1979)). Allegations which are "'not relevant' to the issues 'involved in the case and which could not be put in issue or be given in evidence between the parties'"  are "impertinent." Id.

C.  Rule 12(e)

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.  The motion must...point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

D.  Rule 9(b)

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity."  To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents or

Case No. 8:12-CV-1837-T-17MAP

misrepresentations made; (2) the time and place of and the person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud. Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997). In Brooks the Eleventh Circuit Court of Appeals concluded that the complaint alleging a RICO claim did not meet the Rule 9(b) particularity standard because it was devoid of specific allegations with respect to each defendant; the plaintiffs lumped together all of their defendants in their allegations of fraud. id. at 1381. "[I]n a case involving multiple defendants...the complaint should inform each defendant of the nature of his alleged participation in the fraud." Id.

E. Consideration of Documents Attached to the Complaint or Incorporated

The Court limits its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court may consider documents which are central to plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. Speaker v. U.S. Dept of Health and Human Services Centers for Disease Control and Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010); SFM Holdings, Ltd. v. Banc of America Securities, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Techs., Inc., 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005).

Case No. 8:12-CV-1837-T-17MAP

II. Discussion

## A. Preliminary Issues

Standing includes an irreducible constitutional minimum of three elements. First, the plaintiff must have suffered an "injury in fact"–an invasion of a legally-protected interest which is: 1) concrete and particularized; and 2) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of–the injury has to be "fairly trace[able] to the challenged action of the defendant and not...th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." [Internal citations omitted]. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).   In this context, "particularized" means the injury must affect the plaintiff in a personal and individual way. Id.

1. RICO Standing

To recover under RICO, a private plaintiff must demonstrate an injury "in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). The Supreme Court has explained that the injury and causation requirements of § 1964(c) are aspects of RICO standing. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (plaintiff has standing only to the extent he has been injured by conduct constituting violation). The compensable injury flowing from a violation of 18 U.S.C. Sec. 1962(c) is the harm caused by the predicate acts sufficiently related to form a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of the enterprise. Sedima at 497.

Case No. 8:12-CV-1837-T-17MAP

Other courts have determined that lack of statutory standing under RICO is not a jurisdictional issue, but one intertwined with the merits of the suit. See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 116-130 (2d Cir. 2003).

A. Individual Harm and Derivative Harm

C/C Plaintiffs include Marvin Kaplan, R1A Palms, LLC, Triple Net Exchange, LLC, MK Investing, LLC and BNK Smith, LLC.   C/C Plaintiffs, collectively referred to as "the Investment Companies" have asserted the Amended Counterclaim and Crossclaims.  The Amended Counterclaim and Crossclaims include claims for violations of federal statutes, state statutes and common law claims.  Each claim is stated in a separate Count, and each claim specifies the Defendants to whom it is directed.  The claims are directed to conduct taking place before, during and after the involvement of Marvin Kaplan and the Investment Companies with SAA and other C/C Defendants.

In the AC/C, C/C Plaintiffs allege that Kaplan is a prominent businessman developer and investor through Southwest Florida and particularly in Sarasota, Florida, where he resides (Par. 17).  C/C Plaintiffs allege that Marvin Kaplan is an individual, and at all material times, was an owner and managing member of R1A, TNE, MK, and BNK (Par. 2).  In August, 2009, Marvin Kaplan personally invested the initial sum of $50,000.00 in the alleged Ponzi scheme.  This amount was returned to Kaplan, as agreed (Pars. 68, 69).  The AC/C alleges that, as a result of the apparent success and the representations of Starr, the Smiths and SAA, Kaplan caused R1A to begin investing with the Smiths and SAA (Par. 70).  C/C Plaintiffs further allege that Kaplan formed TNE, MK and BNK for the same purpose, and caused TNE, MK and BNK to invest with the Smiths and SAA based on prior representations made to Kaplan by Starr and the Smiths.   C/C Plaintiffs allege that, over a period of time, the Smiths and SAA continued to offer more investments and to renew old investments, urging Kaplan through the Investment Companies to make new contracts upon the expiration of the

Case No. 8:12-CV-1837-T-17MAP

old contracts, leaving the principal sum to "ride" from contract to contract. By November, 2011, the Investment Companies had over $7,000,000.00 collectively invested and/or re-invested with the Smiths and SAA (Par. 75). C/C Plaintiffs allege that Starr, in collusion with the Smiths and SAA, would target individuals like Kaplan and his companies and offer them the bogus investment in order to steal money (Par. 56).

The Court notes that the Promissory Notes attached to the AC/C are agreements between SAA and R1A, between SAA and TNE, between SAA and MK and between SAA and BNK.

Under Florida law, a limited liability company may sue in its own name. Fla. Stat. Sec. 608.404(1). It is unclear whether the operating agreements of the C/C Plaintiff limited liability companies permit or require Marvin Kaplan as manager to sue on behalf of the limited liability companies. The AC/C does not indicate that C/C Plaintiff Marvin Kaplan is acting in a representative capacity in each Count or as an individual. The Court notes that in Count XXI (Defamation Per Se), Count XXII (Invasion of Privacy), C/C Plaintiff Marvin Kaplan is set apart as an individual; those Counts refer to "Kaplan and the Investment Companies" and state that "Kaplan and the Investment Companies are private figures (Par. 295)". This suggests to the Court that where C/C Plaintiff Marvin Kaplan is included collectively with the Investment Companies, R1A, TNE, MK and BNK, C/C Plaintiff is acting in his capacity as a manager for each entity, seeking a judgment for each corporation's alleged damages, and not in his capacity as an individual, asserting a derivative claim for damages as a shareholder or creditor of each corporation.

The Eleventh Circuit Court of Appeals has held that a complaint that does not sufficiently distinguish between injuries sustained by a plaintiff personally and those suffered derivatively is properly dismissed. Warner v. Alexander Grant & Co., 828 F.2d

Case No. 8:12-CV-1837-T-17MAP

1528, 1531 (11th Cir. 1987).   At this point, it is not clear whether C/C Plaintiffs intend to
allege harm to the Investment Companies or harm to Kaplan personally.   C/C Plaintiffs
have alleged that C/C Plaintiff Marvin Kaplan and his companies were targets of the
alleged scheme (Par. 56).   The Court notes that a plaintiff's status as creditor or
stockholder does not preclude standing for RICO violations if the plaintiff has alleged an
injury proximately caused by the defendants' acts of racketeering that target the
plaintiff.   Beck v. Prupis, 162 F.3d 1090, 1096 (11th Cir. 1998); Maiz v. Virani, 253 F.3d
641, 654-657 (11th Cir. 2001).   What harm the alleged scheme proximately caused,
and whether the harm was individual or derivative will involve factual determinations
which are beyond the scope of the pending motions to dismiss.   The allegations of the
AC/C are sufficient as to RICO standing.

## B.   Amended Counterclaim and Crossclaims

**COUNT I      FRAUD** (Fraudulent Misrepresentation)           **STARR**

The Court previously dismissed Count I without leave to amend.   The only
factual allegations of the Counterclaim/Crossclaims as to Starr were Paragraphs 21-35,
and the allegation of Par. 38.   The Court stated:

> Based on the allegations within the Counterclaim/Crossclaims, it is
> undisputed that Kaplan and the Investment Companies discussed the
> proposed investments with the Smiths/SAA, after which Kaplan and the
> Investment Companies decided to make their investments.   There are no
> allegations as to Starr's direct participation in the alleged scheme other
> than the representations identified above.   Based on the promissory notes
> attached to the Counterclaim/Crossclaims, the transactions were between
> the Investment Companies and Smiths/SAA.   Starr was not a party to the
> transactions.

In August 2009, C/C Defendant Charles L. Starr owned and managed the office

Case No. 8:12-CV-1837-T-17MAP

suite to which Marvin Kaplan had relocated his business operations (Pars. 18, 19).
Kaplan did not know Starr.  C/C Plaintiffs alleged that Starr explained the investment
opportunity to Kaplan, represented that he knew it was safe to invest with SAA and the
Smiths (Par. 23), and offered to introduce Kaplan to the Smiths and SAA.  C/C Plaintiffs
alleged that Kaplan agreed to and did discuss investing with the Smiths and SAA (Par.
55).   After that discussion, in August, 2009, Kaplan entered into the first transaction
with the Smiths and SAA; after the success of the initial transaction, Kaplan directed
R1A to invest with the Smiths and SAA, and later directed the other companies to do
so.   The Promissory Notes attached to the C/C show that Starr was not a party to the
transactions at issue.

To state a cause of action for fraudulent misrepresentation, a plaintiff must prove:
"(1) a false statement concerning a material fact; (2) the representor's knowledge that
the representation is false; (3) an intention that the representation induce another to act
on it; and, (4) consequent injury by the party acting in reliance on the representation."
Johnson v. Davis, 480 So.2d 625, 627 (Fla.1985).  The Rule 12(b)(6) standard requires
a plausible claim.  The Court dismissed Count I without leave to amend because of the
implausibility of the claim of fraudulent misrepresentation against Starr; no
sophisticated businessman would rely on representations made by a party known only
in his capacity as a landlord.   The only action that Kaplan took pursuant to Starr's
representations, as stated in the C/C, was to agree to meet the Smiths and discuss the
potential investment opportunity.  Kaplan entered into transactions with the Smiths and
SAA, not with Starr.

In responding to the Motion to Dismiss as to Count I, C/C Plaintiffs acknowledge
they are not pursuing Count I.

The Court did not expect C/C Plaintiffs to include the Counts which were
dismissed without leave to amend in the AC/C.  However, Count I is there.  Since C/C

11

Case No. 8:12-CV-1837-T-17MAP

Plaintiffs acknowledge they are not pursuing Count I, the Court again **dismisses** Count I without leave to amend.   Because leaving Count I in the AC/C will cause confusion, the Court **grants** the Motion to Strike.

**COUNT II          CONSPIRACY TO DEFRAUD          STARR, BBG**

The Court previously dismissed Count II as to C/C Defendants Starr and BBG, with leave to amend.

As to C/C Defendant Starr, the Court stated:

> Counterclaim/Crossclaim Plaintiffs have included no factual allegations as to when and how Starr obtained Starr's alleged knowledge of the purpose and scope of the alleged conspiracy, when and how Starr joined the alleged conspiracy, and how Starr received anything for his alleged participation.

As to C/C Defendant BBG, the Court found that the factual allegations were not clear in stating  BBG's alleged role in the scheme: 1) C/C Plaintiff's alleged direct participation but the factual allegations  indicated aiding and abetting; 2) it was unclear whether C/C Plaintiffs intended to allege an insider employee with knowledge of the scheme carried out the scheme by performing various banking functions, such as maintaining accounts, making wire transfers, and extending provisional credit, or that C/C Plaintiffs were relying on account transactions; 3) it was unclear what representations were made to C/C Plaintiffs by BBG to induce C/C Plaintiffs to wire funds.  The Court required identification of the time, place and content of such representations.

Defendant BBG moves to dismiss based on the absence of a specific allegation of BBG's direct participation, including time, place and content.

12

Case No. 8:12-CV-1837-T-17MAP

In response to the Motions to Dismiss of Starr and BBG, C/C Plaintiffs state that additional factual allegations were included in the AC/C to comply with the Court's Order.

Count II is a claim for common law conspiracy to defraud. A civil conspiracy requires: (a) an agreement between two or more parties; (b) to do an unlawful act or to do a lawful act by unlawful means; (c) the doing of some overt act in pursuance of the conspiracy; and (d) damage to the plaintiff as a result of the acts done under the conspiracy. Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997). An actionable conspiracy claim requires an actionable underlying tort or wrong. Wright v. Yurko, 446 So.2d 1162, 1164 (Fla. 5th DCA 1984). In this case, the underlying wrong is the operation of the fraudulent scheme in order to steal money from C/C Plaintiffs.

As to Starr, C/C Plaintiffs allege that at some unknown point prior to August, 2009, Starr knew the Smiths/SAA, and jointly they created the alleged fraudulent scheme. In August, 2009, Starr described the investment opportunity to Kaplan and R1A, and offered to introduce Kaplan to the Smiths/SAA; C/C Plaintiffs allege that Starr promised large returns predicated on what seemed to be a legitimate business model. Kaplan met with the Smiths, SAA, and entered into transactions with the Smiths/SAA thereafter. C/C Plaintiffs do not allege any further contact with Starr in connection with the Smiths/SAA; the Smiths/SAA made the additional offers to invest in SAA to Kaplan and his companies. The only additional allegation as to Starr is in Count IV:

> 203. Starr participated directly in the predicate acts of mail fraud insofar as he actually monitored and tracked with a log the mailings as they came and went from Kaplan's office, assisting T. Smith, G. Smith and SAA to track the transactions to ensure payment of his commissions. He also participated by drawing off commissions and compensation as the investments occurred.

The Court takes the above allegation to be C/C Plaintiffs compliance with the Court's

13

Case No. 8:12-CV-1837-T-17MAP

order to include factual allegations which state how Starr received anything for his alleged participation in the fraudulent scheme.

The Court infers that the Smiths/SAA had an office in Sarasota to which Kaplan and the Investment Companies mailed the papers for each transaction, in which Starr, on a continuing basis, tracked the investments of the Investment Companies between August, 2009 and January, 2012. Yet in November, 2011, when C/C Plaintiffs agreed to the "new investment scheme," C/C Plaintiffs allege that "the Smiths and SAA would fedex down the contracts and checks for these new transactions, to be received by the Investment Companies on the day they sent the wire(s) to the Bridgeview account.....(Par. 85). If the above allegation is intended to communicate that Starr was somehow able to monitor the mailings delivered to Kaplan's office, and mailed from Kaplan's office, by virtue of his landlord relationship with Kaplan, C/C Plaintiffs will have to include additional allegations explaining how this was accomplished.

As to BBG, C/C Plaintiffs allege that BBG participated directly through its employees, who arranged and carried out transfers between accounts, floated checks to facilitate the fraud, disregarded suspicious activity reports and induced investors to wire funds by affirming the legitimacy of the Smiths, SAA and Starr.   In the C/C (Dkt. 3), C/C Plaintiffs included Pars. 39 and 40 in the general allegations. In the AC/C, C/C Plaintiffs include Pars. 51-55, in which C/C Plaintiffs allege one or more insider employees agreed to assist with the Ponzi scheme, that BBG was provided with extra fees and monetary incentives as a direct participant, beyond merely maintaining and servicing accounts, BBG ignored suspicious activity reports for many years in exchange for extra compensation, and actively participated by carrying out the above-noted banking functions.

The Court does not understand the basis for the allegation that BBG induced

14

Case No. 8:12-CV-1837-T-17MAP

investors to wire funds by affirming the legitimacy of the Smiths, SAA and Starr. Before the events of January, 2012, wherein BBG froze the accounts of SAA and returned the checks issued to C/C Plaintiffs by marking them "Refer to Maker," the Court understands that C/C Plaintiffs wired funds from Regions Bank to BBG. The fact that SAA maintained an account at BBG and C/C Plaintiffs repeatedly wired funds to the account does not establish an agreement to participate in a fraudulent scheme with knowledge of the fraud.

The relevant time period as to the claims of C/C Plaintiffs is from August, 2009 through January, 2012. C/C Plaintiffs alleged that BBG carried out various banking functions and ignored suspicious activity reports to permit the scheme to continue, and received extra compensation for these actions. The Court does not know when the alleged fraudulent scheme commenced, or when and under what circumstances BBG joined the alleged conspiracy, If one or employees of BBG did know of the fraudulent scheme and took active steps to assist SAA/the Smiths under circumstances where it would be appropriate to impute the acts of the employees to BBG, that knowledge and participation would be sufficient for a claim under Count II.

Given the above factual scenario, there are factual issues present that could affect the Court's determination, and which the Court cannot evaluate this stage. The Court **denies** the Motions to Dismiss as to this issue.


**COUNT III          NEGLIGENT MISREPRESENTATION   STARR**

The Court previously dismissed Count III without leave to amend, based on the same allegations referred to in Count I.

C/C Plaintiffs state that C/C Plaintiffs are not pursuing this claim.

15

Case No. 8:12-CV-1837-T-17MAP

The Court again **dismisses** Count III without leave to amend, and **grants** the Motion to Strike.

**COUNT IV          VIOLATION OF 18 U.S.C. SEC. 1962(c) AND  SEC. 1964**
**STARR, BBG**

The Court previously dismissed Count IV pursuant to Starr's Motion to Dismiss, with leave to amend.  The Court noted there was no allegation that Starr participated in the predicate acts of mail fraud and wire fraud.

A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes:  (1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs,(2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme.  See Neder v. United States, 527 U.S. 1, 24–25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); United States v. O'Malley, 707 F.2d 1240, 1246–47(11th Cir. 1983).  Intent to defraud need not be shown through active misrepresentation-material omissions can be fraudulent if they are intended to create a false impression.  See Beck v. Prupis, 162 F.3d 1090, 1096 (11th Cir.1998); O'Malley, 707 F.2d at 1247.

In addition, plaintiffs must allege facts regarding defendants' intent or knowledge. Langford v. Rite Aid of Alabama, Inc., 231 F.3d 1308, 1312 (11th Cir. 2000).  These allegations need only "give rise to a strong inference that the defendants possessed the requisite fraudulent intent."  Beck v. Mfrs. Hanover Trust Co., 820 F.2d 46, 49–50 (2d Cir. 1987), overruled on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir.1989); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 949 (11th Cir. 1997).  In BCCI, the Eleventh Circuit Court of Appeals noted that plaintiff did not allege that defendants knew of the source of the funds or their ultimate beneficiary, or knew that the funds were derived from unlawful activity;

16

Case No. 8:12-CV-1837-T-17MAP

plaintiff's allegations were held insufficient to state a RICO claim. Id. at 950. It is not

sufficient for plaintiff to allege that a defendant stood to make a profit from participation.

A common method for establishing a strong inference of scienter is to allege facts

showing a motive for committing fraud and a clear opportunity to do so. Beck at 50.

Where multiple defendants are involved, the complaint must not lump together all

defendants, but rather must inform each defendant of the nature of his or her alleged

participation in the fraud. Ambrosia Coal & Constr. Co. v. Pages Morales , 482 F.3d

1309, 1317 (11th Cir. 2007).


The AC/C alleges an enterprise, an association-in-fact consisting of Starr, T.

Smith, G. Smith, L. Smith, BBG and SAA, who, with knowledge of the fraud, conducted

or participated in the conduct of the affairs of the enterprise from August, 2009 through

January 23, 2012 through repeated acts of mail fraud and wire fraud which affected

interstate commerce.   On January 23, 2012, BBG froze the accounts of SAA.

The AC/C alleges that Starr knew T. Smith, G. Smith, L. Smith and SAA at some

time prior to August, 2009 and, during that time, they agreed jointly to create the Ponzi

scheme which would generate large returns for them (Par. 42).   The U.S. Securities

and Exchange Commission defines a "Ponzi scheme" as follows:

> A Ponzi scheme is an investment fraud that involves the payment of
> purported returns to existing investors from funds contributed by new
> investors.  Ponzi scheme organizers often solicit new investors by
> promising to invest funds in opportunities claimed to generate high returns
> with little or no risk.  In many Ponzi schemes, the fraudsters focus on
> attracting new money to make promised payments to earlier-stage
> investors and to use for personal expenses, instead of engaging in any
> legitimate investment activity.

U.S. Secs. & Exch. Comm'n, Ponzi Schemes—Frequently Asked Questions,

http://www.sec.gov/answers/ponzi.htm.   The AC/C alleges that Starr, T. Smith, G.

Case No. 8:12-CV-1837-T-17MAP

Smith, L. Smith and SAA agreed to pitch the Ponzi scheme to C/C Plaintiffs Kaplan and R1A. (Par. 43).

Starr's alleged role was to pitch the scheme to new sources of money, then lead them to the Smiths and SAA with promises of large returns on the money invested (Par. 45). The ACC further alleges that Starr participated directly in acts of mail fraud by monitoring and tracking with a log the mailings as they came and went from Kaplan's office, assisting T. Smith, G. Smith, and SAA to track the transactions to ensure payment of his commissions, and participated by drawing off commissions and compensation as the investments occurred (Par. 203).

The AC/C alleges that Starr, G. Smith T. Smith and SAA selected BBG to carry out the Ponzi scheme by processing large dollar volume wires, clearing checks in a predictable fashion, issuing systematic and recurrent provisional credits and looking the other way while they manipulated the banking system float the significant and voluminous transfers that the Ponzi scheme required (Par. 47, 51). The AC/C alleges that BBG was selected because BBG, through one or more insider employees, agreed to assist in the Ponzi scheme (Par. 52). C/C Plaintiffs allege that BBG, through one or more high level employees, agreed to participate and was provided with extra fees and other monetary compensation as a direct participant in the Ponzi scheme, beyond simply being paid to maintain and service accounts (Par. 53). C/C Plaintiffs further allege that BBG became directly complicit in the scheme, allowing the other participants to use BBG as a repository and accounting system for the fraud and to look other way for many years in exchange for extra compensation related to the Ponzi scheme (Par. 54). The Court understands this to mean that one or more of BBG's high level employees, with knowledge of the scheme, participated in the scheme by either carrying out some banking function (wire transfers, clearing checks, issuing provisional credit) and/or by allowing suspicious activity to continue (disregarding suspicious activity

18

Case No. 8:12-CV-1837-T-17MAP

reports)(Pars. 53, 54).  The AC/C further alleges that BBG induced investors to wire
funds by affirming the legitimacy of Starr, G. Smith, T. Smith, L. Smith and SAA (Par.
55).

     Section 1962(c) of the RICO Act makes it unlawful "for any person employed by
or associated with any enterprise engaged in, or the activities of which affect, interstate
or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of
such enterprise's affairs through a pattern of racketeering activity ."  18 U.S.C. §
1962(c).  "[T]o establish a federal civil RICO violation under § 1962(c),  the plaintiffs
must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a
pattern (4) of racketeering activity."  Edwards v. Prime, Inc., 602 F.3d 1276, 1291–92
(11th Cir. 2010).   In addition, the plaintiffs must prove injury to [their] business or
property and must show that the defendants' substantive RICO violations caused [their]
injuries.  Williams v. Mohawk Industries, Inc., 465 F.3d 1277, 1282–83 (11th Cir. 2006)
(citing 18 U.S.C. § 1964(c)).  The United States Supreme Court has held that it is not
necessary to show reliance in addition to proximate causation.   Bridge v. Phoenix
Bond & Indemn. Co.,  553 U.S. 639, 661, 128 S.Ct. 2131, 2145 (2008).

     Under general agency rules, a corporation (principal) will be vicariously
responsible for the wrongful acts of its employees (agents) when the acts are: (1)
related to and committed within the course of employment; (2) committed in furtherance
[of the business] of the corporation; and (3) authorized or subsequently acquiesced in
by the corporation.  Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1404
(11th Cir. 1994); Quick v. Peoples Bank of Cullman County, 993 F.2d 793, 797 (11th Cir.
1993).  The Court must also consider whether the defendant derived some benefit from
its employees' RICO violations.  See Cox at 1408.

     C/C Plaintiffs allege that Starr knowingly devised the fraudulent scheme.  The
factual allegation that supports Starr's liability for mail fraud is the allegation that Starr

Case No. 8:12-CV-1837-T-17MAP

participated in acts of mail fraud by monitoring and tracking with a log the mailings as they came and went from Kaplan's office, assisting the Smiths and SAA to track the transactions to ensure payment of Starr's commissions (Par. 203).

CC Plaintiffs allege that BBG knowingly participated in the fraudulent scheme. The Court understands the factual allegations supporting BBG's knowing participation in the alleged scheme to be the allegations of actual knowledge of BBG's employees who arranged transfers between accounts of SAA/the Smiths, who processed wire transfers from the Investment Companies, who cleared checks from the Investment Companies, who issued provisional credit, and who ignored suspicious activity reports to allow the scheme to continue.

C/C Plaintiffs have alleged knowledge, participation and overt acts. After consideration, the Court **denies** the Motions to Dismiss as to this issue.

**COUNT V**     **VIOLATION OF 18 U.S.C. SEC. 1962(d) and SEC. 1964 STARR, BBG**

In the AC/C, C/C Plaintiffs allege that Starr, T. Smith, G. Smith, L. Smith, SAA and BBG entered into and conducted a conspiracy to violate 18 U.S.C. Sec. 1962(c). CC Plaintiffs incorporate all of the general factual allegations (1-186) and the allegations in Count IV (202-208).

"Section 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c)." American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1293 (11th Cir. 2010). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 950 (11th Cir. 1997). "To prove a

Case No. 8:12-CV-1837-T-17MAP

conspiracy to violate § 1962(c), a plaintiff must demonstrate that a defendant objectively manifested, through words or actions, an agreement to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity." Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1353 (11th Cir. 2008) (internal quotation marks omitted).   The existence of an agreement, as well as its objective, may be inferred from circumstantial evidence demonstrating "that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise through a pattern of racketeering activity." United States v. Browne, 505 F.3d 1229, 1264 (11th Cir. 2007).  This does not require proof that "each conspirator agreed with every other conspirator ... [or] was aware of all the details of the conspiracy." United States v. Starrett, 55 F.3d 1525, 1544. (11th Cir. 1995).... [P]articipation in a conspiracy may be inferred merely from acts which furthered its object. United States v. Kopituk, 690 F.2d 1289, 1323 (11th Cir.1982), cert. denied, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983) (citation omitted).

A civil RICO conspiracy claim requires a showing of the existence of a conspiracy, and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff.  See Bivens Gardens Office Building v. Barnett Bank of Fla., Inc., 906 F.2d 1546, 1550 n. 7 (11th Cir.1990).  The Court notes that the function of a conspiracy claim differs in criminal and civil cases.  In a criminal case, the purpose of a conspiracy charge is to punish the act of agreement itself; in a civil case, the purpose of a conspiracy claim is to impute liability.  To prove a civil conspiracy claim, a plaintiff must prove that someone in the conspiracy committed a tortious act that proximately caused the plaintiff's injury; the plaintiff can then hold the other members of the conspiracy liable for that injury. See Beck v. Prupis, 162 F.3d 1090, 1099 (11th Cir. 1998).   The civil conspiracy claim allows persons who are responsible for an injury but who did not actually participate in the injury-causing activity to be held liable.

Although C/C Plaintiffs have alleged direct participation by C/C Defendants, the

Case No. 8:12-CV-1837-T-17MAP

Court understands this Count to be an alternative to direct participation. After consideration, the Court **denies** the Motions to Dismiss as to this issue.


**COUNT VI**          **VIOLATION OF FLA. STAT. 772.103(3) AND 772.104**
                                        **STARR, BBG**

The Court previously granted the Motion to Dismiss because there was no allegation that Starr participated in the predicate acts of mail fraud. The Court noted that the analysis applied to federal RICO claims applies equally to Florida RICO claims. In addition, a Florida RICO claim requires allegation of predicate acts that violate Florida law.   Design Pallets, Inc. V. GrayRobinson, P.A., 515 F.Supp.2d 1246 (M.D. Fla. 8/6/2007).

C/C Plaintiffs incorporate the general allegations 1-186 and Pars. 202-208.

C/C Plaintiffs allege participation, directly or indirectly, in the conduct of scheme's affairs through a pattern of acts of fraud, and mail and wire fraud, in violation of Fla. Stat. 812.014. C/C Plaintiffs allege that Starr participated directly in the predicate acts of mail fraud by monitoring and tracking with a log the mailings as they came and went from Kaplan's office, assisting the Smiths and SAA to track the transactions to ensure payment of his commissions. C/C Plaintiffs further allege that Starr participated by drawing off commissions and compensation as the investments occurred.

After consideration, the Court **denies** the Motions to Dismiss as to this issue.


**COUNT VII**          **VIOLATION OF FLA. STAT. 772.103(4) AND 772.104**
                                          **STARR, BBG**

Case No. 8:12-CV-1837-T-17MAP

C/C Plaintiffs allege a conspiracy to engage in acts of fraud, mail fraud, wire fraud and violation of FS 812.014

C/C Plaintiffs incorporate all general factual allegations 1-186, and Pars. 213-218.

After consideration, the Court **denies** the Motions to Dismiss as to this issue.

**COUNT X          VIOLATION OF FDUTPA                BBG**

The Court previously granted the Motion to Dismiss this claim, with leave to amend.  It was not clear how the representation "Refer to Maker" caused C/C Plaintiffs' losses.

In addition to conspiracy to deprive Investment Companies of their money through one or more of its employees, C/C Plaintiffs allege that BBG also failed to designate proper reason for return of items, delaying the Investment Companies,  and causing the loss of the funds.

The Court takes judicial notice of the fact that BBG is a state chartered commercial bank which is not a member of the Federal Reserve System.   The Federal Deposit Insurance Corporation or the Office of Comptroller of the Currency regulates BBG, see www2.fdic.gov, and the Illinois Department of Financial and Professional Regulation Division of Banking regulates BBG.

FDUTPA does not apply to banks and savings and loan associations regulated by the state or federal government, either directly or on the basis of vicarious liability. Florida Statute Sec. 501.212(4) (2004); Bankers Trust Co. v. Basciano, 960 So.2d 773, 778-779 (Fla. 5th DCA 2007).

23

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court **grants** BBG's Motion to Dismiss as to this issue.

**COUNT XIII**  **BREACH OF UCC 4-302(A)**  **BBG**

The Court previously granted the Motion to Dismiss in part as to representations required under 12 CFR Sec. 229.30(d), with leave to amend, and otherwise denied the Motion to Dismiss.

C/C Plaintiffs allege that BBG did not return the First Set of Checks by the midnight deadline, and did not return the Second Set of Checks by the midnight deadline. C/C Plaintiffs further allege that BBG did not include a proper reason for the return as required by 12 CFR Sec. 229.30(d), and BBG is therefore accountable for the full amount of the items, $22,814,135.00.

The Court notes that the Board of Governors of the Federal Reserve has rendered an Advisory Opinion as to the designation "Refer to Maker"; there is a proposal to amend the regulation which has not been adopted at this time. The prior Commentary remains the operative guidance. However, whether this case is an appropriate case in which it is permissible to have the items returned with the designation "Refer to Maker" is a factual issue that cannot be resolved at this stage.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

Case No. 8:12-CV-1837-T-17MAP

**COUNT XIV**          **BREACH OF UCC 4-302(A)**          **WF**

The Court previously granted Motion to Dismiss in part as to allegation that WF did not return the checks as required by 29 CFR Pt. 229.30(d), with leave to amend, and otherwise denied the Motion.

C/C Plaintiffs allege that WF did not return the Third Set of Checks by the midnight deadline, and did not return them in accordance with the law, as WF did not include a proper reason for the return, as required by 12 CFR Sec. 229.30(d). C/C Plaintiffs allege that WF is accountable for the full amount of the items, $10,550,000.00.

The Court notes that C/C Plaintiffs have included additional allegations (Pars. 164-168) regarding the term "Refer to Maker" in the AC/C. C/C Plaintiffs allege that the designation "Refer to Maker" was used unlawfully in this case, as this case is not an appropriate case.

The Court notes that the Board of Governors of the Federal Reserve has rendered an Advisory Opinion as to the designation "Refer to Maker"; there is a proposal to amend the regulation which has not been adopted at this time. The prior Commentary remains the operative guidance. However, whether this case is an appropriate case in which it is permissible to have the items returned with the designation "Refer to Maker" will require an evaluation of the facts, which cannot be done at this stage.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

**COUNT XV**          **BREACH OF 12 C.F.R. Part 229**          **BBG**

Case No. 8:12-CV-1837-T-17MAP

The Court previously granted the Motion to Dismiss as to alleged noncompliance with 12 C.F.R. Part 229.30(d), with leave to amend.

The Appendix to 12 C.F.R. Part 229.30(d), provides:

> The reason for the return must be clearly indicated.   A check is identified as a returned check if the front of that check indicates the reason for return, even though it does not specifically state that the check is a returned check.   A reason such as "Refer to Maker" is permissible in appropriate cases. If the returned check is a substitute check, the reason for return must be placed within the image of the original check that appears on the front of the substitute check so that the information is retained on any subsequent substitute check.  If the paying bank places the returned check in a carrier envelope, the carrier envelope should indicate that it is a returned check but need not repeat the reason for return stated on the check if it in fact appears on the check.

C/C Plaintiffs allege that BBG did not return the First and Second Sets of Checks by the midnight deadline, and that the use of "Refer to Maker" on the returned items was unlawful in this case.  The determination of whether "Refer to Maker" was appropriate will involve an evaluation of the acts, which cannot be done at this stage.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

**COUNT XVI        BREACH OF 12 C.F.R. Part 229        WF**

The Court previously granted Wells Fargo's Motion to Dismiss in part, as to alleged noncompliance with 12 C.F.R. Part 229, with leave to amend.

C/C Plaintiffs have alleged that Wells Fargo did not return the Third Set of Checks by the midnight deadline, and the use of "Refer to Maker" was unlawful

Case No. 8:12-CV-1837-T-17MAP

because this case was not an appropriate case.

The determination of whether this case is an appropriate case will involve evaluation of the facts, which cannot be done at this stage.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.


**COUNT XVII**              **NEGLIGENCE**                          **BBG**

The Court previously granted the Motion to Dismiss in part as to the allegation of failure to return items with a proper designation.

This Count is an alternative Count to the statutory claims asserted in Count XIII and Count XV.

The thrust of this Count is that BBG did not exercise ordinary care or act in good faith in returning items without a proper designation.  The Court understands the claim to be that C/C Plaintiffs did not understand that the returned items which were returned "Refer to Maker" were dishonored items, such that the items could not be redeposited, and by delaying the understanding of C/C Plaintiffs, BBG caused financial losses to C/C Plaintiffs in the amount of the returned items.

The Eleventh Circuit has held that Article 4A "is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1274–75 (11th Cir. 2003); see also Gilson v. TD Bank, N.A., No. 10–20535, 2011 WL 294447, at *8 (S.D.Fla. Jan.27, 2011) (holding Article 4A did not bar negligence claim).   In Regions Bank v. Provident

Case No. 8:12-CV-1837-T-17MAP

Bank, the Eleventh Circuit Court of Appeals agreed with Regions Bank that Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally.   The Eleventh Circuit found that, after reviewing the record, Regions did not establish a genuine issue of material fact as to whether Provident knew or should have known the funds it received were fraudulently obtained.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

**COUNT XVIII        NEGLIGENCE                             WF**

The Court previously granted the Motion to Dismiss in part as to the allegation of failure to return items with a proper designation.

This Count is an alternative Count to the statutory claims asserted in Count XIV and Count XVI.

The Eleventh Circuit has held that Article 4A "is not the exclusive means by which a plaintiff can seek to redress an alleged harm arising from a funds transfer." Regions Bank v. Provident Bank, Inc., 345 F.3d 1267, 1274–75 (11th Cir. 2003); see also Gilson v. TD Bank, N.A., No. 10–20535, 2011 WL 294447, at *8 (S.D.Fla. Jan.27, 2011) (holding Article 4A did not bar negligence claim).  In Regions Bank v. Provident Bank, the Eleventh Circuit Court of Appeals agreed with Regions Bank that Article 4A does not preempt a state law claim if money is transferred by wire to a party that knows or should have known that the funds were obtained illegally.   The Eleventh Circuit found that, after reviewing the record, Regions did not establish a genuine issue of material fact as to whether Provident knew or should have known the funds it received were fraudulently obtained.

Case No. 8:12-CV-1837-T-17MAP

The Court does not understand the incorporation of additional allegations 221-224, 233-236.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

**COUNT XIX        FRAUD (Fraudulent Misrepresentation)        BBG**

The Court previously dismissed this Count, with leave to amend.  The Court stated:

> The factual basis for this claim is not clear.  Counterclaim/Crossclaim Plaintiffs shall specify the representations made, who made them, when, where and in what context the representations were made, and how the representations caused injuries to Counterclaim/Crossclaim Plaintiffs.

To establish a claim for fraudulent misrepresentation, a plaintiff must show:

1) a false statement concerning a material fact;
(2) the representer's knowledge that the representation is false;
(3) an intention that the representation induce another to act on it; and
(4) consequent injury by the party acting in reliance on the representation.

See Butler v. Yusem, 44 So.3d 102, 105 (Fla. 2010).

On January 25, 2012, Linda Carlson, of Regions Bank, notified Kaplan and the Investment Companies that the checks that were deposited on January 20, 2012 had not cleared and the checks were being returned.  Upon inquiry by Kaplan and the Investment Companies, Linda Carlson advised that the checks were returned "Refer to Maker" not "Insufficient Funds."  (Pars. 123, 125).  Kaplan and the Investment Companies received a replacement set of checks on January 25, 2012, and deposited them on that day.

29

Case No. 8:12-CV-1837-T-17MAP

C/C Plaintiffs allege:

> Bridgeview Bank Group intentionally and fraudulently induced the Investment Companies to wire additional funds to its accounts in order to deprive the Investment Companies of their money because Bridgeview was attempting to avoid losses associated with what it believed to be a check kiting or Ponzi scheme.

> As a result of its greed and complete disregard for the rights of the Investment Companies, Bridgeview intentionally held and delayed checks, timed its attempted return of checks and fraudulently misrepresented the reason for the return in an effort to fraudulently induce the Investment Companies to delay taking action.

> The actual fraudulent representations and/or omissions made by Bridgeview consist of the improper use of the term "Refer to Maker" as described above.

> .......

> In order to fraudulently induce the Investment Companies to wire more money, Bridgeview intentionally and knowingly misrepresented the reason for the return of the First and Second Sets of checks and/or wrongfully returned the First and Second Sets of checks in an effort to induce the Investment Companies to delay taking action.

> Bridgeview knew or should have known that its actions and representations were false and fraudulent.

> The Investment Companies relied upon the false representations of Bridgeview to their detriment as, had they been made timely aware of the real reason that Bridgeview returned the items on a timely basis, they would have taken action to avoid their losses.

> As a consequence, the Investment Companies have been damaged by Bridgeview's negligent conduct.

The Court understands that the alleged misrepresentations at issue involve only the "Refer to Maker" designation on items returned by BBG.

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court **denies** the Motion to Dismiss as to this issue.


**COUNT XX**      **NEGLIGENT MISREPRESENTATION**      **BBG**


The Court previously dismissed this claim, with leave to amend, for failure to comply with Rule 9(b).

C/C Plaintiffs incorporate all general factual allegations of the AC/C.  C/C Plaintiffs further allege:

> Bridgeview Bank Group intentionally and fraudulently induced the Investment Companies to wire additional funds to its accounts in order to deprive the Investment Companies of their money because Bridgeview was attempting to avoid losses associated with what it believed to be a check kiting or Ponzi scheme.
>
> As a result of its greed and complete disregard for the rights of the Investment Companies, Bridgeview intentionally held and delayed checks, timed its attempted return of checks and fraudulently misrepresented the reason for the return in an effort to fraudulently induce the Investment Companies to delay taking action.
>
> The actual fraudulent representations and/or omissions made by Bridgeview consist of the improper use of the term "Refer to Maker" as described above.
>
> .......
>
> In order to fraudulently induce the Investment Companies to wire more money, Bridgeview intentionally and knowingly misrepresented the reason for the return of the First and Second Sets of checks and/or wrongfully returned the First and Second Sets of checks in an effort to induce the Investment Companies to delay taking action.
>
> Bridgeview knew or should have known that its actions and representations were false and fraudulent.

Case No. 8:12-CV-1837-T-17MAP

> The Investment Companies relied upon the false representations of Bridgeview to their detriment as, had they been made timely aware of the real reason that Bridgeview returned the items on a timely basis, they would have taken action to avoid their losses.
>
> As a consequence, the Investment Companies have been damaged by Bridgeview's negligent conduct.
>
>
> To state a cause of action for negligent misrepresentation, a plaintiff must show:
>
> 1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false;
>
> (2) the defendant was negligent in making the statement because he should have known the representation was false;
>
> (3) the defendant intended to induce the plaintiff to rely and [sic] on the misrepresentation; and
>
> (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.

See Specialty Marine & Industrial Supplies, Inc. v. Venus, 66 So.3d 306, 309 (Fla. 1st DCA 2011).

Allegations of intentional misrepresentation of the reason for the return are not consistent with the theory of negligent misrepresentation, which involves representations that the speaker believes to be true but which are in fact false.

The Court understands C/C Plaintiffs' theory to be that their losses were caused by BBG's "Refer to Maker" representations on the First and Second Set of Checks which were returned, which allegedly caused C/C Plaintiffs to delay in acting to prevent their losses. The Court understands that the representations at issue include only the "Refer to Maker" designation on the returned items.

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

**COUNT XXI**        **DEFAMATION PER SE**        **FBA, RB, SHAW**

The Court previously granted the Motion to Dismiss of Regions Bank and Shaw, on the basis of the litigation privilege, and qualified privilege.

The Court granted the FBA's Motion to Dismiss on the basis of absolute immunity under the Communications Decency Act of 1996.

The Court reiterates its prior rulings, and again **grants** the Motions to Dismiss as to this issue.

**COUNT XXII**        **INVASION OF PRIVACY**        **FBA, RB, SHAW**

The Court previously granted the Motions to Dismiss of Regions Bank and Shaw, and the FBA.

The Court reiterates its prior rulings, and again **grants** the Motions to Dismiss as to this issue.

**COUNT XXIII**        **NEGLIGENCE/NEGLIGENT MISREPRESENTATION**        **RB**

The Court previously granted the Motion to Dismiss of Regions Bank, with leave to amend, finding that common law negligence/negligent misrepresentation claims

33

Case No. 8:12-CV-1837-T-17MAP

were displaced by the UCC, in this case the extension of provisional credit, and right of chargeback. The duty of "ordinary care" is defined in the context of bank deposits and collections at Fla. Stat. 674/103.

The Court addressed the common law claims only in the alternative, and granted the Motion to Dismiss on the basis of no fiduciary duty and noncompliance with Rule 9(b).

C/C Plaintiffs have included additional allegations to Count XXIII involving the extension of provisional credit, the wire transfers, and specific representations made to Kaplan on January 20, 23, and 24, 2012.

After consideration, the Court **denies** the Motion to Dismiss as to this issue.

## REQUEST FOR SANCTIONS

C/C Defendants have moved for the award of costs under 28 U.S.C. Sec. 1927, requiring any attorney who has multiplied the proceedings in any cases unreasonably and vexatiously to satisfy the excess costs incurred by such conduct. An attorney acts in bad faith when he knowingly or recklessly pursues a frivolous claim. Such determinations are made on a case-by-case basis. The Court notes that requests for sanctions under Rule 11 are also pending (Dkts. 119, 155).

The Court will defer all requests for sanctions until the final resolution of this case. The Court **denies** the Motions for Sanctions without prejudice; the Motions can be reasserted by filing a notice to the Court. It will not be necessary to file a separate motion.

Case No. 8:12-CV-1837-T-17MAP

Accordingly, it is

**ORDERED** that the pending Motions are resolved as follows:

Dkt. 99      Motion to Dismiss or Strike (FBA)
             Count XXI     granted
             Count XXII    granted

Dkt. 100     Motion to Dismiss (Wells Fargo)
             Count XIV     denied
             Count XVI     denied
             Count XVIII   denied

Dkt. 102     Motion to Strike (Regions, Shaw)
             Count XXI     granted
             Count XXII    granted
             Count XXIII   denied

Dkt. 106     Motion to Dismiss (BBG)
             Count II      denied
             Count IV      denied
             Count V       denied
             Count VI      denied
             Count VII     denied
             Count X       granted
             Count XIII    denied
             Count XV      denied
             Count XVII    denied
             Count XIX     denied
             Count XX      denied

Dkt. 119     Motion for Sanctions (Regions)

             Denied without prejudice

Dkt. 123     Motion to Strike and to Dismiss (Starr)
             Count I       granted
             Count II      denied
             Count III     granted
             Count IV      denied

35

Case No. 8:12-CV-1837-T-17MAP

| | |
|---|---|
| Count V | denied |
| Count VI | denied |
| Count VII | denied |

**DONE and ORDERED** in Chambers, in Tampa, Florida on this
3/3 day of March, 2014.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record