UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

        Plaintiff,

v.                        CASE NO.  8:12-CV-1837-T-17MAP

MARVIN I. KAPLAN, etc.,
et al.,
        Defendants.

_____/


ORDER

This cause is before the Court on:

Dkt. 202   Motion to Dismiss Second Amended Complaint
Dkt. 205   Response in Opposition
Dkt. 208   Motion for Leave to File Reply

Plaintiff Regions Bank asserts claims against Defendant Marvin I. Kaplan, R1A Palms, LLC ("R1A", Triple Net Exchange, LLC ("TNE"), MK Investing, LLC ("MKI") and BNK Smith, LLC ("BNK"). "Kaplan Entities" include R1A, TNE, MKI, and BNK.  "Kaplan Parties" include Kaplan, R1A, TNE, MKI and BNK.


The Second Amended Complaint includes the following claims:

| | |
|---|---|
| Count I | R1A's Breach of Deposit Agreement |
| Count II | R1A's Obligation of Reimbursement under Sec. 674.207(2) |
| Count III | R1A's Obligation of Refund Under Sec. 674.2141(1) |
| Count IV | R1A's Obligation as Indorser Under Sec. 673.4151(a) |
| Count V | R1A's Conversion |
| Count VI | R1A's Fraudulent Concealment |
| Count VII | R1A's Aiding and Abetting |
| Count VIII | TNE's Breach of Deposit Agreement |
| Count IX | TNE's Obligation of Reimbursement Under Sec. 674.207(2) |

Case No. 8:12-CV-1837-T-17MAP

| | |
|---|---|
| Count X | TNE's Obligation of Refund Under Sec. 674.2141(1) |
| Count XI | TNE's Obligation as Indorser Under Sec. 673.4151(1) |
| Count XII | TNE's Conversion |
| Count XIII | TNE's Fraudulent Concealment |
| Count XIV | TNE's Aiding and Abetting |
| Count XV | MKI's Breach of Deposit Agreement |
| Count XVI | MKI's Obligation of Reimbursement under Sec. 674.207(2) |
| Count XVII | MKI's Obligation of Refund under Sec. 674.2141(1) |
| Count XVIII | MKI's Obligation as Indorser Under Sec. 673.4151(1) |
| Count XIX | MKI's Conversion |
| Count XX | MKI's Fraudulent Concealment |
| Count XXI | MKI's Aiding and Abetting |
| Count XXII | BNK's Breach of Deposit Agreement |
| Count XXIII | BNK's Obligation of Reimbursement under Sec. 674.207(2) |
| Count XXIV | BNK's Obligation of Refund Under Sec. 674.2141(1) |
| Count XXV | BNK's Obligation as Indorser Under Sec. 673.4151(1) |
| Count XXVI | BNK's Conversion |
| Count XXVII | BNK's Fraudulent Concealment |
| Count XXVIII | BNK's Aiding and Abetting |
| Count XIX | Fraudulent Concealment Against Kaplan |
| Count XXX | Aiding and Abetting Conversion Against Kaplan |
| Count XXXI | Kaplan's Conversion |
| Count XXXII | Civil Conspiracy Against Kaplan Parties |

Plaintiff Regions Bank alleges that Kaplan Parties and Smith Advertising &
Associates, Inc.  ("SAA") conducted a check kiting scheme between a deposit account
maintained by SAA at Bridgeview Bank in Illinois, and Kaplan Entities' deposit accounts
with Regions Bank in Florida.  Check kiting constitutes bank fraud, by which the
operators of the scheme fraudulently divert the bank's funds through check deposit
transactions designed to take advantage of the float and clearing time for check-
processing between institutions.  In this case, the check kiting scheme involved
deposits at one bank, and wire transfers from another bank.  Initially the check-kiting
scheme involved alleged 30-day loans from one or more of the Kaplan Entities to SAA,
in exchange for which SAA would send checks to Kaplan Parties which represented the
return of principal and incentive and interest payments to be held for 30 days, during
which time SAA would supposedly be paid by its customers.  Instead of depositing the
checks after 30 days, and insisting on receiving repayment to close out the loan

Case No. 8:12-CV-1837-T-17MAP

transactions, the Kaplan Parties would hold or discard the checks, and let the transactions "ride," with larger amounts of new transactions replacing the older ones. Kaplan Parties calculated that the transactions generated $7,000,000 in paper profits; Plaintiff alleges that Kaplan Parties knew that legitimate private financing transactions would not have generated the rates of return involved in those transactions.

Plaintiff Regions alleges that in Fall, 2011, the Smiths and Kaplan agreed that Kaplan, through the Kaplan Entities, would wire funds to the SAA Account, and on the same day, the Smiths would deliver checks back to Kaplan in repayment of the wires, plus incentive and interest checks for participating in the "same day" monetary exchanges. Plaintiff further alleges that the "same day" exchanges of Kaplan Parties' wired funds for SAA checks, where the amounts of SAA checks vastly exceeded the amounts of the wires, had all the badges of bank fraud and kiting, and Kaplan knew it. However, Kaplan was willing to engage in the new transactions, which would result in real money being delivered to Kaplan Parties, rather than "paper" profits, and daily returns of extraordinary magnitude. Plaintiff further alleges that the Kaplan Parties knew that no legitimate financing or investment scheme could possibly result in the rates of return to be paid by the Smiths. Plaintiff alleges that Kaplan Parties knew they were going to become part of Smith's continuing fraudulent scheme involving kiting. Plaintiff Regions alleges that Kaplan did not disclose to Regions the expected use of the corporate accounts opened from September through December, 2011, and did not disclose the same-day-wires-for-checks exchange scheme; if Regions had been so advised, Regions would not have opened the accounts.

Plaintiff alleges that Defendant Kaplan utilized on-line banking and would access the Kaplan Accounts via computer. Plaintiff further alleges that Kaplan effectuated outgoing transfers and internal transfers among Kaplan Accounts, and understood the check-collection process, including the time it would take for checks drawn on Bridgeview Bank in Illinois to clear an account into which checks were deposited in

3

Case No. 8:12-CV-1837-T-17MAP

Sarasota, Florida, which would take several days.  Plaintiff alleges that Kaplan understood the delays associated with, and float created by, the check-collection process, which involved sending checks Kaplan deposited to the Florida-based Kaplan Accounts to Bridgeview Bank in Illinois, a remote location.

As of January 31, 2012, the Kaplan Accounts at Regions Bank were in the following overdraft position:

| | |
|---|---|
| R1A Account | ($9,116,353.47) |
| TNE Account | ($1,689,590.03) |
| MKI Account | ($1,178,923.79) |
| BNK Account | ($164,379.01) |

On February 24, 2012, Sarasota County Circuit Court lifted a temporary injunction to permit Wells Fargo Bank to return $2,775,000 to Regions Bank from the Lighthouse account to credit the R1A Account to reduce the overdraft.

I. Standard of Review

A)   Fed. R. Civ. P. 12(b)(6)

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570.   A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  Two working principles underlie Twombly.  First, the tenet that a court must accept a complaint's allegations as

4

Case No. 8:12-CV-1837-T-17MAP

true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

B)   Fed. R. Civ. P. 9(b)

Rule 9(b) requires fraud allegations to be plead "with particularity." "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." United States v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). See also Ziemba v. Cascade Intl., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)(citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42, 166 L. Ed. 2d 18 (2006).

Case No. 8:12-CV-1837-T-17MAP

II. Discussion

In general, Plaintiff Regions contends that the Kaplan Parties' knowing and systematic use of immediate credits provided by Regions Bank for deposits of SAA checks was part of a kiting scheme between the Kaplan Parties and SAA and its principals, the Smiths.  Kaplan was at the heart of the scheme, and orchestrated all transactions on the Kaplan Accounts, in concert with the Smiths and SAA.  Plaintiff Regions contends that the allegations of the systematic and recurrent use of provisional credits satisfy the elements of the torts asserted in the Second Amended Complaint.

The Court notes that the following claims are not factually consistent with each other, but at this stage Plaintiff may assert all claims, regardless of consistency, when there is doubt about what the evidence will show.

A.  Counts Related to Fraudulent Concealment

| Count | VI | R1A's Fraudulent Concealment |
| Count | XV | MKI's Breach of Deposit Agreement |
| Count | XX | MKI's Fraudulent Concealment |
| Count | XXVII | BNK's Fraudulent Concealment |
| Count | XXIX | Fraudulent Concealment Against Kaplan |

The elements of a claim for fraudulent concealment are:   1) a misrepresentation of material fact or suppression of the truth; 2) (a)  knowledge of the of the representor of the misrepresentation or (b) representations made by the respresentor without knowledge as to either the truth or falsity, or (c) representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; 3) an intention that the representor induce another to act on it; and 4) resulting injury to the party acting in justifiable reliance on the misrepresentation.

6

Case No. 8:12-CV-1837-T-17MAP

See Greenberg v. Miami Children's Hosp. Research Inst., Inc., 264 F. Supp.2d 1064, 1073 (S.D. Fla. 2003)(citing Jones v. General Motors Corp., 24 F.Supp.2d 1335, 1339 (M.D. Fla. 1998).

Plaintiff Regions responds that a party commits fraud by omission by having superior knowledge and intentionally failing to disclose a material fact, which is not discoverable by ordinary observation, especially where coupled with a trick or artifice. Plaintiff argues kiting constitutes special circumstances imposing a duty of disclosure to avoid harm. See Barnett Bank v. Hooper, 498 So.2d 923 (Fla. 1986). Plaintiff Regions argues that Plaintiff alleges that the Kaplan Parties knew of and participated in the kiting and several artifices to conceal their wrongdoing, including knowledge that they would be conducting a check-kiting scheme, continuing concealment of involvement in kiting and knowledge that the checks they were depositing were not backed by sufficient funds in the SAA Account, the knowledge that the checks they were going to deposit or had deposited were going to be dishonored by Bridgeview Bank because of stop payments to which Kaplan consented, and because Bridgeview Bank had frozen the SAA account, but wired substantial amounts of Regions' funds, knowing that millions in chargebacks would occur when the SAA checks came back dishonored.

A claim for fraudulent concealment is subject to Fed. R. Civ. P. 9(b), requiring that the circumstances of the fraud must be alleged with specificity. Defendants argue that the claims for fraudulent concealment do not meet the requirements of Fed. R. Civ. P. 9(b).

Plaintiff responds that, in Plaintiff's detailed allegations, Plaintiff alleges that the Kaplan Parties committed the concealment, that Plaintiff Regions identified the specific facts of which Defendants had superior knowledge, the specific dates of non-disclosures, where the events took place, and how the non-disclosure occurred.

7

Case No. 8:12-CV-1837-T-17MAP

Defendants argue that Regions Bank does not allege a sufficient overt act of concealment as to Marvin Kaplan, individually, or as it pertains to the Kaplan Parties. Defendants argue that there are no allegations that Defendant Kaplan made a misrepresentation or suppressed the truth. Defendants argue that Defendants had no duty to disclose material facts to Regions Bank. The allegations in Par. 214 are not sufficient. Defendants argue Defendant Kaplan's silence did not induce Plaintiff Regions to do anything or to cause Plaintiff Regions to detrimentally rely on some "lack of information." Defendants argue "passive concealment" involves mere silence or failure to disclose a fact. Non-disclosure constitutes fraud only where there is a duty to disclose. Franklin v. Brown, 159 So.2d 893, 898 (Fla. 1st DCA 1964). Allegations of fraudulent concealment by silence must be accompanied by allegations of a special relationship that gives rise to a duty to speak. TransPetrol, Ltd. v. Radiculovic, 764 So.2d 878 (Fla. 4th DCA 2000). Defendants further argue that if the facts asserted as fraudulently concealed were accessible to Plaintiff, Plaintiff Regions cannot maintain a cause of action for fraudulent concealment. In re: Ford Motor Co. Bronco II Product Liability Litig., 982 F.Supp. 388 (E.D. La. 1997).

Plaintiff responds that the Kaplan Parties do not explain how Regions could have exercised diligence to discover Defendants' secret intent to conduct kiting, the knowledge of the Kaplan Parties that deposited SAA checks were being covered in whole or in part by outgoing wires, Kaplan's knowledge that Bridgeview Bank was going to dishonor numerous SAA checks because of SAA's stop payment, to which Kaplan Parties consented, and because Bridgeview Bank had frozen the SAA Account, which would result in millions in returned SAA checks.

The Court finds that the requirements of Fed. R. Civ. P. 9(b) have been met, and that the circumstances in this case, including the alleged scheme of check-kiting, are special circumstances that support a duty to disclose.

8

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court denies the Motion to Dismiss as to this issue.

B. Counts Related to Aiding and Abetting

| Count VII | R1A's Aiding and Abetting |
| Count XIV | TNE's Aiding and Abetting |
| Count XXI | MKI's Aiding and Abetting |
| Count XXVIII | BNK's Aiding and Abetting |
| Count XXX | Aiding and Abetting Conversion Against Kaplan |

To support a civil aiding and abetting claim, Plaintiffs must show:

1) the party whom the defendant aids must perform a wrongful act that
causes an injury; 2) the defendant must be generally aware of his role as
part of an overall illegal or tortious activity at the time that he provides the
assistance; 3) the defendant must knowingly substantially assist the
principal violation. In re Chiquita Brands Intern. Inc. Alien Tort Statute and
S'holder Derivative Litig., 690 F.Supp.2d 1296, 1310 (S.D. Fla. 2010).

The distinction between a civil conspiracy and aiding/abetting claim is that a
conspiracy involves an agreement to participate in a wrongful activity;  an
aiding/abetting claim focuses on whether a defendant knowingly gave "substantial
assistance" to someone who performed wrongful conduct, not on whether the
defendant agreed to join the wrongful conduct.   An aider/abettor is liable for damages
caused by the main perpetrator, but, absent a finding of conspiracy, the perpetrator is
not liable for the damages caused by the aider/abettor.  The Kaplan Parties argue that
Kaplan, as sole member of each LLC, could not provide aid to himself.

Plaintiff Regions responds that Plaintiff has pled facts establishing Kaplan
Entities' actual knowledge of wrongdoing, substantial assistance, and resulting
damages, in that the Kaplan Entities assisted each other and acted as a cohesive unit

9

Case No. 8:12-CV-1837-T-17MAP

to conduct kiting with SAA and the Smiths.   The underlying wrong was the kiting and various torts committed by the Kaplan Entities, which proximately caused loss to Regions.  Each Kaplan Entity knew about and assisted the other Kaplan Entity to conduct the kite.  When necessary, the Kaplan Entities transferred funds to each other to fund outgoing wires to induce exchange  of the SAA checks.  Plaintiff Regions argues that Kaplan himself orchestrated the scheme in concert with SAA and the Smiths, transferring funds between Kaplan Accounts to fund outgoing wires to the SAA Account, and effecting the outgoing wires in exchange for delivery of SAA checks at a handsome daily profit.   Plaintiff Regions argues these facts establish the elements of a claim for aiding/abetting under Florida law.  See Coquina Investments v. Rothstein, 2010 WL4479057 (S.D. Fla. 2012)(where bank knew about and assisted customer's Ponzi scheme, bank liable for aiding/abetting underlying tort).

         After consideration, the Court denies the Motion to Dismiss as to this issue.


C.  Civil Conspiracy

         Count XXXII      Civil Conspiracy - Kaplan


         A cause of action for civil conspiracy requires: 1) an agreement between two or more persons; 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; 4) which overt act was done pursuant to and in furtherance of the common scheme.  Hogan v. Provident Life and Acc. Ins. Co., 665 F.Supp.2d 1273 (M.D. Fla. 2009).

         The key to showing the existence of a conspiracy is that there must be a meeting of two independent minds intent on one common purpose.  Cedar Hills Properties Corp. v. Eastern Federal Corp., 575 So.2d 673 (Fla. 1st DCA 1991).  In this case, each of the

                                        10

Case No. 8:12-CV-1837-T-17MAP

Kaplan Entities is an LLC with Marvin Kaplan serving as the sole managing member of each. A corporation cannot conspire with its agent unless the agent has a personal stake in the activities that is separate and distinct form the corporation's interest. St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc., 457 So.2d 1028 (Fla. 2d DCA 1984). It is not possible for a single entity consisting of the corporation and its agents to conspire with itself. Dickerson v. Alachua County Commission, 200 F.3d 761 (11th Cir. 2000). Under Florida's "intra-corporate conspiracy doctrine," a corporation's officers, directors or employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation. Microsoft Corp. v. Big Boy Distribution, LLC, 589 F.Supp.2d 1308 (S.D. Fla. 2008). Defendants seek dismissal because Defendant Marvin I. Kaplan is, in effect, each separate entity, and cannot conspire with himself.

Plaintiff Regions responds that Plaintiff alleges that Kaplan and each of the Kaplan Entities conspired with SAA and the Smiths to harm Regions. Plaintiff Regions argues that the intracorporate conspiracy doctrine does not apply where a third party is involved in the conspiracy. Plaintiff Regions further argues that each of the Kaplan Entities is separate and distinct from each other, and exists apart from its managing member, precluding the doctrine. Plaintiff Regions further responds that Plaintiff pleads that Defendant Kaplan had a personal stake in obtaining the funds, as shown by the fact that Defendant Kaplan wired $2,775,000 to the Lighthouse Account at Wells Fargo Bank, an account which Defendant Kaplan controlled.

As to this Count, the Court views each LLC as a separate entity. Regions alleges that each entity, as a separate "person," conspired with SAA and the Smiths to harm Regions. Defendant Marvin I. Kaplan, the individual, had a personal stake in obtaining the funds, arranged the outgoing wire transfers to obtain checks from SAA, and transferred funds to Wells Fargo to maintain control over those funds and prevent Regions from taking them to cover the overdraft in the accounts of the Kaplan Entities.

11

Case No. 8:12-CV-1837-T-17MAP

Regions has pleaded facts which support the existence of an agreement and knowing participation in the kiting scheme.

After consideration, the Court denies the Motion to Dismiss as to the civil conspiracy claim.

D.  Counts Related to Conversion

| Count | V    | R1A's Conversion     |
|-------|------|----------------------|
| Count | XII  | TNE's Conversion     |
| Count | XIX  | MKI's Conversion     |
| Count | XXVI | BNK's Conversion     |
| Count | XXXI | Kaplan's Conversion  |

To establish a claim for conversion of money under Florida law, a plaintiff must demonstrate: 1) specific and identifiable money; 2) possession or an immediate right to possess that money; 3) an unauthorized act which deprives plaintiff of that money, and 4) demand for return of the money and refusal to do so.  U.S. v. Bailey, 288 F.Supp.2d 1261 (M.D. Fla. 2003).   Plaintiff must show that defendant exercised a positive, overt act or acts of dominion or authority over the money or property in question, which was inconsistent and adverse to the rights of the true owner.  Sirpal v. University of Miami, 684 F.Supp.2d 1349, 1363 (S.D. Fla. 2010).

When a party deposits funds in a bank, the funds become the bank's property. When a bank receives an item for deposit or collection, it will immediately make a provisional settlement with its customer, while it awaits determination of whether the item will be finally paid and that "the continuance of ownership of an item by its owner and any rights of the owner to proceeds of the item are subject to the rights of collecting bank, such as those resulting from outstanding advances on the item and rights of

12

Case No. 8:12-CV-1837-T-17MAP

recoupment of setoff."  UCC Sec. 4-201 (2002).  Defendants argue that Plaintiff
Regions cannot establish, nor is there any evidence to establish, that Kaplan or any of
the Kaplan Entities had either control or dominion over the funds that were deposited
into Regions Bank.   Defendants argue that there are no allegations that Kaplan or
Kaplan Parties ever took any money out of the accounts or intended to take any money
out of the accounts at Regions.  Defendants further argue that Regions Bank provided
provisional credit and that it was not possible for Kaplan or Kaplan Parties to exert
dominion or control over the money which was under the control or dominion of
Regions Bank.

Plaintiff Regions responds that Plaintiff has alleged that the Kaplan Parties
wrongfully exercised dominion and control over Regions' funds by virtue of the outgoing
wires.   The wrongful withdrawal of funds in a bank account or the wrongful receipt of
bank funds and refusal to return the funds is the proper subject of a conversion action.
See Allen v. Gordon, 429 So.2d 369, 371 (Fla. 1st DCA 1983); Senfield v. Bank of Nova
Scotia Trust Co. (Cayman) Ltd., 450 So.2d 1157 (Fla. 3d DCA 1984).  Plaintiff further
argues that where a corporate officer knowingly presents a worthless check to obtain
property, the injured party may sue in conversion.

Plaintiff argues that Plaintiff pleads that, when the Kaplan Parties wired funds to
SAA in the kiting scheme, Kaplan Parties knew the funds in the Kaplan Accounts were
Regions' funds, which were not supported by good funds form the deposited SAA
checks.  The Kaplan Parties knowingly used Regions' funds as outgoing wires to induce
SAA to deliver SAA checks to enrich the Kaplan Parties with extraordinary gains on a
daily basis.    Plaintiff Regions alleges that the wires continued even after Kaplan
Parties knew that Bridgeview Bank would be dishonoring SAA checks, either because
of stop payments to which Kaplan Parties consented, or Bridgeview Bank's freeze of
the SAA Account.  Plaintiff Regions argues that by these operations the Kaplan Parties
wrongfully exercised dominion and control over Regions' property to its detriment.

13

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court denies the Motion to Dismiss as to this issue.
Accordingly, it is

ORDERED that the Motion to Dismiss Second Amended Complaint (Dkt.
202) is **denied**, and the Motion for Leave to Reply (Dkt. 206) is **denied** as moot.

DONE and ORDERED in Chambers, in Tampa, Florida on this 30th day of
September , 2014.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to:
All parties and counsel of record

14