UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,
etc.,

      Plaintiff,

v.

MARVIN I. KAPLAN, etc.,
et al.,

      Defendants.

_____/

MARVIN I. KAPLAN, etc.,
et al.,

      Counterclaim/Crossclaim
      Plaintiffs,

v.

REGIONS BANK, etc.,
et al.,

      Counterclaim/Crossclaim
      Defendants.

_____/

CASE NO.  8:12-CV-1837-T-17MAP

ORDER

This cause is before the Court on:

Dkt. 276    Motion to Dismiss Counterclaim and Crossclaim
Dkt. 280    Response in Opposition

Counterclaim/Crossclaim Defendants Marvin I. Kaplan, R1A Palms, LLC, Triple Net Exchange, LLC, MK Investing, LLC and BNK Smith, LLC ("Kaplan Parties") move to dismiss the Counterclaim and Crossclaim of Bridgeview Bank Group ("Bridgeview")(Dkt. 271).

Case No. 8:12-CV-1837-T-17MAP

I. Background

Bridgeview's Counterclaim and Crossclaim includes the following:.

Count I      Violation of Secs. 772.103(3), 772.104, <u>Fla</u>. <u>Stat</u>.
Count II     Violation of Secs. 772.103(4), 772.104, <u>Fla</u>. <u>Stat</u>.

In the Counterclaim and Crossclaim, Bridgeview alleges that Marvin I. Kaplan was recruited to be an integral part of a check kiting scheme involving the Kaplan Parties and Smith Advertising & Associates, Inc., Gary T. Smith, G. Todd Smith and Lucy B. Smith ("the Smiths"). The Kaplan Parties would transfer monies to the Smiths and immediately accept one or more checks, which were to be cashed after a thirty days period had expired. Bridgeview alleges that Kaplan and the Kaplan Parties knew upon acceptance of the checks that the funds were not available in the Smiths' account[s] at Bridgeview, on which the funds were drawn.   Bridgeview further alleges that Kaplan agreed to and did discuss the alleged check kiting scheme with the Smiths.

The alleged scheme began in August, 2009 with Kaplan's personal investment of fifty thousand dollars ($50,000.00) and continued via a series of separate agreements until January 23, 2012. The Smiths sent checks as proceeds and profits on discrete investment deals by mail to Kaplan and the Kaplan Parties; the checks were deposited into accounts of Kaplan and the Kaplan Parties, and on the same day Kaplan and Kaplan Parties wired funds to the Smiths' accounts at Bridgeview. The Kaplan Parties would wire up funds for each successive deal as the Kaplan Parties received credit from the previously deposited checks. As soon as provisional credit was provided to Kaplan, he directed the Kaplan Parties to wire additional funds, with each successive wire (or groups of wires) increasing in amount. (Dkt. 271, p. 55, par. 22).

2

Case No. 8:12-CV-1837-T-17MAP

On January 20, 2012, in furtherance of the check kiting scheme, the Kaplan
Parties wired nine million seven hundred thousand dollars ($9,700,000.00) from their
accounts at Regions Bank to the Smiths' accounts at Bridgeview.   On January 23,
2012, in furtherance of the check kiting scheme, the Kaplan Parties wired ten million
four hundred fifty thousand dollars ($10,450,000.00) from their accounts at Regions
Bank to the Smiths' accounts at Bridgeview.

Bridgeview alleges that on January 20, 2012, Kaplan and the Kaplan Parties
knew that upon acceptance of the checks and deposit of the checks into the Kaplan
Parties' account at Regions Bank that the funds were not available in the Smiths'
account upon which the funds were drawn.  After the checks were deposited into the
Kaplan Parties' account at Regions Bank, the Kaplan Parties and the Smiths agreed to
participate in another check kiting scheme.  On January 23, 2012, after wiring the funds
to Bridgeview, the Kaplan Parties received checks for repayment and "incentive
payments" by overnight mail and deposited the checks the same day the initial wire
transfer took place.

Bridgeview timely returned the checks for the January 20, 2012 and January 23,
2012 transactions.   Bridgeview alleges that the check kiting scheme was employed as
an attempt to defraud a financial institution or to obtain moneys, funds or other property
under the control or custody of a financial institution by means of false or fraudulent
pretenses or representations.  (Dkt. 271, p. 56, par. 31).  Bridgeview further alleges that
the check kiting scheme employed the act of depositing items, as defined in Sec.
674.104(1)(i), Fla. Stat. in a bank or depository with the intent to defraud.

In Count I, Bridgeview alleges that the four LLCs (R1A, Triple, MK, BNK)
deposited checks and initiated wires on January 20, 2012 and January 23, 2012, in
furtherance of the check kiting scheme.  Bridgeview further alleges that the Kaplan
Parties with the Smiths were employed by or associated with an enterprise, the check

Case No. 8:12-CV-1837-T-17MAP

kiting scheme, and engaged in the activities stated above with full knowledge of their purpose to defraud. Bridgeview further alleges that the Kaplan Parties with the Smiths conducted or participated, directly or indirectly, in the conduct of the check kiting scheme through a pattern of criminal activity in which all knowingly engaged, and that the criminal activities engaged in by the Kaplan Parties together with the Smiths included engaging in or conspiring to engage in acts of bank fraud and mail and wire fraud in violation of Secs. 832.04 and 832.05, Fla. Stat. and 18 U.S.C. Sec. 1961(1)(B) and 18 U.S.C. Secs. 1341 and 1344.

Bridgeview alleges that the Kaplan Parties participated directly in the predicate acts of wire fraud, in that each party was an active participant in wiring monies to the Smiths' account at Bridgeview, and depositing checks with the intent to defraud, that there were two or more acts of such criminal activities, and that Bridgeview, as a proximate and factual result of the criminal activity, suffered damages and/or injury, including but not limited to wire transaction fees, FIS processing fees and Federal Reserve fees directly attributable to the actions of the Kaplan Parties.

Bridgeview seeks a judgment against the Kaplan Parties for actual damages, statutory damages, reasonable attorney's fees, costs, and other appropriate relief.

In Count II, Bridgeview alleges that Kaplan, the Kaplan Parties and the Smiths entered into and conspired to violate Sec. 772.103(3), Fla. Stat. Bridgeview alleges the Kaplan directed R1A, Triple, MK and BNK and orchestrated the deposit of checks and the initiation of wires by each entity on January 20, 2012 and January 23, 2012, in furtherance of the check kiting scheme. Bridgeview alleges that, as a proximate and factual result of the criminal activity, Bridgeview has suffered damages and/or injury, including wire transaction fees, FIS processing fees and Federal Reserve fees directly attributable to the actions of Kaplan and the Kaplan Parties' actions. Bridgeview seeks a judgment against Kaplan and the Kaplan Parties for actual damages, statutory

Case No. 8:12-CV-1837-T-17MAP

damages, attorney's fees, costs, and other appropriate relief.

## II. Standard of Review

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007), but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," Id., at 570.   A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  Two working principles underlie Twombly.  First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. Id., at 555.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. Id., at 556.  A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1955-1956 (2009)(quoting Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

## III. Discussion

In their Motion to Dismiss, Kaplan Parties argue that the factual allegations of Bridgeview's Counterclaim/Crossclaim are vague and conclusory, such that the

Case No. 8:12-CV-1837-T-17MAP

dismissal is appropriate.  The Kaplan Parties further argue that, as to Count II,
Bridgeview has made no factual allegations that rise to the level sufficient to show that
Kaplan or any Kaplan Party agreed to participate in any alleged check kiting scheme.
The Kaplan Parties argue that Bridgeview has made conclusory allegations which are
based on allegations made by the Kaplan Parties in their claims against Bridgeview in
the Amended Counterclaim/Crossclaim (Dkt. 93).

   Florida courts look to decisions interpreting the federal statute in interpreting
Sec. 772.103, Fla. Stat.  Jackson v. Bellsouth Communications, 372 F.3d 1250, 1263-
64 (11th Cir. 2004).  The allegations of the second phase of the investment scheme
commencing in November, 2011, identify particular acts of wire fraud carried out by the
Kaplan Parties in January, 2012 in furtherance of the alleged check kiting scheme.  In
order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must
show at least two racketeering predicates that are related, and that they amount to or
pose a threat of continued criminal activity.  H.J., Inc. v. NW Bell Tel. Co., 492 U.S.
229, 240 (1989).  "A party alleging a RICO violation may demonstrate continuity over a
closed period by proving a series of related predicates extending over a substantial
period of time." Id., at 242.

   Continuity refers to either a closed period of repeated conduct, or to past
conduct that by its nature projects in the future with a threat of repetition.  In an open-
ended case that relies on allegations of a threat of repetition, a plaintiff can meet his
burden by establishing either that the racketeering acts themselves include a specific
threat of repetition extending indefinitely into the future or that the predicate acts of
offenses are part of an ongoing entity's regular way of doing business.

   The relevant period for determining continuity is the time during which the
predicate acts take place, not the time during which the entire scheme to defraud takes
place.  Coquina Investments v. TD Bank, N.A., 760 F.3d 1300 (11th Cir. 2014).  This

Case No. 8:12-CV-1837-T-17MAP

case involves a closed period of repeated conduct.  According to the allegations of Bridgeview's Counterclaim and Crossclaim, the acts of wire fraud took place on two or more occasions in January, 2012.   Courts have found that a period of time that is less than twelve months does not constitute a substantial period of time.   <u>Jackson v. Bellsouth Communications, Inc.</u>, 372 F.3d 1250 (11th Cir. 2004).

Sec. 1962(d) of the RICO statutes makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including Sec. 1962(c).  <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1293 (11th Cir. 2010).  "A plaintiff can establish a RICO conspiracy claim in one of two ways: 1) by showing that the defendant agreed to the overall objective of the conspiracy; or 2) by showing that the defendant agreed to commit two predicate acts."  <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 950 (11th Cir. 1997).  "A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy 'may be inferred from the conduct of the participants.'" <u>Am. Dental Ass'n</u>, 605 F.3d at 1293.

A.  Conclusory Factual Allegations

The Florida RICO claim  involves a closed period of activity that took place during  January, 2012.  The Court relies on cases that hold that less than twelve months is not a substantial amount of time.   The Court grants the Motion to Dismiss not due to the presence of conclusory factual allegations, but because the amount of time during which the predicate acts took place is not substantial .

B.  Count II - Conspiracy to Violate Sec. 772.103(3), <u>Fla</u>. <u>Stat</u>.

The Kaplan Parties argue that Bridgeview has made only formulaic allegations that Kaplan, the Kaplan Parties and the Smiths entered into a conspiracy to violate Sec. 772.103(3).  Bridgeview responds that Bridgeview has sufficiently alleged the

Case No. 8:12-CV-1837-T-17MAP

agreement between the Kaplan Parties and the Smiths, as well as the factual support to justify a finding that, given the totality of the circumstances, the Kaplan Parties knowingly participated in a check kiting scheme with the intent to defraud a financial institution.    Bridgeview argues that the factual allegations justify one reasonable inference that outweighs all reasonable inferences to the contrary, that the Kaplan Parties knew that there was no investment that could possibly justify the rates of return the Kaplan Parties were supposed to receive, and that depositing monies into a bank account and wiring funds to cover such checks is clearly indicative of fraudulent intent.

Where a plaintiff fails to state a substantive RICO claim, and the conspiracy count adds no additional allegations, the conspiracy claim necessarily fails.  Rogers v. Nacchio, 241 Fed. Appx. 602, 609 (11th Cir. 2007).   In this case, the facts underlying the alleged agreement to carry out a check kiting scheme to defraud a financial institution do not extend for a sufficient period of time to establish a Florida RICO claim. The Court finds that the conspiracy claim based on the same allegations fails.

After consideration, the Court grants the Motion to Dismiss as to Count II. Accordingly, it is

**ORDERED** that the Motion to Dismiss (Dkt. 276) is **granted**.

**DONE and ORDERED** in Chambers, in Tampa, Florida on this 30th day of March, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

8