UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

                Plaintiff,

v.                                     CASE NO.  8:12-CV-1837-T-17MAP

MARVIN I. KAPLAN, etc.,
et al.,

                Defendants.
_____/

MARVIN I. KAPLAN, etc., et al.,

    Counterclaim/Crossclaim Plaintiffs,

v.

ROBERT NICHOLAS SHAW, etc.
et al.,

    Counterclaim/Crossclaim Defendants.

_____/

BRIDGEVIEW BANK GROUP,

    Counterclaim/Crossclaim Plaintiff,

v.

MARVIN I. KAPLAN, etc., et al.,

    Counterclaim/Crossclaim Defendants.

_____/

Case No. 8:12-CV-1837-T-17MAP

## ORDER

This cause is before the Court on:

Dkt. 360    Motion for Reconsideration
Dkt. 377    Response

Crossclaim Defendant Bridgeview Bank Group ("BBG") moves for reconsideration of the March 31, 2014 Order (Dkt. 244) denying BBG's Motion to Dismiss Counts IV (RICO), V (conspiracy to violate RICO), VI (Florida civil RICO) and VII (Florida conspiracy to commit civil RICO), in light the Order granting Crossclaim Defendant Larry Starr's Motion for Reconsideration on the same issues. In addition, the Court relied on the same case law in dismissing BBG's claims against the Kaplan Parties for the same actions on which the Amended Crossclaims and BBG's Counterclaims were based.

Crossclaim Plaintiffs respond that BBG's Motion for Reconsideration should be denied because: 1) BBG's Motion is not timely; 2) BBG's Motion mischaracterizes the record by referencing "recent changes in Eleventh Circuit precedent" that have been settled for years; and 3) Crossclaim Plaintiffs have alleged sufficient facts to support a RICO claim against BBG, precluding reconsideration. Crossclaim Plaintiffs argue that BBG has ignored Crossclaim Plaintiffs' central allegations, including the direct representation that BBG became directly complicit in the scheme, allowing other Conspirators to utilize it as a repository and accounting system for the fraud and to look the other way for what is believed to be many years in exchange for extra compensation related to the Ponzi scheme. Crossclaim Plaintiffs request leave of Court to amend their Crossclaim to include additional information obtained during discovery, which demonstrates BBG's complicity and involvement in the predicate acts and define the time frame of that involvement.

2

Case No. 8:12-CV-1837-T-17MAP

Crossclaim Plaintiffs have raised the issue of timeliness under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b), but no final judgment has been entered as to the Amended Counterclaims/Crossclaims (Dkt. 93).   Because an order denying a motion to dismiss for failure to state a claim is an interlocutory order, the Court may reconsider and amend the order at any time before final judgment.  The Court expected that BBG would seek dismissal of the RICO, RICO conspiracy, Florida RICO and Florida RICO conspiracy claims in the context of a motion for summary judgment, in that BBG did not move for reconsideration within fourteen days of the Court's Order denying Motion to Dismiss (Dkt. 244), nor did BBG adopt Crossclaim Defendant Starr's Motion for Reconsideration.

A.  Factual Allegations as to Bridgeview Bank Group

The Court notes the factual allegations as to Bridgeview Bank Group in paragraphs 49-55 of the Amended Counterclaim and Crossclaims (Dkt. 93):

......

49.  They also knew the scheme would not work unless banks like Regions extended provisional credit to the "investors", which they would not do in the absence of the involvement of another legitimate and credible financial institution upon which instruments were drawn.

50.  As a consequence, they needed to use a smaller bank where, upon information and belief, they had one or more insider employees that would help them.

51.  They selected Bridgeview for this purpose.

52.  Bridgeview is a small Illinois bank with no branches or offices in North Carolina, Florida or any other place that the Smiths, L. Smith or Starr were known to do business.  Nevertheless, the conspirators selected Bridgeview as the central processor for the Ponzi scheme because it, through one or more insider employees, agreed to assist in the Ponzi scheme.

Case No. 8:12-CV-1837-T-17MAP

53. Upon information and belief, Bridgeview, through one or more of its high level employees, was recruited and made a part of the conspiracy, agreed to participate and was provided extra fees and other monetary incentives as a direct participant in the Ponzi scheme beyond simply being paid to maintain and service accounts.

54. Bridgeview became directly complicit in the scheme, allowing the other Conspirators to use it as a repository and accounting system for the fraud and to look the other way for what is believed to be many years in exchange for extra compensation related to the Ponzi scheme.

55. Bridgeview, by and through its employees, was a direct and knowing participant in the scheme with knowledge of the activities of the Ponzi scheme participants. Bridgeview, by and through its employees, directly participating in the fraud by actively arranging and carrying out transfers between accounts, floating checks to facilitate the fraud, disregarding suspicious activity reports and by inducing investors to wire funds by affirming the legitimacy of the Smiths, L. Smith, SAA and Starr.

BBG seeks dismissal of the following Counts:

| Count IV | Violation of 18 U.S.C. Sec. 1962(c) and Sec. 1964 |
| Count V | Violation of 18 U.S.C. Sec. 1962(d) and Sec. 1964 |
| Count VI | Violation of Sec. 772.103(3), and Sec. 772.104, Fla. Stat. |
| Count VII | Violation of Sec. 772.103(4) and 772.104, Fla. Stat. |

As to Count IV, Counterclaim/Crossclaim Plaintiffs alleged:

Starr, the Smiths and Bridgeview were associated with an enterprise, and engaged in the above activities with knowledge of their purpose to defraud. (Par. 202).

Starr participated directly in the acts of mail fraud insofar as he actually monitored and tracked with a log the mailings as they came and went from Kaplan's office, assisting the Smiths to track the transactions to ensure payment of his commissions. He also participated by drawing off commissions and compensation as the investments occurred. (Par. 203).

The Ponzi scheme affected interstate commerce insofar as it made use of interstate mails and wires to commit fraud. (Par. 204).

Case No. 8:12-CV-1837-T-17MAP

Starr, the Smiths and Bridgeview conducted or participated, directly or
indirectly in the conduct of the Ponzi scheme's affairs through a pattern of
racketeering activity in which all were knowingly engaged. (Par. 205).

The racketeering activities engaged in by Starr, the Smiths and
Bridgeview are indictable under 18 U.S.C. Sec. 1341 and 18 U.S.C. 1343.
(Par. 206).

There are two or more acts of such racketeering activity. (Par. 207).

As a proximate and factual result of the racketeering activity, the Kaplan
Parties suffered damages and/or injuries to their business interests and/or
property. (Par. 208).

As to Count V, Counterclaim/Crossclaim Plaintiffs allege:

Starr, the Smiths and Bridgeview entered into and conducted a conspiracy
to violate 18 U.S.C. Sec. 1962(c). (Par. 210).

As a proximate and factual result of the racketeering activity, the
Investment Companies have suffered damages and/or injuries to their
business interests and/or property. (Par. 211).

As to Count VI, Counterclaim/Crossclaim Plaintiffs allege:

Starr, the Smiths and Bridgeview were associated with an enterprise and
engaged in the activities referenced above with full knowledge of their
purpose to defraud. (Par. 213)

Starr, the Smiths and Bridgeview conducted or participated, directly or
indirectly in the conduct of the Ponzi scheme's affairs through a pattern of
racketeering activity in which all were knowingly engaged. (Par. 214).

The criminal activities engaged in by Starr, the Smiths and Bridgeview
included engaging or conspiring to engage in acts of fraud and in mail and
wire fraud and violation of Sec. 812.014, Fla. Stat. (Par. 215).

Starr participated directly in the acts of mail fraud insofar as he actually
monitored and tracked with a log the mailings as they came and went
from Kaplan's office, assisting the Smiths to track the transactions to
ensure payment of his commissions. He also participated by drawing off

5

Case No. 8:12-CV-1837-T-17MAP

commissions and compensation as the investments occurred. (Par. 216).

There are two or more acts of such criminal activity. (Par. 217).

As a proximate and factual result of the criminal activity, the Investment Companies suffered damages and/or injuries to their business interests and/or property. (Par. 218).

As to Count VII, Counterclaim/Crossclaim Plaintiffs allege:

Starr, the Smiths and Bridgeview entered into and conducted a conspiracy to violate Sec. 772.103(3), Fla. Stat. (Par. 220).

As a proximate and factual result of the racketeering activity, the Investment Companies suffered damages and/or injuries to their business interests and/or property.

Attachments to Amended Counterclaim/Crossclaim:

Promissory notes that state date of loan by each company, [1/20/2012, 1/23/2012,1/24/2012] and date loan will be repaid in full. (67 Exhibits).

In the Order granting in part Crossclaim Defendant Starr's Motion for Reconsideration, the Court considered the scope of the alleged scheme, the elements of mail fraud and wire fraud, and the substance of the alleged scheme (Dkt. 351, pp. 9-12). The Court stated:

The substance of the scheme is the offer to Crossclaim Plaintiffs of what was portrayed to be a legitimate investment providing high returns to the investor, but which the offeror knew was not a legitimate investment, and instead was merely a scheme to induce the offeree to part with large amounts of money which the offeror took for himself. The scheme was initiated in August, 2009 and thereafter continued, with the Investment Companies periodically making investments, until November, 2011, when the form of the scheme changed. In its second incarnation, the scheme continued from November, 2011 through January, 2012.

Case No. 8:12-CV-1837-T-17MAP

As to the initial scheme, the Court has looked for a factual allegation of how the contracts and checks were sent from the Smiths to the Investment Companies, and how the Investment Companies made their investments with the Smiths. Crossclaim Plaintiffs allege that after the initial investment was successful, the Investment Companies participated in more and more contracts with the Smiths, and over this time the Smiths continued to offer more and more investments and to renew the old ones, urging Kaplan through the Investment Companies to take new contracts upon the expiration of each prior contract, leaving the principal sum to "ride" from contract to contract. (Par 72). The Investment Companies held checks from the investments, instead of depositing them. (Par. 73). The Smiths urged Kaplan to reinvest the returns and invest new money into the deals, until the Investment Companies had over seven million dollars invested with the Smiths. (Par. 75). Crossplaintiffs allege a time span, but there are no specific allegations of when each investment was made, and the contracts for those investments are not attached to the Amended Counterclaim. There is no factual allegation of how the Smiths sent the contracts and checks to the Investment Companies, or how the Investment Companies made their investments. Where there is no allegation that the scheme to defraud uses the mail or wires, or the scheme's participants cause the mail or wires to be used, the allegations do not amount to mail fraud or wire fraud. The above allegations are not sufficient for a RICO claim based on acts of mail fraud or wire fraud.

As to the second phase of the scheme, there are sufficient allegations of the use of private and commercial interstate carriers to deliver checks to the Investment Companies and the Investment Companies' subsequent use of wires to transfer funds to the Smiths, both in furtherance of the scheme to defraud.

The allegations of the second phase of the investment scheme identify particular acts of mail fraud. In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. H.J., Inc. v. NW Bell Tel. Co., 492 U.S. 229, 240 (1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Id. at 242.

Continuity refers to either a closed period of repeated conduct, or to past conduct that by its nature projects in the future with a threat of repetition. In an open-ended case that relies on allegations of a threat of repetition, a plaintiff can meet his burden by establishing either that the racketeering

7

Case No. 8:12-CV-1837-T-17MAP

acts themselves include a specific threat of repetition extending indefinitely into the future or that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.

The relevant period for determining continuity is the time during which the predicate acts take place, not the time during which the entire scheme to defraud takes place. Coquina Investments v. TD Bank, N.A., 760 F.3d 1300 (11th Cir. 2014). This case involves a closed period of repeated conduct. The acts of mail fraud extended from November, 2011 through January, 2012. Courts have found that a period of time less than twelve months does not constitute a substantial period of time. Jackson v. Bellsouth Communications, Inc., 372 F.3d 1250 (11th Cir. 2004).

Crossclaim Plaintiffs alleged that Starr formulated the scheme to defraud, explained the scheme to defraud and steered Crossclaim Plaintiffs to the Smiths. The Smiths "signed up" Crossclaim Plaintiffs. The Smiths owned the Bridgeview account, signed the checks and signed the contracts that stated the terms of Crossclaim Plaintiffs' investments, and which guaranteed the investments. Crossclaim Plaintiffs do not allege that Starr mailed or caused to be mailed any specific item or made any wire transfers.

Crossclaim Plaintiffs have not alleged mail fraud as to the scheme that extends from August, 2009 to November, 2011, or identified particular transactions during that time. The transactions which took place from November, 2011 through January, 2012 are alleged with particularity, but the time span is too short to be considered a substantial amount of time.

Case No. 8:12-CV-1837-T-17MAP

Crossplaintiffs allege that the role of BBG was to serve the "central processor" for the alleged scheme i.e. the out of town bank in which the Smiths (G. Smith, T. Smith, L. Smith, Smith Advertising & Associates, Inc.) owned the bank account on which checks were drawn to return the alleged investments, and return on investments, to Crossclaim Plaintiffs.

Crossclaim Plaintiffs have alleged BBG's actual knowledge of the alleged scheme to defraud and direct participation in the scheme by BBG, via one or more "high level" employees of BBG, and the payment of extra fees and other monetary incentives beyond being paid to service and maintain accounts, i.e. "extra compensation related to the Ponzi scheme," in exchange for allowing the other Conspirators to use BBG as a repository and accounting system.

In American Dental Ass'n v. Cigna Corp, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals notes that RICO claims predicated on fraud are subject to the plausibility requirement of Twombly and the particularity requirements of Fed. R. Civ. P. 9(b). The Eleventh Circuit Court of Appeals held that the plaintiffs' complaint did not plausibly or particularly allege a pattern of racketeering activity predicated on a scheme to commit acts of mail fraud and wire fraud, and plaintiffs failed to plausibly allege a conspiracy to commit RICO violations. The plaintiffs failed to plausibly allege a conspiracy to commit RICO violations "where plaintiffs merely offered conclusory allegations of agreement accompanied by statements of parallel behavior, which just as easily suggest independent, lawful action." id at 1296.

Crossplaintiffs allege that BBG, with other parties, conducted or participated in the conduct of the Ponzi scheme's affairs through a pattern of racketeering activity in which all were knowingly engaged. Crossplaintiffs allege that BBG engaged in two or more acts of mail fraud and wire fraud. The first phase of the alleged scheme to defraud was initiated in August, 2009 and continued until November, 2011.

9

Case No. 8:12-CV-1837-T-17MAP

There are no factual allegations that show that BBG engaged in mail fraud between August, 2009 and November, 2011. There are no factual allegations of how the Smiths sent contracts and checks to Crossplaintiffs during that time. The contracts and checks for this time period are not attached to the Amended Counterclaim/Crossclaims.

As to wire fraud, Crossplaintiffs allege generally that BBG carried out transfers between accounts. Crossplaintiffs do not identify the owners of the accounts, the amount of the transfers or when the transfers took place. If checks were drawn on BBG between August, 2009 and November, 2011 that constituted acts of wire fraud, those checks have not been identified.

As to the second phase of the scheme, November, 2011 through January, 2012, the Court found that there were sufficient allegations of private and commercial interstate carriers to deliver checks to Crossplaintiffs, and Crossplaintiffs' subsequent use of wires to transfer funds to the Smiths, both in furtherance of the scheme to defraud. Copies of the contracts for that time period are attached to the Amended Counterclaim/Crossclaims. A demand letter which lists the date of checks drawn on BBG and payable to Crossplaintiffs is attached to the Amended Counterclaim/Crossclaims. The Court takes judicial notice that copies of the checks payable to Crossplaintiffs but returned by BBG to Regions Bank are attached to the Second Amended Complaint (Dkt. 190, Exhs. 190-3 - 190-6). The face of each check shows that Smith Advertising & Associates, Inc. appears as the owner of the account, and two signatures are required on each check, which the Court understands to be G. Smith and T. Smith. The sequential numbering of the checks payable to R1A Palms, LLC, MK Investing, LLC, Triple Net Exchange, LLC and BNK Smith, LLC which are drawn on BBG indicates that all of the checks are drawn on one Smith Advertising Account.

10

Case No. 8:12-CV-1837-T-17MAP

This case involves a closed period of repeated conduct.  Even if the Court assumes that each check drawn on BBG from November, 2011 through January, 2012 is an act of wire fraud, that period of time is not long enough to be considered a substantial period of time.  Courts have found that a period of time less than twelve months does not constitute a substantial period of time.  Jackson v. Bellsouth Communications, Inc., 372 F.3d 1250 (11th Cir. 2004).

After consideration, the Court grants Crossclaim Defendant Bridgeview Bank Group's Motion for Reconsideration is **granted**.   Counts IV, V, VI and VII are dismissed.


**DONE and ORDERED** in Chambers in Tampa, Florida on this 14th day of May, 2015.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record