UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, an Alabama banking corporation,

    Plaintiff,

vs.                                                                       8:12-cv-01837-EAK-MAP

MARVIN I. KAPLAN, an individual; *et al.*,

    Defendants.
_____/

## REGIONS' MOTION TO EXCLUDE OPINION TESTIMONY OF KAPLAN ENTITIES' EXPERT AND SUPPORTING MEMORANDUM OF LAW[1]

Regions seeks an order, pursuant to FRE 702 and 402, excluding the opinions of Jason D. Koontz ("Koontz") against Regions.

## BACKGROUND

Koontz has two opinions against Regions:

Opinion #1:

[It] did not follow prudent and acceptable banking practice when wiring funds on uncollected balances.

Opinion #2:

[It] did not follow prudent banking practices when ageing [*sic*] to but disregarding a customer's instructions regarding electronic transfers from the customer's account.

Koontz Report at 11-12.[2]

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions in the Joint Statement of Undisputed Material Facts submitted by Bank Parties. "Report" is Koontz' report dated May 14, 2015, which has been submitted with Bank Parties' Notice of Filing Deposition Transcripts and Deposition Exhibits. Unless otherwise indicated, all emphasis and brackets are added.

[2] These opinions are independent of each other. Koontz dep. at 182-83.

On Opinion #1, Koontz contends Regions made an imprudent credit decision in executing Kaplan Entities' payment orders using uncollected funds because Regions may not be able to recover the wired funds from the beneficiary's bank or the customers if an overdraft occurred. *Id.* at 11. On Opinion #2, Koontz assumes the truth of Kaplan Entities' averment that Regions orally agreed to wire only cleared funds, *id*, and concludes that Regions was not prudent in breaching this oral agreement. *Id*. at 12.

These opinions do not satisfy Rule 702 and are irrelevant under Rule 402. Whether Regions made an imprudent credit decision in wiring uncollected funds is not at issue. Koontz lacks any knowledge of standard commercial practices of banks in Sarasota, Florida concerning wiring uncollected funds—knowledge essential to an "ordinary care" inquiry under Florida's Uniform Commercial Code ("UCC"). Opinion #1 is not reliable and represents Koontz' pure opinion; it is not subject to testing or supported by any authoritative source. Opinion #1 is also contrary to law and the Deposit Agreement. UCC Article 4, the federal Expedited Funds Availability Act and the Deposit Agreement permitted Regions to provide availability to Kaplan Entities on deposited SAA checks, and Regions owed no duty to Kaplan Entities in making availability decisions or wiring uncollected funds.

Opinion #2 is irrelevant and does not assist the Court as trier of fact. An "imprudent" breach of an oral agreement conveys no meaning, much less an expert meaning. Koontz has no opinion, nor could he, whether Regions breached an oral agreement.

## ARGUMENT

The Court acts as gatekeeper to admission of expert testimony. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993); *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003). The Court conducts a three-part inquiry under Rule 702: (1) whether the

expert is qualified to testify competently regarding the subject matter; (2) whether the methodology is sound; and (3) whether the testimony assists the trier of fact through application of scientific, technical, or specialized expertise. *Edwards v. Shanley*, 580 F. App'x 816, 822 (11th Cir. 2014) (citing *United States v. Frazier*, 387 F.3d 1244, 1258, 1260 (11th Cir. 2004) (*en banc*) (in turn, citing *Daubert*, 509 U.S. at 589). Kaplan Entities have the burden on these criteria. *Frazier*, 387 F.3d at 1260.

I. **OPINION #1**

　　A. **Opinion #1 Not Relevant**

Koontz admitted that Opinion #1 derives from a protection-of-the-bank perspective, not protection-of-the-customer. Koontz dep. at 211-14. He also acknowledged that a bank is entitled to execute wires on uncollected funds, and readily admitted the Kaplan Entities were liable for the overdrafts under the Deposit Agreement and the law. *Id.* at 216-20; 225-26.[3] Whether Regions made a prudent credit decision to advance funds on deposited SAA checks for Kaplan Entities' internal transfers or outgoing wires is not at issue, rendering Opinion #1 inadmissible under Rule 702 and irrelevant under Rule 402. *Daubert*, 509 U.S. at 591–92 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.'").

　　B. **No Knowledge of Commercial Standards in Relevant Location**

Kaplan Entities' claim that Regions failed to act with ordinary care is based on its providing availability on deposited SAA checks. ACC ¶ 316. "Ordinary care" is the "observance of reasonable commercial standards, prevailing in the area in which the person is

---

[3] Before rendering his opinion, Koontz reviewed the Deposit Agreement. Koontz dep. at 49, 186-87, 191-92.

located, with respect to the business in which the person is engaged." *See* § 673.1031(1)(g); § 674.104(3) (adopting for Article 4 definition of "ordinary care" in § 673.1031(1)(g)).  Regions maintained the Kaplan Accounts at its branch at 1626 Ringling Blvd., Sarasota, Florida, the same building in which Kaplan worked, at which all SAA checks were deposited. *See, e.g.*, ACC ¶¶ 122, 145, 318.

Koontz has no knowledge of any commercial standards in Sarasota concerning the subject matter of Opinion #1. Koontz dep. at 203-05. Koontz's lack of knowledge regarding the prevailing banking standards in Sarasota, Florida where the Kaplan Accounts were located and the relevant location under § 673.1031(1)(g) renders him incompetent to offer testimony on "ordinary care." *Berhow v. The Peoples Bank*, 2006 WL 839529 (S.D. Miss. 2006) (excluding testimony under Mississippi's UCC § 3-103(a)(7) because expert was not familiar with prevailing commercial banking standards in Biloxi, Mississippi, the relevant location to determine ordinary care); *Valley Bank of Ronan v. Hughes*, 147 P.3d 185, 195 (Mont. 2006) (affirming district court's exclusion of expert testimony regarding bank's ordinary care because expert possessed no knowledge of prevailing banking standards in Ronan, Montana, the relevant location under Montana's UCC § 3-102(1)(g)).[4]

### C.    Opinion #1 Not Reliable

Opinion #1 represents classic *ipse dixit* reasoning not subject to testing or supported by any authoritative source:

> Q. Okay. In evaluating and then rendering your opinion number, did you review the Uniform Commercial Code as -- as adopted in Florida?
>
> A. I did not.
>
> Q. Have you ever reviewed the Uniform Commercial code adopted anywhere?

---

[4] The same as § 673.1031(1)(g).

4

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

8:12-cv-01837-EAK-MAP

A. I have at some point, yes.

Q. The one in West Virginia?

A. I've reviewed it. I've worked on cases in West Virginia, Ohio, Florida -- a few states. I can't specifically think at the moment if there's a particular version.

Q. Okay. What -- what provisions of the Uniform Commercial Code, Article 4 in particular, are pertinent to your opinion number 1 with respect to a bank wiring out uncollected funds?

A. I would have to review that before I could speak with any certainty.

Q. So you did not review any part of Article 4 of the UCC prior to rendering your opinion to see if your opinion was consistent or inconsistent with Article 4 to the UCC.

A. That's correct.

Q. And -- and the same with respect to Brady on Bank checks.[5] You did not review any part of Brady on Bank [C]hecks to determine if your opinion number 1 was consistent with or inconsistent with Brady on Bank [C]hecks?

A. That's correct.

Q. Okay. Any other authoritative materials – did you review any other authoritative materials before deciding to render your opinion number 1?[6]

A. No.

Q. Are there any publications that you are aware of anywhere in the world that actually supports your opinion number 1?

A. I cannot give you a specific reference.

---

[5] Koontz testified that he reviewed Brady on Bank Checks for the "Refer to Maker" issue, and decided not to render any opinions on that subject. Koontz dep. at 53-54; 187.

[6] Not surprisingly, Opinion #1 is contrary to authoritative sources. *See, e.g.*, 6A Hawkland UCC Series § 4-215:14 [Rev.] ("A bank may forego its right to delay availability of funds. The bank even may have different availability policies for different classes of customers. It may choose to give most of its customers immediate use of the funds and to selectively impose holds on a case-by-case basis. A bank may impose holds on a case-by-case basis as long as the funds are made available no later than required under the Mandatory Availability Schedule.") (footnote omitted).

Q. How about any reference, specific or nonspecific?

A. I don't know.

Q. Are there -- are there any cases -- you know what I mean by "cases," right?

A. Yes.

Q. Case law. Is there any case law that supports your opinion number 1 anywhere?

A. I don't know.

Q. Did you look?

A. I've -- I've done some preliminary work. We referenced an e-mail there earlier. I've looked at cases from time to time. I don't specifically remember seeing a case in regards to what you're asking.

Q. If -- if -- if there were a case which specifically disagrees with your opinion, would that --would that affect your opinion?

A. It could.

Q. Would it –

A. I would be totally open to taking a look at it.

Koontz dep. at 200-03. Proffered expert testimony must be based, *inter alia*, on a reliable foundation, *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 2312 (2015), and be subject to testing. *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1327 (11th Cir. 2014) ("trial courts may consider a non-exhaustive list of factors including (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential error rate of the technique; and (4) whether the technique is generally accepted in the scientific community. *Id.*"). Opinion #1 constitutes "ipse dixit reasoning devoid of any substantive analysis, [and is] insufficient as a matter of law." *Madura v. BAC Home Loans Servicing L.P.*, 2013 WL 3777094,

6

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

at *7 (M.D. Fla. 2013), *aff'd*, 593 F. App'x 834 (11th Cir. 2014), *cert. denied*, *Madura v. Bank of Am., N.A.*, 136 S. Ct. 133 (2015) (quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1111 (11th Cir. 2005)). "Pure opinion" expert testimony is not reliable and should be excluded. *See Pearson-Heffner v. United States*, 2006 WL 3075703, at *16 (M.D. Ala. 2006).

### D.   Opinion #1 Contrary to Law

An expert opinion contrary to law is inadmissible. *Martinez v. Rabbit Tanaka Corp. Ltd.*, 2006 WL 5100536, at *14 (S.D. Fla. 2006); *Bailey v. Allgas, Inc.*, 148 F. Supp. 2d 1222, 1246 (N.D. Ala. 2000), *aff'd*, 284 F.3d 1237 (11th Cir. 2002) (excluding expert because, *inter alia*, the expert's "conclusions are based upon analyses that are contrary to the law as established by the Eleventh Circuit and the United States Supreme Court, and therefore lack any credible support."). As Koontz acknowledged, *see* Koontz dep. at 214-15; 218-19; 225-26, the law and the Deposit Agreement permitted Regions to provide availability on deposited SAA checks and use of uncollected funds for Kaplan Entities' outgoing wires. *See also* Regions' motion for summary judgment at 16-20 (cataloguing cases). Indeed, providing availability on checks is standard banking practice. *See Fischer & Mandell LLP v. Citibank, N.A.*, 632 F. 3d 793, 799 (2d Cir. 2011) ("By permitting its customers access to funds on a provisional basis, subject to the right of a charge-back and refund, Citibank was merely following a practice that is common in the banking industry.").

### II.   OPINION #2

Koontz opines that Regions acted imprudently by breaching an oral agreement with Kaplan Entities, Koontz dep. at 229, because a banker should keep her word. *Id.* at 242-43. Opinion #2 is not based on "scientific, technical, or other specialized knowledge," FRE 702(a),

7

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

but rather on Koontz's general sense of banking etiquette: "As a banker if I were to give my word to someone, I would expect that my word would stand." *Id*. at 242; *accord id*. at 243 ("I think it's – would be prudent for a banker if they were to give someone their word or to agree with something that they live with that word."). This does not assist the Court as trier of fact.

Opinion #2 is contrary to the law and the governing account agreements. Article 4A, the Deposit Agreement, and the WTA all require any special instructions, agreements or limitations regarding wires be in writing. *See* § 670.202(2) (bank must comply with "any *written* agreement or instruction of the customer restricting acceptance of payment orders issued in the name of the customer"); Deposit Agreement ¶ 4 ("Special instructions for handling an item[7] are effective only if made in a separate writing and given to us along with the item."); WTA ¶ 4 ("Each payment order that you send us must comply with the requirements of the [WTA], contain sufficient data and comply with any written instructions or restrictions that you have given us."). Indeed, after reviewing paragraph 37 of the Deposit Agreement prohibiting Kaplan Entities from relying on oral representations[8] of Regions employees, Koontz admitted that he was "satisfied that the deposit agreement to which Mr. Kaplan agreed precludes oral agreements concerning deposit accounts[.]" *Id*. at 237-40.[9]

---

[7] The Deposit Agreement defines "items" as including telephonic transfers. Deposit Agreement at 1.

[8] There is no writing by which Regions agreed to wire only cleared funds, and although the account agreements permitted the Kaplan Entities to provide such written limitations, they failed to do so. SOF ¶¶ 33, 37(c)-(d).

[9] Koontz also acknowledged that based on the Deposit Agreement, if the bank did not notify the customer of a hold, the customer should be aware that deposits are receiving next-day availability, Koontz dep. at 218, and if the customer used the availability, the customer is obligated to reimburse the bank for any overdrafts resulting from that use. *Id*. at 219.

8

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

Opinion #2—based on general concepts of right and wrong and from which Koontz retreated at deposition—is not the proper subject of expert testimony. *See United States v. Masferrer*, 367 F. Supp. 2d 1365, 1373 (S.D. Fla. 2005) ("Proffered expert testimony generally will not help the trier of fact when it offers nothing more than factual and legal conclusions argued by experienced lawyers for the parties in closing arguments.") (citing *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004)).

### CONCLUSION

The Court should preclude Koontz from offering any opinions against Regions.

### LOCAL RULE 3.01(g) CERTIFICATE

I certify that before filing this motion, we conferred with counsel to Kaplan Entities in a good faith effort to resolve the issues raised by the motion, and we were unable to agree.

Dated:  November 16, 2015

> GARBETT, ALLEN & ROZA, P.A.
> Counsel to Regions
> Brickell City Tower - Suite 3100
> 80 S.W. 8th Street
> Miami, Florida 33130
> Telephone:  305-536-8861
> Telefax:  305-579-4722
> David S. Garbett, FBN 356425
> Email: dgarbett@gsarlaw.com
> Joseph D. Perkins, FBN 41875
> Email: jperkins@gsarlaw.com
>
> By:    /s/ David S. Garbett
>        David S. Garbett

### CERTIFICATE OF SERVICE

I certify that on November 16, 2015, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record identified on the below service list.

9

8:12-cv-01837-EAK-MAP

/s/ Joseph D. Perkins

**SERVICE LIST**

**Counsel to Kaplan Parties**
Jon D. Parrish, Esq.
Donald G. Peterson, Esq.
Parrish, White & Yarnell, P.A.
3431 Pine Ridge Road, Suite 101
Naples, FL 34109
jonparrish@napleslaw.us
donpeterson@napleslaw.us

**Counsel to BBG**
William G. Lazenby, Esq.
Jason M. Ellison, Esq.
Brittney Baker, Esq.
Ellison Lazenby
200 Central Avenue, Suite 2000
St. Petersburg, FL 33701
jellison@elattorneys.com
wlazenby@elattorneys.com
bbaker@elattorneys.com

**Counsel to WFB**
Mark J. Ragusa, Esq.
Gunster Law Firm
401 E. Jackson St., Ste. 2400
Tampa, FL 33602
mragusa@gunster.com
tkennedy@gunster.com
eservice@gunster.com

**Counsel to Starr**
A. Brian Albritton, Esq.
Jason P. Stearns, Esq.
Phelps Dunbar, LLP
100 S. Ashley Drive, Suite 1900
Tampa, FL 33602-5311
brian.albritton@phelps.com
Jason.stearns@phelps.com