UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

    Plaintiff,

v.                                CASE NO. 8:12-CV-1837-T-17MAP

MARVIN I. KAPLAN, et al.,

    Defendants.

_____

MARVIN I. KAPLAN, etc., et al.,

    Counterclaim/Crossclaim Plaintiffs,

v.

REGIONS BANK, etc., et al.,

    Counterclaim/Crossclaim Defendants.
_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 542 | Statement of Undisputed Facts (Bank Parties) |
| Dkt. 549 | Statement of Undisputed Facts, with Exhibits A-F (Starr) |
| Dkt. 550 | Motion for Summary Judgment (Charles A. Starr III) |
| Dkt. 551 | Statement of Undisputed Facts (Kaplan) |
| Dkt. 585 | Notice of Filing in Support of Dkt. 590 (Kaplan Parties) |
| Dkt. 590 | Statement of Undisputed Facts in Opposition to Dkt. 549 (Kaplan Parties) |
| Dkt. 591 | Response in Opposition (Kaplan Parties) |

Case No. 8:12-CV-1837-T-17MAP

    Dkt. S-596    Exhibits (Under Seal)
    Dkt. S-597    Exhibits (Under Seal)
    Dkt. 603    Corrected Response to Dkt. 550, Motion for Summary Judgment (Kaplan Parties)

Crossclaim Defendant Charles Larry Starr moves for summary judgment against Crossclaim Plaintiffs Marvin I. Kaplan, R1A Palms, LLC ("R1A"), Triple Net Exchange, LLC ("TNE"), MK Investing, LLC ("MKI"), BNK Smith, LLC ("BNK") as to the only remaining claim against Crossclaim Defendant Starr in the Amended Counterclaim/Crossclaim (Dkt. 93), Count II, Conspiracy to Defraud.

In Count II of the Amended Counterclaim/Crossclaim (Dkt. 93), Crossclaim Plaintiffs allege that Crossclaim Defendant Starr, T. Smith, G. Smith, L. Smith, Bridgeview Bank Group and Smith Advertising entered into an agreement to unlawfully defraud Crossclaim Plaintiffs, that the Conspirators engaged directly and overtly in conduct in pursuance of the conspiracy, and Crossclaim Plaintiffs have been damaged by the Conspirator's unlawful conduct.

Crossclaim Defendant Starr moves for summary judgment on Count II because there is no record evidence to support the claim that Crossclaim Defendant Starr knew of SAA/Smiths' illegal activity in 2008 or that Crossclaim Defendant Starr formed an agreement with SAA/Smiths to defraud Crossclaim Plaintiffs.

Crossclaim Plaintiffs Kaplan, R1A, TNE, MKI and BNK oppose the Motion for Summary Judgment.

The Court heard oral argument on December 22, 2015. (Dkt. 606). The Court notes that the objections of Crossclaim Plaintiffs were withdrawn as to paragraphs 20, 41, 74 and 75 of Crossclaim Defendant Starr's Statement of Undisputed Facts.

Case No. 8:12-CV-1837-T-17MAP

I. Preliminary Issues

The Court notes that a Final Default Judgment has been entered as to Crossclaim Defendants G. Todd Smith, Gary T. Smith, Lucy B. Smith and Smith Advertising & Associates, Inc. (Dkts. 346, 349). The Court has granted summary judgment in favor of Bridgeview Bank Group as to Count II.

The Court takes judicial notice of the following criminal cases:

| | |
|---|---|
| Case No. 8:16-CR-120-T-17TGW | U.S. v. Gary Todd Smith |
| Case No. 8:16-CR-34-T-17JSS | U.S. v. Tanisha Melvin |
| Case No. 8:16-CR-35-T-35MAP | U.S. v. Amber Mathias |
| Case No. 8:16-CR-36-T-33TGW | U.S. v. Marcia Caulder |

Tanisha Melvin, Amber Mathias and Marcia Caulder, former employees of Smith Advertising, have entered into plea agreements which include a detailed factual statement as to the scope of the fraud scheme. The factual statements indicate that one facet of the fraud scheme was "bridge loans" and another facet of the fraud scheme was "invoice factoring." Crossclaim Defendant Starr played a role in organizing Receivable Management Funding, LLC ("RMF"), an invoice factoring entity which was persuaded by Smith Advertising to step into the role that Capital Plus Equity, LLC had played, after Capital Plus Equity uncovered the fraud of Smith Advertising. (Case No. 8:16-CR-34-T-17JSS, Dkt. 4, pp. 16-20). Smith Advertising created false invoices to support the factoring arrangement with RMF.

The Court also takes judicial notice of the default judgment in the amount of $17,632,735.14 registered in Sarasota County Circuit Court in favor of RMF against Smith Advertising & Associates, Inc., Gary T. Smith and Todd G. Smith. The default

Case No. 8:12-CV-1837-T-17MAP

judgment was entered in Case No. 12-CVS-4437, General Court of Justice, Superior Court Division, Wake County, North Carolina.

Crossclaim Defendant Starr has filed a victim impact statement seeking restitution in the amount of $1,266,616.26. (Dkt. 549-4, p. 98).

II. Background

Crossclaim Defendant Starr has filed a Statement of Undisputed Facts, and Crossclaim Plaintiffs have filed a Statement of Disputed Facts in Opposition.

Crossclaim Defendant Starr incorporates in part the Statement of Undisputed Facts of Bank Parties (Dkt. 542, pars. 47-74, 94, pp. 19-27).

The material recited facts are drawn from the Statements of Undisputed Facts and other record evidence; the facts are either undisputed or taken in the light most favorable to non-movants, Crossclaim Plaintiffs.

In the Court's prior Order (Dkt. 351), the Court noted the general factual allegations of the Amended Counterclaim/Crossclaim (Dkt. 93) of the actions of Crossclaim Defendant Starr (pars. 17-65), and noted additional factual allegations supporting intentional participation (Dkt. 351, p. 15).

Crossclaim Defendant Starr and Crossclaim Plaintiff Kaplan participated together in one investment with Smith Advertising in 2008, the initial $50,000 investment, which was successful. Crossclaim Plaintiff Kaplan's investment was returned to him. In deposition, Crossclaim Plaintiff Kaplan testified that, after that initial investment, Crossclaim Plaintiff Kaplan made his own investments. (Dkt. 549-2, p. 41).

Case No. 8:12-CV-1837-T-17MAP

At the time of the initial investment in 2008, only Crossclaim Plaintiff R1A existed. R1A was formed on July 24, 2008. TNE, MKI and BNK were organized at a later time.

In deposition, Crossclaim Defendant Starr testified that he loaned the Smiths money in 2005 for a business line of credit. (Dkt. 549-1, p. 10). Crossclaim Defendant Starr testified as to two loans, and receiving a one-time fee of $1,500.00 and $1,200.00. He further testified as to a total of $200,000. up until 2008 that was SAA/Smiths' line of credit, for which SAA/Smiths paid monthly. (Dkt. 549-1, p. 13). Around that time, SAA/Smiths approached him with the factoring opportunity. (Dkt. 549-1, pp. 14-16). Crossclaim Defendant Starr testified that he learned of SAA/Smiths' fraud scheme in the first week of March, 2012. (Dkt. 549-1, p. 23, Dkt. S-596). Crossclaim Defendant Starr denied ever communicating with Bridgeview Bank Group, and denied knowledge of any agreement with Bridgeview Bank Group. (Dkt. 549-1, p. 27).

Brenda Tamm, office manager for Realty 1 Alliance, testified that in 2009 she used a spreadsheet to keep track of due dates for investments with SAA for four individuals. (Dkt. 549-3, pp. 7-8). She kept track of the due dates as part of her assigned responsibilities. (Dkt. 549-3, p. 8). Brenda Tamm further testified that in October, 2010, Crossclaim Plaintiff Kaplan asked if she or Danielle [Dreznin] could help him keep track of his due dates, and she agreed to do so. (Dkt. 549-3, p. 9).

Danielle Dreznin, office assistant, testified that she would communicate with Crossclaim Plaintiff Kaplan about the existence of a loan, as part of routine support to Crossclaim Plaintiff Kaplan as a tenant in the building. (Dkt. 549-5, pp. 7-9). Danielle Dreznin denied speaking to Crossclaim Defendant Starr about Marvin Kaplan. (Dkt. 549-5, p. 9).

Case No. 8:12-CV-1837-T-17MAP

In January, 2012, Crossclaim Plaintiffs agreed to a series of four "bundled deals" which took place between Friday, January 20, 2012 and Tuesday, January 24, 2012 (dated of last wire transfer). These transactions resulted in Crossclaim Plaintiffs' alleged losses for which they sought restitution of $24,228,535.00. (Dkt. 549-6, p. 2).

In his deposition, Crossclaim Plaintiff Kaplan testified he did not know how much money R1A, TNE, MKI and BNK had invested in the SAA scheme, and did not know how that amount could be determined. (Dkt. 549-2, p. 67, pp. 80-83, pp. 119-121).

III. Standard of Review

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are...irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson, 477 U.S. at 248. But, "[i]f the evidence is merely colorable...or is not significantly probative...summary

Case No. 8:12-CV-1837-T-17MAP

judgment may be granted." Id. at 249-50.

IV. Discussion

Crossclaim Defendant Starr seeks entry of summary judgment as to Count II. Starr argues that: 1) there is no direct evidence that Starr formed an agreement with the Smiths and BBG; 2) there is no direct evidence that Starr knew of Smiths' fraudulent activities in 2008 when Kaplan was introduced to the Smiths; 3) there is no direct evidence that Starr assisted the Smiths in furtherance of the alleged SAA Ponzi scheme; and 4) there is no circumstantial evidence that justifies any reasonable inference that Starr was a conspirator. Starr further argues that there is no record evidence that R1A, TNE, MKI and BNK suffered any cognizable damages as a result of the alleged conspiracy. Starr further argues that the Court should have dismissed Count II when the Court dismissed the fraud and negligent misrepresentation claims against Starr. (Dkt. 84).

Crossclaim Plaintiffs respond that there is sufficient record evidence which creates a dispute of material fact as to whether Starr engaged in a conspiracy with SAA. Crossclaim Plaintiffs date Starr's engagement in the alleged conspiracy from October, 2009, when Receivables Management Funding, LLC was formed. Crossclaim Plaintiffs rely on a series of emails which show Starr's participation in bridge loans to Crossclaim Plaintiff Kaplan, from November 27, 2009 through January 24, 2011. Crossclaim Plaintiffs also refer to a promissory note dated June 26, 2009 that shows Starr signed off one of Kaplan's transactions with SAA. Crossclaim Plaintiffs argue that Starr introduced Kaplan to the Smiths, that Brenda Tamm, authorized agent for Starr, documented every single transaction with the Smiths, and Starr has a prior conviction for wire fraud.

Case No. 8:12-CV-1837-T-17MAP

Crossclaim Plaintiffs further argue that there is record evidence of an ascertainable amount of damages.

A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do an unlawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. See Florida Fern Growers Assoc., Inc. v. Concerned Citizens of Putnam County, 616 So. 2d 562, 565 (Fla. 5th DCA 1993); Nicholson v. Kellin, 481 So. 2d 931, 935 (Fla. 5th DCA 1985).  Further, an actionable conspiracy requires an actionable underlying tort or wrong. See Florida Fern Growers, 616 So. 2d at 565; Wright v. Yurko, 446 So. 2d 1162, 1165 (Fla. 5th DCA 1984).

A conspiracy may be proven by circumstantial evidence, but this may be done "only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary." Raimi v. Furlong, 702 So.2d 1273, 1284 (Fla. 3d DCA 1997)(citing Diamond v. Rosenfield, 511 So. 2d 1031, 1034 (Fla. 4th DCA 1987)).

The Court has reviewed the evidence of record.  There is no direct evidence that Crossclaim Defendant Starr had actual knowledge of the fraudulent scheme in 2008, or at any time until March, 2012.  The inference created by the circumstantial evidence of conspiracy does not outweigh all reasonable inferences to the contrary.  The circumstantial evidence shows that Receivable Management Funding, LLC, was a victim-lender of the invoice-factoring scheme, and that Crossclaim Defendant Starr has sought restitution for losses he sustained in connection with the bridge loan scheme. In light of this finding, it is not necessary for the Court to address the other issues raised.

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court grants the Motion for Summary Judgment of Crossclaim Defendant Starr. Accordingly, it is

**ORDERED** that Crossclaim Defendant Starr's Motion for Summary Judgment (Dkt. 550) is **granted**.

**DONE and ORDERED** in Chambers in Tampa, Florida on this 19th day of April, 2016.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record