UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK, etc.,

    Plaintiff,

v.   CASE NO. 8:12-CV-1837-T-17MAP

MARVIN KAPLAN, etc., et al.,

    Defendants.

_____/

ORDER

This cause is before the Court on:

Dkt. 541-29   Affidavit of Ivan A. Garces
Dkt. 541-30   Expert Report
Dkt. 541-31   Supplemental Expert Report
Dkt. 541-32   Rebuttal Expert Report
Dkt. 554       Motion to Strike or Exclude Testimony and Report of Bridgeview's Purported Expert, Ivan Garces, with Exhibit (Expert Witness Report)(Kaplan Parties)
Dkt. 571       Response in Opposition (Bridgeview Bank Group)

    Crossclaim Plaintiffs Marvin I. Kaplan, R1A Palms, LLC, Triple Net Exchange, LLC, MK Investing, LLC and BNK Smith, LLC ("Kaplan Parties") move to exclude from evidence the testimony and report of Crossclaim Defendant Bridgeview Bank Group's expert witness, Ivan Garces.

    Crossclaim Plaintiffs contend that the findings in the Expert Report (April 14, 2015), and Supplemental Reports (May 14, 2015, June 15, 2015) of Ivan A. Garces should be excluded from evidence because they are inadmissible legal conclusions, because they embrace an ultimate issue to be decided by the trier of fact, because they

Case No. 8:12-CV-1837-T-17MAP

are irrelevant, and because they do not meet <u>Daubert</u> standards for admissibility.

Crossclaim Defendant Bridgeview Bank Group's expert witness provided an opinion on the following issues: 1) the use of the term "Refer to Maker" as a reason for a returned check; 2) whether Bridgeview Bank Group returned the checks in compliance with the time requirement set forth in the Code of Federal Regulations; 3) calculation of the annualized rate of return on investments; 4) at the time that Bridgeview Bank Group cleared incoming checks for payment, whether the SAA bank account had sufficient funds to pay the inclearing checks; and 5) whether Bridgeview Bank Group complied with the law and industry standards in charging overdraft fees.

Crossclaim Defendant Bridgeview Bank Group responds that Mr. Garces was qualified to testify, Mr. Garces determined the appropriate regulatory standards by reviewing appropriate sources, and Mr. Garces considered factual information as to industry use of the "Return to Maker" return designation, the return of the First Deal and Second Deal Checks, Bridgeview Bank Group's "pay-all" check system, and Bridgeview Bank Group's overdraft services and overdraft fees. Crossclaim Defendant Bridgeview Bank Group further argues that Mr. Garces' conclusions are admissible because they are based on factual information that is verifiable and reliable, they are sufficiently documented, and they assist the trier of fact by explaining relevant issues which are beyond the experience of the average citizen.

I. Standards - Fed. R. Ev. 702 and <u>Daubert</u>

The district court serves as a gatekeeper to the admission of scientific testimony. <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 589 (1993). The district court has the same responsibility when the court is presented with a proffer of expert technical evidence or other specialized knowledge. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999).

Case No. 8:12-CV-1837-T-17MAP

The district court considers whether:

1. The expert is qualified to testify competently regarding the matters he intends to address;

2. The methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

3. The testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in evidence.

See Quiet Technology DC-8, Inc. v. Hurel-Dubois, U.K. Ltd., 326 F. 3d 1333, 1340-41 (11th Cir. 2003). The Court's inquiry into the expert's qualifications, the reliability of the proffered opinion and the helpfulness of that opinion overlap each other; however, these are distinct concepts. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGahan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

"While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260-61. Fed. R. Ev. 702 provides that expert status may be based on "knowledge, skill, experience, training or education." "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Id. (citing Committee Note to the 2000 Amendments of Rule 702).

A qualified expert, however, must still offer reliable testimony. See Quiet Tech., 326 F.3d at 1341-42. "When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'" Frazier, 387 F.3d at 1261-62 (quoting Daubert, 509 U.S. at 592-93). In ascertaining the reliability of a particular scientific expert opinion, the Court considers, to the extent possible: 1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community... [T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its rule 702 analysis. Id. at 1262.

The district court must determine whether the proposed testimony is sufficiently relevant. Expert testimony is considered relevant when "it logically advances a material aspect of the proposing party's case." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999)(quotations and citation omitted).

It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. "A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Verani, 253 F.3d 641, 666 (11th Cir. 2001). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).

Case No. 8:12-CV-1837-T-17MAP

II. Discussion

1. Qualified to Testify

The Expert Report identifies Mr. Garces' education, professional certifications and experience in rendering expert opinions in the banking industry. Mr. Garces has provided expert testimony in six banking and regulatory matters in state and federal courts in Florida within the last five years, and has co-authored over fifteen banking and compliance articles.

After consideration, the Court finds that Mr. Garces is qualified by his education, training and experience.

2. Methodology is Reliable

Crossclaim Defendant Bridgeview Bank Group ("BBG") argues that Mr. Garces used a reliable methodology. Non-scientific, experience-based opinions and testimony, such as that of Mr. Garces, will be admissible where "properly grounded, well-reasoned, and non-speculative." United States v. Masferrer. 367 F.Supp.2d 1365. 1373 (S.D. Fla. 2005). Crossclaim Defendant BBG argues that Mr. Garces' conclusions are admissible because they are based on factual information which is verifiable and reliable, and are sufficiently documented.

Crossclaim Defendant BBG argues that Mr. Garces gathered documentation concerning the reason BBG return the First Deal Checks and Second Deal Checks RTM, and industry usage of the RTM designation, including its availability, usage and circumstances under which it is used. Mr. Garces then applied the industry comments and historical use of the RTM designation to the facts at issue, opining whether BGG's return of the First Deal Checks and Second Deal Checks complied with industry

Case No. 8:12-CV-1837-T-17MAP

comments and standards.

As to the Supplemental Report, Crossclaim Defendant BBG argues that Mr. Garces gathered documentation concerning BBG's "pay-all" check paying system, by which all checks automatically post to a customer's account on presentment, together with BBG's records for the SAA account at issue. BBG argues that Mr. Garces reliably applied the methodology, i.e. reviewing the check paying system and the bank records to support the transactions reviewed (bank statements and wire transfer receipts), and determined that, when a pay or return decision was due from BBG, there were sufficient funds to pay the checks presented against the SAA account, and there was never a check paid against insufficient funds.

As to the Rebuttal Report, Mr. Garces reviewed industry standards concerning overdraft services and overdraft fees against which BBG's conduct could be measured. Mr. Garces then applied the facts [BBG's conduct] against the standard [overdraft services and overdraft fees] and determined that BBG's conduct was permissible according to the standard.

The opinions at issue are not scientific opinions and do not apply scientific techniques or theories; the Daubert factors as to reliability are not helpful in determining the reliability of the methodology. Mr. Garces has identified the industry standards which guide his opinions, and has identified the underlying data. Mr. Garces' opinions partially rely on the application of mathematical formulas. After consideration, the Court finds that BBG has established that the opinions of Mr. Garces are sufficiently reliable.

3. Opinions Will Assist the Trier of Fact

Crossclaim Defendant BBG argues that Mr. Garces has not offered legal

Case No. 8:12-CV-1837-T-17MAP

opinions, but does offer his opinion that BBG's use of the RTM designation was permissible and consistent with industry comments on the subject, and that BBG provided notice of non-payment within the time requirements of 12 C.F.R. Sec. 229.33.

Crossclaim Defendant BBG argues that Mr. Garces' Reports and opinions assist the trier of fact by explaining bank systems and regulations. Crossclaim Defendant BBG further argues that the processes and procedures that a bank utilizes to pay or return a check are beyond the experience of the average citizen. BBG argues that experts are permitted to opine on whether a party acted in compliance with industry standards, and an expert may opine on regulatory compliance. See Travelers Indemnity Co. of Illinois v. Royal Oak Enterprises, Inc., 2004 WL3770751, at *2 (M.D. Fla. Aug. 20, 2004); Guenther v. Novartis Pharm. Corp., 2013 WL 1278089, at *3 (M.D. Fla. March 28, 2013). BBG argues that Mr. Garces merely provides background information on the law and regulations issued by the Board of Governors of the Federal Reserve System, and banking industry practice and custom under those rules.

After consideration, the Court finds that the opinions of Mr. Garces are relevant and may assist the trier of fact. Accordingly, it is

**ORDERED** that the Motion to Strike or Exclude Testimony and Report of Bridgeview's Purported Expert, Ivan Garces (Dkt. 554) is **denied.**

Case No. 8:12-CV-1837-T-17MAP

**DONE and ORDERED** in Chambers in Tampa, Florida on this 24th day of March, 2017, nunc pro tunc April 17, 2016.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record