UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION,

REGIONS BANK, etc.,

      Plaintiff,

v.                         CASE NO.  8:12-CV-1837-T-17MAP

MARVIN KAPLAN, etc., et
al.,

      Defendants.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 573-1 | Declaration of Richard Fechter |
| Dkt. S-582 | Report of Richard Fechter (Sealed) |
| Dkt. 720 | Oral Motion in Limine (Daubert) Regarding Testimony of Witness Richard Fechter |

At trial on May 5, 2016, Defendants/Counterclaimants Marvin I. Kaplan, R1A
Palms, LLC, Triple Net Exchange, LLC, MK Investing, LLC and BNK Smith, LLC,
("Kaplan Parties") moved in limine to exclude the testimony and report of witness
Richard Fechter.   The Court heard oral argument.  (Dkt. 723).

The Kaplan Parties argued that Mr. Fechter's opinion was specific to the issues
of check kiting and bank fraud.  The Kaplan Parties argued that Mr. Fechter's testimony
would not assist the trier of fact because Mr. Fechter's opinion includes legal
conclusions and issues of ultimate fact.  The Kaplan Parties further argued that Mr.
Fechter's testimony was not relevant to the issues the Court must determine.

Case No. 8:12-CV-1837-T-17MAP

Richard Fechter was retained by the Regions Bank to review the deposit account activity between the Kaplan Accounts with Regions Bank and the SAA Account with Bridgeview Bank Group, from the Kaplan Accounts' opening through closure, and to render an expert opinion whether that account activity constituted check kiting.

I. Standards - Fed. R. Ev. 702 and Daubert

The district court serves as a gatekeeper to the admission of scientific testimony. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). The district court has the same responsibility when the court is presented with a proffer of expert technical evidence or other specialized knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999).

The district court considers whether:

1. The expert is qualified to testify competently regarding the matters he intends to address;

2. The methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

3. The testimony assists the trier of fact, through the application of scientific, technical or specialized expertise, to understand the evidence or to determine a fact in evidence.

See Quiet Technology DC-8, Inc. v. Hurel-Dubois, U.K. Ltd., 326 F. 3d 1333, 1340-41 (11th Cir. 2003). The Court's inquiry into the expert's qualifications, the reliability of the proffered opinion and the helpfulness of that opinion overlap each other; however, these are distinct concepts. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004). "The burden of laying the proper foundation for the admission of the expert

Case No. 8:12-CV-1837-T-17MAP

testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGahan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

"While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." Frazier, 387 F.3d at 1260-61. Fed. R. Ev. 702 provides that expert status may be based on "knowledge, skill, experience, training or education." "[I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Id. (citing Committee Note to the 2000 Amendments of Rule 702).

A qualified expert, however, must still offer reliable testimony. See Quiet Tech., 326 F.3d at 1341-42. "When evaluating the reliability of scientific expert opinion, the trial judge must assess 'whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue.'" Frazier, 387 F.3d at 1261-62 (quoting Daubert, 509 U.S. at 592-93). In ascertaining the reliability of a particular scientific expert opinion, the Court considers, to the extent possible: 1) whether the expert's theory can be and has been tested; 2) whether the theory has been subjected to peer review and publication; 3) the known or potential rate of error of the particular scientific technique; and 4) whether the technique is generally accepted in the scientific community... [T]hese factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its rule 702 analysis. Id. at 1262.

Case No. 8:12-CV-1837-T-17MAP

The district court must determine whether the proposed testimony is sufficiently relevant. Expert testimony is considered relevant when "it logically advances a material aspect of the proposing party's case." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1312 (11th Cir. 1999)(quotations and citation omitted).

It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. "A district court's gatekeeper role under Daubert is not intended to supplant the adversary system or the role of the jury." Maiz v. Verani, 253 F.3d 641, 666 (11th Cir. 2001). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993).

II. Discussion

1. Qualified to Testify

Richard Fechter holds an undergraduate degree in finance and a Juris Doctor degree. Since 2004, Richard Fechter has been a member of the Association of Certified Fraud Examiners and Association of Certified Anti-money Laundering Specialists. Mr. Fechter has over 20 years experience as a forensic accountant. Mr. Fechter has served as an expert witness regarding various aspects of banking and tracing of funds in the U.S. District Court for the Southern District of Florida. Mr. Fechter's Curriculum Vitae is attached to his report as Exhibit A.

At trial, Mr. Fechter testified as to his occupation, educational background and experience. Counsel for Kaplan Parties questioned Mr. Fechter to voir dire Mr. Fechter as to his experience, education and training in check kiting, and did not object to the qualifications of Mr. Fechter.

Case No. 8:12-CV-1837-T-17MAP

After consideration, the Court finds that Mr. Fechter is qualified by his education, training and experience.

2. Methodology is Reliable

At trial, Mr. Fechter explained in detail how he reached his conclusions. In his report and trial testimony, Mr. Fechter's opinion that there was a pattern of activity between the SAA Account and the Kaplan Accounts which is consistent with a check-kiting scheme is based on his assessment of the following factors:

1. Frequent daily deposits using numerous checks all coming from the same payor at the same bank;

2. Escalating balances;

3. Significant "Real" Money Being Withdrawn;

4. Utilization of Check Float;

5. Escalating Divergence Between Bank Balances and Ledger Balances;

6. Extraordinary Rates of Return;

7. Checks Written in "Round" Dollar Amounts.

Mr. Fechter included a citation to U.S. v. Cronic, 466 U.S. 648 (1984), in which the Supreme Court described a "check kiting" scheme designed to take advantage of the float and clearing time for check-processing by using two accounts, one at a bank in Tampa, Florida, and one at a bank in Norman, Oklahoma. In his report, Mr. Fechter states that, although kiting commonly involves mutual deposits of checks at two or more institutions, and use of the float created by check-processing delays, kiting can also involve deposits of checks at one bank and wire transfers from another bank. Mr. Fechter further explains that kiting is a plan designed to separate a bank from its

Case No. 8:12-CV-1837-T-17MAP

money by tricking it into believing that good funds are being deposited in an account when in actuality the instruments being deposited are being covered by the bank's own funds, accomplished by utilizing the float time in the banking system.

At trial, Mr. Fechter testified as to the two elements of a check kite: 1) a check is written against insufficient funds in a bank account; 2) in depositing the checks, having funds made available by the bank, and transferring those funds back to the original payor bank, in a continuous rotation from one bank to the other. Mr. Fechter further testified that check kiting did exist in the Kaplan Accounts. Mr. Fechter testified that the first time next day availability was used to support an outgoing wire was on December 21, 2011; prior to that time, the outgoing wires were supported by cleared funds. Mr. Fechter testified that the checks were deposited on December 21, 1011, and the outgoing wire was sent on December 23, 2011. Mr. Fechter testified in detail as to that transaction, and a series of transactions thereafter, with respect to wire transfers sent from the Kaplan Accounts until January 24, 2012. Mr. Fechter explained how he determined that the wire transfers from the Kaplan Accounts were necessary for Bridgeview Bank Group to cover and pay SAA checks previously deposited in the Kaplan Accounts.

The opinions at issue are not scientific opinions and do not apply scientific techniques or theories; the Daubert factors as to reliability are not helpful in determining the reliability of the methodology.    Mr. Fechter testified as to issues that required technical analysis, including check kiting.   Mr. Fechter identified the method by which he reached his conclusions, and identified the underlying data.

After consideration, the Court finds that Regions Bank has established that the opinions of Mr. Fechter are sufficiently reliable.

6

Case No. 8:12-CV-1837-T-17MAP

3. Opinion Will Assist Trier of Fact

Kaplan Parties argue that the opinion and report of Mr. Fechter will not add any insight to the issues the Court must determine.

Regions Bank responds that Regions Bank is not trying to obtain legal conclusions from Mr. Fechter, but is trying to have Mr. Fechter assist the trier of fact with respect to check kiting in general, how check kiting generally works, and how a non-traditional form of check-kiting is present in this case.

As to relevance, Regions Bank argues that Mr. Fechter will not be testifying about what was in Marvin I. Kaplan's state of mind, but will testify as to Mr. Fechter's examination of the evidence that Mr. Fechter examined, which will inform the Court what Marvin I. Kaplan's state of mind may have been, based on the data and Mr. Kaplan's behavior and conduct, in terms of the transactions Mr. Fechter analyzed.

After consideration, the Court finds that the opinions of Mr. Fechter are relevant and may assist the trier of fact. Accordingly, it is

**ORDERED** that Kaplan Parties' Oral Motion in Limine Regarding Testimony of Witness Richard Fechter (Dkt. 720) is **denied**.

Case No. 8:12-CV-1837-T-17MAP

**DONE and ORDERED** in Chambers in Tampa, Florida on this 31st day of March, 2017.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:
All parties and counsel of record

8