UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,

　　　　　　　Plaintiff,

v.                                                                      CASE NO. 8:12-cv-1837-T-17MAP

MARVIN I. KAPLAN, *et al.*

　　　　　　　Defendants.

_____/

## REPORT AND RECOMMENDATION

The District Judge has tasked me with reporting and recommending to her the appropriate dispositions on the sanctions motions filed by Plaintiff/Counter Defendant Regions Bank (Regions), Counter Defendant Robert Shaw (Shaw), and Cross Defendant Bridgeview Bank Group (Bridgeview) (docs. 102, 119, 155, 823, 839).[1]  All are directed to the claims the Kaplan Parties leveled against them (*see* doc. 93) and to the litigation conduct of the Kaplan Parties' principal lawyer, Jon Parrish, Esq. of the Naples firm Parrish, White & Yarnell, P.A.[2]  For some temporal perspective to these motions, the earliest sanctions motions date to year two of this six-year litigation, with the remaining coming later, even after summary judgment.  The District Judge tabled the motions until she resolved the entire case (doc. 244 at 34) and revived them with her final November 2017 omnibus judgment (doc. 853).  So now, from a post-judgment vantage point, I must decide whether sanctions are appropriate, and that exercise requires me to re-create the litigation

---

[1]  *See* 28 U.S.C. § 636(b) and Local Rule 6.01(a).

[2]  The Kaplan Parties comprise the following:  Marvin Kaplan, R1A Palms, LLC, Triple Net Exchange, LLC, MK Investing, LLC, and BNK Smith, LLC.  At the start of this litigation, the firm representing these parties was called Parrish, Lawhon & Yarnell, P.A.; it later changed to Parrish & Yarnell, P.A., and it is now Parrish, White & Yarnell, P.A.

landscape that existed when the sanctions motions were filed.

1.    *Overview*

Summarizing the complaints and the counter-complaints is unnecessary for our purposes here, particularly given the detailed facts in the summary judgment orders and final judgment (docs. 652, 654, 655, 656, 657, 826).  A broad overview provides enough context for understanding my reasoning.  Admittedly, this overview takes a Kaplan perspective because what happened to him (and to others tangentially related to him) served as the impetus to all the litigation, including obviously his claims against the banks (and that is focus of the motions), and because what he said happened to him is in significant measure accurate.  And it is worth adding that no matter whose factual perspective I picked, the banks' or the Kaplan Parties', each side since the litigation began postured itself the victim of the other's purported fraud or purported negligent conduct.

Marvin Kaplan, through his limited liability companies, made short-term loans to Cross Defendant Smith Advertising & Associates, Inc. (SAA) for exceedingly handsome returns.[3]  The Smiths solicited these loans without hinting that they would fleece him like all Ponzi schemers do when their schemes collapse.  After a three-year financial honeymoon, the Smiths asked Mr. Kaplan to up his ante.  And he did – to the tune of over 20 million dollars in four days.  The Smiths quickly bounced their repayment checks before Mr. Kaplan knew to stop payment.  Mr. Kaplan lost his millions.  But that did not end his misery.  Although Mr. Kaplan was duped by the Smiths, the banks accused him of scheming with the Smiths to kite checks.  Mr. Kaplan and his entities countersued the banks and sued the Smiths.  And in the legal orbit of that civil mess between the banks and Mr.

---

[3] Defaulted Counter Defendants Gary Todd Smith (son), Gary Truman Smith (father), and Lucy B. Smith (mother) (the Smiths) owned or managed SAA during the relevant time period (doc. 93 at ¶¶ 14-16).

Kaplan and Mr. Kaplan and the Smiths (all of which is our case), federal prosecutors eventually aimed indictments at the Smiths' conspiracy.[4]  After four years of litigation, the District Judge in this case awarded the Kaplan Parties about $70 million in their action against the Smiths, plus interest and attorneys' fees (*see* doc. 848: the Smith defendants defaulted, and the Kaplan Parties obtained a default judgment against them).

In the meantime, the parties continued to litigate not only Regions's claims against the Kaplan Parties but the Kaplan Parties' counterclaims against Regions and Shaw (for defamation, invasion of privacy, and negligence/negligent misrepresentation, the latter claim against Regions only) and crossclaims against Bridgeview Bank Group (for conspiracy to commit fraud, civil RICO, conversion, FDUTPA, and negligence, among other claims).[5]  The District Judge eventually disposed of all the Kaplan Parties' claims pretrial.  Only ten of Regions's original 30 claims proceeded to trial (the Kaplan Parties obtained summary judgment on some of them; Regions obtained summary judgment on others).  After an 11-day bench trial, the Kaplan Parties prevailed on all counts against them.

One would think that would have ended the legal back-and-forth at the trial court level.  Not

---

[4]  Gary Todd and Gary Truman Smith were charged via criminal complaint in May 2014, in this district (Case No. 8:14-mj-1309-T-MAP).  The government indicted Gary Todd Smith in March 2016 (Case No. 8:16-cr-120-T-17TBM), on charges of wire fraud and conspiracy to commit wire and mail fraud.  He pleaded guilty in June 2017, to both counts without the benefit of a plea agreement, and he awaits sentencing.  In February 2018, the government filed an information charging Gary Truman Smith with conspiracy to commit mail and wire fraud (Case No. 8:14-cr-0050-T-33MAP).  He pleaded guilty before me and also awaits sentencing.  The factual basis of his plea agreement details the Smiths' scheme and lists Mr. Kaplan and Regions as victims (adding that the Smiths defrauded as many as 74 people with a collective fraud loss exceeding $55 million) (8:14-cr-0050-T-33MAP, doc. 3 at 27).

[5]  The Smiths banked at Bridgeview; the Kaplan Parties banked at Regions.  Robert Shaw is Regions's head of security.

so. Bridgeview, Regions, and Shaw, in the midst of this litigation, moved for sanctions. And now with the benefit of hindsight, but not necessarily always with its wisdom, they continue to seek sanctions. After considering all the filings (docs. 102, 119, 128, 130, 153-154, 155, 163, 823, 835, 839, 842, 896-899, 903, 905-906), I find there is no reason for me to delay reporting and recommending on the sanctions motions (docs. 102, 119, 155, 823, 839).[6] I find that only Regions and Shaw's Rule 11 motion (doc. 119) has any merit, and the offending conduct is narrow in scope (pertaining to the refiling of claims after their dismissal). Otherwise, I recommend that the motions be denied.

2.    *Procedural History*

In March 2013, the District Judge entered the first in a series of case-defining orders, granting Regions and Shaw's motion to dismiss the Kaplan Parties' defamation and invasion of privacy counterclaims and granting Regions's motion to dismiss the negligence/negligent misrepresentation counterclaim without prejudice (doc. 84). In the same Order, the District Judge also granted Bridgeview's motion to dismiss as to all counts against it (with leave to amend). The Kaplan Parties amended their counterclaim in April 2013 (doc. 93) (litigation year: two), purporting to flesh out the factual underpinnings of their claims in light of the District Judge's Order. But the Kaplan Parties asserted the same counterclaims against Regions and Shaw as they had before: defamation per se and invasion of privacy against Regions and Shaw, and negligence/negligent misrepresentation against Regions. They also reasserted crossclaims against Bridgeview.

This set the stage for the first round of sanctions motions against the Kaplan Parties pursuant

_____

[6]    After a hearing I directed the parties to brief whether this Court should exercise its prudential authority to defer ruling on the sanctions motions until the Eleventh Circuit resolves the parties' cross-appeals.

to Section 1927, the court's inherent authority, and Rule 11.  Regions and Shaw asked for sanctions under this panoply of authority because in the amended counterclaim the Kaplan Parties reasserted verbatim claims that the District Judge dismissed (docs. 102, 119).  Regions and Shaw also asked the Court to strike the claims against it.  Around the same time, Bridgeview moved to dismiss the claims against it (doc. 106) and for Rule 11 sanctions (doc. 155), contending the allegations leveled against them had no evidentiary support.

In what became the litigation's second channel marker (the first being the original Order on the motions to dismiss), the District Judge, in a March 31, 2014, Order, dismissed the defamation and invasion of privacy claims against Regions and Shaw ("The Court previously granted the motions to dismiss. . . . The Court reiterates its prior rulings, and grants the Motions to Dismiss as to this issue." (doc. 244 at 33)) but denied Regions and Shaw's motion to dismiss the negligence/negligent misrepresentation claim.  The Court also dismissed the FDUTPA claim against Bridgeview but denied Bridgeview's motion to dismiss the fraud, conspiracy to defraud, negligence, negligent misrepresentation, civil RICO, and civil RICO conspiracy claims (doc. 244).  Regarding the three sanctions motions that were then pending (docs. 102, 119, 155), the Court stated:  "The Court will defer all requests for sanctions until the final resolution of this case.  The Court denies the Motions for Sanctions without prejudice; the Motions can be reasserted by filing a notice to the Court.  It will not be necessary to file a separate motion." (doc. 244 at 34).

In May 2015 (over a year later), the District Judge granted Bridgeview's motion for reconsideration (doc. 378) and dismissed the RICO and conspiracy to commit RICO counts against it.  Another year later, the Court granted Bridgeview's summary judgment motion on the Kaplan parties' negligence, fraud, negligent misrepresentation, and conspiracy to defraud counterclaims

(doc. 655).  So finally, after four years of litigation, Bridgeview had defeated all claims against it. What remained was its request for Rule 11 sanctions, filed two years earlier and stayed until the resolution of the case.  In April 2016 (litigation year: four), the District Judge granted summary judgment in favor of Regions on the Kaplan Parties' negligence/negligent misrepresentation count (doc. 652).  This eliminated the only remaining counterclaim against Regions.

3.    *Sanctions motions redux*

The Court tried the case in May 2016.  Before the District Judge issued her findings of fact and conclusions of law, Regions filed a third sanctions motion, titled its omnibus sanctions motion (doc. 823).  In addition to alleging that the Kaplan Parties and their counsel vexatiously litigated their counterclaims, Regions contends that they engaged in gross misconduct during the trial that "permeated the action" (*Id*. at 1) when they used a demonstrative exhibit (a Timeline of Significant Events) that contained knowingly false information.  It also contends that Mr. Kaplan perjured himself during trial.

In June 2017, the District Judge issued her findings of fact and conclusions of law, ruling in favor of the Kaplan Parties on Regions's fraudulent concealment, aiding and abetting, and civil conspiracy counts, the only counts that survived through trial (doc. 826).  The next month, Bridgeview filed a renewed sanctions motion under Rule 11 and Section 1927, claiming that the Kaplan Parties' crossclaims against it were objectively unreasonable, frivolous, and multiplied the proceedings (doc. 839).  Six months after that – November 2017 – the Court issued an omnibus final judgment that lists each claim and counterclaim asserted throughout the history of the case and how and when it was resolved (doc. 853).  Regions and the Kaplan Parties have cross-appealed to the Eleventh Circuit (docs. 869, 872).  After entering final judgment, the District Judge (at the parties'

request) referred the pending sanctions motions to me (docs. 864, 866).

4.    *Standards*

a.    *Rule 11*

"The purpose of Rule 11 is to deter baseless filings in district court and thus streamline the administration and procedure of federal courts." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010) (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 11.03 (3d ed. 2010)).  When an attorney files a pleading in federal court, the attorney signs the pleading to certify that, among other things, (1) the pleading is not being presented for an improper purpose; (2) the legal contentions are warranted by existing law of a nonfrivolous argument to change existing law; and (3) the factual contentions have evidentiary support or will likely have evidentiary support after discovery.  Fed. R. Civ. P. 11(b).

"If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.  Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).  Courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified.  *In re Engle Cases*, ___ F.3d ___, 2017 WL 4675652, at *27 (M.D. Fla. Oct. 18, 2017).  The purpose of the rule is to deter rather than to compensate.  *See* Fed. R. Civ. P. 11(c)(4) ("[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct . . .").  Bad faith is not a required showing under Rule 11.  *In re Engle*, 2017 WL 4675652, at *27.

In ruling on Rule 11 motions, the Court asks: "(1) whether the party's claims are objectively

frivolous, and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Peer*, 606 F.3d at 1311 (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001)).  The advisory committee notes to the rule highlight "the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable." Fed. R. Civ. P. 11, advisory committee note to 1993 amendments.  In fact, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Id*.  And, "[t]he court is expected to avoid using wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Fed. R. Civ. P. 11, advisory committee note to 1983 amendments.  "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary . . . ." Fed. R. Civ. P. 11, advisory committee note to 1993 amendments.

      *b.*     *28 U.S.C. § 1927*

Section 1927 is directed at an attorney's unreasonable and vexatious multiplication of proceedings.  "Unlike Rule 11, which is aimed primarily at pleadings, under section 1927 attorneys are obligated to avoid dilatory tactics throughout the entire litigation." *Peer*, 606 F.3d at 1314 (quoting *Byrne*, 261 F.3d at 1106)).  Sanctions under section 1927 are intended to deter unnecessary delay in litigation by requiring attorneys to satisfy personally excess costs attributable to their misconduct.  Section 1927 does not apply to parties.  Sanctions under section 1927 are discretionary, not mandatory, and the court for equitable reasons may decline to impose sanctions. *Olson v. Reynolds*, 484 F. App'x 61, 64 (7th Cir. 2012).

To justify an award of sanctions under section 1927, "an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).  When the attorney's conduct is so egregious that it is tantamount to bad faith, it can be said that he has multiplied the proceedings vexatiously and unreasonably.  *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007).  Bad faith is "an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim." *Id*. at 1241.  "[T]he attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonable and vexatious if it is done with a malicious purpose or intent." *Young Apartments, Inc. v. Town of Jupiter, Fla.*, 503 F. App'x 711, 725 (11th Cir. 2013) (quoting *Schwartz*, 341 F.3d at 1240).

c.     the Court's inherent power

The inherent power "is both broader and narrower than other means of imposing sanctions." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  The Court's inherent power extends to a full range of litigation abuses; it can be invoked even if other rules sanction the same conduct "for these rules are not substitutes for the inherent power." *Peer*, 606 F.3d at 1314 (quotation and citation omitted).  But it is subject to a bad faith standard, which in effect narrows the range of conduct that can satisfy this higher threshold for sanctions.  *See id.*; *Chambers*, 501 U.S. at 47.

As a general rule, if a court cannot impose sanctions under Rule 11, it should not exercise its inherent sanctioning authority.  "But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power" to sanction bad faith

litigation conduct.  *Chambers*, 501 U.S. at 50.  To be sure, the court's inherent powers "must be exercised with restraint and discretion."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980).

5.      *Regions and Shaw's sanctions motions (docs. 102, 119, 823)*

   a.      *Sanctions for refiling previously-dismissed counterclaims (docs. 102, 119)*

Regions and Shaw ask for sanctions pursuant to Section 1927 and the Court's inherent authority (doc. 102) and Rule 11 (doc. 119) against the Kaplan Parties and Mr. Parrish for re-pleading – verbatim – two causes of action that the Court dismissed with prejudice a month earlier (the defamation and invasion of privacy claims against Regions and Shaw), and reasserting the negligence/negligent misrepresentation claim against Regions (*see* doc. 84 at 32-39, 41-43).  They claim that Mr. Parrish's conduct in refiling these claims was vexatious, in bad faith, and in violation of the Court's Order dismissing the counts.

   Mr. Parrish  retorts that the problem boils down to each side interpreting the District Judge's first dismissal order differently.  In his response to Regions and Shaw's Rule 11 motion, he argues that "[i]n drafting the Amended Counterclaim/Crossclaim, the Kaplan Parties amended those portions of the original Counterclaim/Crossclaim to comply with the Court's Order, while simply leaving those Counts in which leave to amend was not given unchanged.  This was not done with any intent, other than to strictly comply with the Court's Order." (doc. 128 at 3).  And, "[i]n reading the Court's Order closely, there is nothing in it to indicate that the Kaplan Parties should have removed those counts that were dismissed without leave to amend, only that certain counts were dismissed *with* leave to amend." (*Id.*, emphasis in original).  Regarding the defamation and invasion of privacy claims, Mr. Parrish continues, "it is understood that those same Counts were dismissed by the Court without leave to amend and neither the Kaplan Parties, or their counsel, is pursuing

10

those Counts in its Amended Counterclaim/Crossclaim." (*Id*. at 4).  Deep in his response to the Rule 11 motion, while still maintaining the reasonableness of his decision to refile previously dismissed claims, Mr. Parrish beseeches the Court for guidance (*Id*.).

Mr. Parrish's argument is illogical.  After carefully reviewing the District Judge's first dismissal order (doc. 84) and the Kaplan Parties' amended counterclaim (doc. 93), I conclude that Mr. Parrish did not reasonably investigate whether he had a basis to refile claims that had already been adjudicated deficient – in other words, the amended counterclaim did not comply with Rule 11(b)'s requirements at the time Mr. Parrish filed it.  First, no reasonable lawyer would assume that, if the Court dismisses his claims, he is permitted to replead them word-for-word a month later in the same case.  And no reasonable lawyer would assume that, if the Court dismissed three claims, only one of them with leave to amend, the other two claims remain viable and may be reasserted verbatim.  Instead, a reasonable attorney, if truly puzzled by the dismissal order, would have asked for Court clarification *before* refiling.  Mr. Parrish did not do this; he knew or should have known that these claims had no possible chance of success.[7]

Also, in its first dismissal order (doc. 84), the Court dismissed the defamation claim on the basis of the litigation privilege: "naming Kaplan as a defendant and alleging that 'Kaplan Defendants and Smith Advertising are involved in what appears to be a scheme of check kiting' are allegations which related to the proceedings" (doc. 84 at 33) and are not actionable against Regions.  The Kaplan Parties also alleged that Regions and Shaw defamed them when they told the Secret Service, Wells Fargo, and the Federal Banking Association about their view of what had happened – that Mr.

---

[7]  I note that Mr. Parrish did not appear at the hearing on the sanctions motion.  Therefore, his explanations for what he did and why he did it are limited to his papers.

Kaplan had participated in a check kiting scheme with the Smiths.  The Court dismissed this aspect of the defamation count on the basis of the qualified privilege: Shaw and Regions's actions were "within the parties' collective business interests in preventing losses from fraudulent banking activity" and therefore completely protected from suit (doc. 84 at 37).

The Kaplan Parties' invasion of privacy claim also succumbed to Rule 12.  To prevail on an invasion of privacy claim, the Kaplan Parties needed to allege the truth of Regions's statements that they were check kiters and criminals.  And of course the Kaplan Parties did not admit to these allegations.  In the alternative, because Mr. Kaplan's social security number was disclosed on a secure, online database that was only accessible to banks, credit unions, and law enforcement agencies (and not the general public), the District Judge dismissed the claim as not involving the public disclosure of a private statement (doc. 84 at 39).

Against this backdrop, the Kaplan Parties refiled these claims against Regions and Shaw word-for-word a month later and in so doing persisted with an unsupportable legal position.  Regions protested, yet the Kaplan Parties neither asked for clarification from the Court (except in a sentence buried in their response to the Rule 11 motion) nor amended their pleading.  It took another round of motions to dismiss and one more year of litigation for Regions and Shaw to finally shed these claims for good (*see* doc. 244 at 33).  This refiling was objectively frivolous; the Kaplan Parties knew or should have known this; and I find that the imposition of Rule 11 sanctions against Mr. Parrish and his firm is appropriate to deter future sanctionable conduct.[8]  *See Rady Children's Hosp.*

───────────────

[8]  At some point, Jonathan Weirich, an associate at Parrish, White & Yarnell, took over representation of the Kaplan Parties, and appeared at the hearing before me on the sanctions motions. Mr. Weirich did an exemplary job advocating for his client, and this report and recommendation should not be interpreted as recommending sanctions based on any of his actions.

12

*v. Service Employees Int'l Union Local 2028,* 2008 U.S. Dist. LEXIS 37047, at *6-7 (S.D. Cal. May 5, 2008) (imposing Rule 11 sanctions against attorney who refiled exact same claims after they were dismissed, noting that "Rule 11 sanctions may be imposed where a party files a pleading containing a frivolous claim even if the pleading also contains non-frivolous claims"); *Chestnutt v. Horizon Air Indus., Inc.*, 133 F.R.D. 154, 156 (E.D.Wash. 1990) (sanctioning attorney under Rule 11 because amended complaint was "veritable carbon copy of the one filed and dismissed previously"); *Orange Prod. Credit Ass'n v. Frontline Ventures Ltd.*, 792 F.2d 797, 800 (9th Cir. 1986) (upholding district court's imposition of Rule 11 sanctions against a party who, after case was dismissed in one federal court for lack of subject matter jurisdiction, refiled same case in another federal court); *Fuji Photo Film U.S.A., Inc. v. Aero Mayflower Transit Co., Inc.*, 112 F.R.D. 664, 668 (S.D.N.Y. 1986) (granting Rule 11 sanctions against attorney who refiled against same defendant twice when it was patently clear claim had no basis in law or fact).

The negligence/negligent misrepresentation claim against Regions is a different story, however, because the first dismissal order expressly dismissed it without prejudice.  In particular, the Court found that "the common law negligence/negligent misrepresentation claims in Count XXI are displaced by the U.C.C." and granted the Kaplan Parties ten days to amend (doc. 84 at 42).  The Court also ruled, in the alternative, that Regions did not owe the Kaplan Parties a fiduciary duty because the transactions were arm's length:  there was "no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party by its own diligence could have discovered." (doc. 84 at 43).  Additionally, the Court found that the Kaplan Parties' negligent misrepresentation count did not meet the particularity requirements of Rule 9(b).  The Court instructed as follows: "Counterclaim/Crossclaim Plaintiffs shall identify the alleged

misrepresentations, who made them, when and in what context they were made, and how they caused Counterclaim/Crossclaim Plaintiffs' losses." (doc. 84 at 19).

In their amended counterclaim, the Kaplan Parties tried to fix this.  They alleged Regions owed them a duty of good faith and ordinary care under Florida law (rather than a fiduciary duty); it breached this duty when (1) its head teller and branch manager in Sarasota told them the funds they wired to SAA on January 20, 23, 24, 2012, were cleared funds rather than provisionally credited funds, and (2) Regions extended the Kaplan Parties provisional credit for these transactions when it knew the parties did not want to rely on provisional credit; the Kaplan Parties relied on these misrepresentations; and they were damaged in the amounts of the wires (doc. 93 at 50-51).

In her second dismissal order (entered in March 2014, litigation year: two), the District Judge actually found that the Kaplan Parties this time around had alleged enough detail to comply with Rule 9(b); she denied Regions's motion to dismiss the negligence/negligent misrepresentation claim (doc. 244 at 33-34).  It was not until the District Judge's April 18, 2016, summary judgment order (doc. 652) (litigation year: four; three years after the amended counterclaim was filed) that Regions defeated this claim.  The Court wrote: "Regions did not make any representations on which Counterclaim/Crossclaim Plaintiffs could have reasonably relied.  As to the claim based on the alleged prior oral agreement as to Regions's future performance under the Deposit Agreements and Wire Transfer Agreements, the claim does not rise to the level of an independent tort." (doc. 652 at 57).

Regions argues that the Court should sanction the Kaplan Parties for litigating a claim the Court ultimately found was not a stand alone cause of action.  In other words, Regions urges me to recommend sanctioning the Kaplan Parties and their counsel for losing on summary judgment.  But

14

Rule 11 is not an automatic penalty to be assessed against an attorney for advocating the losing side of an issue. *See Peer*, 606 F.3d at 1311-12. The District Judge's first dismissal order dismissed the claim but permitted the Kaplan Parties to refile it; the second order denied Regions's motion to dismiss the claim; Regions only defeated it on summary judgment, deep into the case. Although hindsight is all-knowing, Regions has not met its burden of proving the Kaplan Parties had no evidentiary support for their negligence/negligent misrepresentation claim at the time of filing or at any point prior to the Court's summary judgment order. The claim was not objectively unreasonable when the Kaplan Parties refiled it, especially in light of the District Judge's Order permitting them to refile it and telling them how to do so. *See Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 916 (11th Cir. 2003) (reversing district court's Rule 11 sanctions award in a civil RICO case because the order dismissing the complaint "did not give such a clear warning not to refile"); *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988) (reversing district court's Rule 11 award because plaintiff was specifically given leave to replead). I recommend that the District Judge deny sanctions as to this issue.[9] *See Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) ("Rule 11 does not prevent the imposition of sanctions where it is shown that the Rule was violated as to a portion of a pleading, even though it was not violated as to the other portions.").

   b.    *Type of sanction for refiling defamation and invasion of privacy counterclaim*

In awarding sanctions under Rule 11, the Court must impose the least severe sanction adequate to serve the deterrent purpose of the Rule. *See* Fed. R. Civ. P. 11(c)(4) ("[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct . . .").

---

[9]  I also find that there is insufficient evidence to conclude that Mr. Parrish's conduct is tantamount to bad faith, a conclusion necessary for a sanctions award under § 1927.

15

This is because the purpose of the rule is to deter rather than to compensate. Fed. R. Civ. P. 11, advisory committee notes to 1993 amendments. A judge's discretion in fashioning an appropriate sanction is "subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons." *Id*.

I have weighed the degree of negligence involved in Mr. Parrish's misconduct; the burden on the court system attributable to this misconduct; the extent to which he continued to advocate for the defamation and invasion of privacy counterclaims after they were adjudicated deficient; and the amount of attorneys' fees Regions incurred as a result of Mr. Parrish's misconduct. Specifically, I have reviewed Regions's attorneys' time entries, but I do not weigh them heavily – Regions's attorneys appear to have over-lawyered their reaction to Mr. Parrish's misconduct to the tune of $35,244.50 (doc. 897-5). In my judgment, and based on the above considerations, I recommend that the Court sanction Mr. Parrish and his firm under Rule 11 and order them to pay $1,000.00 to the Clerk of Court.[10] This amount is the least severe sanction necessary to deter similar misconduct by Mr. Parrish and his firm in the future.

  c. *Regions's omnibus sanctions motion (doc. 823)*

In its omnibus motion, Regions moves under Section 1927 and the Court's inherent authority for the Court to sanction the Kaplan Parties and their counsel.[11] Regions alleges that "[a]t trial, they

---

  [10] "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11, advisory committee note to 1993 amendments.

  [11] Regions's omnibus sanctions motion includes a request that the Court sanction the Kaplan Parties for refiling the defamation, invasion of privacy, and negligence/negligent misrepresentation claims against it. For the reasons already stated in this Report and Recommendation, I recommend

used a Timeline of Significant Events with knowingly false information and Kaplan perjured himself on numerous material points" and that this gross misconduct "permeated the action." (doc. 823 at 1; *see* doc. 787 at 31 (Regions's trial exh. no. 398)).  Regions also contends that the Kaplan Parties did not adequately prepare Mr. Kaplan for his Rule 30(b)(6) deposition.  In response, the Kaplan Parties point out (1) Regions did not object to the Kaplan Parties' use of the timeline at trial; and (2) Mr. Kaplan was prepared enough to sit for an 11-day deposition.

Regarding the timeline, Regions's omnibus sanctions motion should be denied.  Regions has not presented sufficient evidence for me to find that either Mr. Kaplan or his counsel created or referenced the timeline in bad faith at trial.  Regions contends "Parrish used the Timeline to falsely inform the Court in opening of the 'critical' (and fabricated) fact that the repayment source on Bundled Deals changed to SAA's general cash flow" (doc. 823 at 21).  The timeline contained "false entries on key issues" and "repeated 'facts' rejected by the Court as unsubstantiated on summary judgment." (*Id.*).  Regions goes so far as to argue the color coding on the timeline suggests collusion between Mr. Kaplan and his counsel ("The Timeline is a veritable cheat sheet with red ink to alert Kaplan to lie.") (*Id.* at 5).  And Regions asks to be awarded its attorneys' fees from the inception of this litigation, which amounts to millions of dollars.

Regions wants me to find that the timeline contains "lies," that those lies triggered Kaplan's perjured testimony, that his perjured testimony tainted the litigation, and that it tainted the trial enough to sway the District Judge to rule against Regions.  Said more succinctly, Regions wants me

---

denying sanctions on this basis under Section 1927 and the Court's inherent authority.  Regions also requests sanctions related to the Kaplan Parties' last minute deposition cancellations.  I have already ruled on this issue (docs. 531, 815) and therefore recommend that this portion of the omnibus motion be denied.  This Report and Recommendation addresses Regions's remaining arguments.

to tell the District Judge she is wrong about what she saw, wrong about what she heard, and wrong about what she found.[12]  Regions asks this even though (1) it introduced the timeline as a trial exhibit (*see* doc. 787 at 31 (Regions's ex. no. 398)); (2) it had more than ample chance to cross-examine Kaplan on the veracity of the exhibit and on his credibility in general; (3) the District Judge ruled for the Kaplan Parties and against Regions on all counts litigated at trial; and (4) Regions did not file a Rule 59 post-trial motion or challenge the District Judge's findings of fact under Rule 52.  Frankly, I find their position wholly without any arguable merit.

Regions's complaints about Mr. Kaplan's performance during his marathon 11-day Rule 30(b)(6) deposition are likewise without arguable merit.  Regions contends Mr. Kaplan did not prepare for the deposition and as a consequence was unable to testify about material issues.  Yet, at trial, he had detailed, self-serving answers to some of the same key questions.  Regions extrapolates from this that Mr. Kaplan and Mr. Parrish engaged in a pattern of misconduct throughout the litigation by ducking and weaving, then conjuring favorable facts when it most behooved them.  All this is no different that Regions's previous, unmeritorious claim.  Again, what Regions is asking me to do is to accept the illogical – to surmise that Mr. Kaplan answered substantive questions with "I don't know" for 11 days.  First, no reasonable attorney would stand for that.  And had it occurred, Regions's counsel would have brought that conduct to the Court's attention, which he did not (and

---

[12]  The thrust of Regions's claim against Kaplan is that he knowingly participated in a check-kiting scheme with the Ponzi schemers (with Regions as his victim).  I recognize that when Regions initially accused Kaplan of such a scheme, the criminal landscape against the Smiths may not have evolved yet.  But by the time of the hearing on Regions's motion for sanctions, that was no longer the case.  And it is clear from the filings in the criminal matters pending against the Smiths that Mr. Kaplan is a victim and that he is in line with other victims looking for recompense.  That development pointedly corroborates the obvious thrust of the District Judge's findings of fact – Mr. Kaplan did not, as Regions still claims, knowingly collude with the Smiths in a check-kiting scheme aimed at Regions.

which waived any objection to Mr. Kaplan's performance at the deposition).  Besides, what Regions

is asking me to do by way of a different rhetorical tack, is to tell the District Judge she got it wrong

about Mr. Kaplan – that despite Regions's extensive cross-examination, and the purported

incongruities in his testimony with that of his deposition, she erred in assessing his credibility.

Regions's motion should be denied.

6.      *Bridgeview's sanctions motions (docs. 155, 839)*

Bridgeview also asks for Rule 11 and Section 1927 sanctions against the Kaplan Parties.  It

contends that the amended counterclaim and crossclaim contained objectively unreasonable and

frivolous allegations that attempted to connect the Smiths' Ponzi scheme to Bridgeview.  Bridgeview

filed its first Rule 11 sanctions motion in September 2013 (doc. 155), after the Kaplan Parties filed

their amended counterclaim (doc. 93).  Like the other sanctions motions, that motion was denied

without prejudice pending resolution of the case.  After the Court's findings of fact and conclusions

of law in June 2017 (doc. 826) but before the omnibus final judgment in November 2017 (doc. 853),

Bridgeview filed a "renewed" sanctions motion under both Section 1927 and Rule 11.  Bridgeview

contends that "certain facts learned through discovery are so important to the adjudication of the

instant motion, that this Renewed Motion is necessary." (doc. 839 at 1, fn. 1).

a.      *Bridgeview's Rule 11 motion (doc. 155)*

In September 2013, Bridgeview moved for Rule 11 sanctions (doc. 155).  This was after it

moved to dismiss the Kaplan Parties' amended counterclaim (doc. 93) but before the District Judge

ruled (doc. 244).  This first Rule 11 motion is bereft of case law (which may explain why it filed a

"renewed" Rule 11 motion later in the case).  Bridgeview argues for Rule 11 sanctions because

"despite the clear instruction of the Court, especially with respect to the 'Refer to Maker'

designation, the need for specificity related to time, place and content of any alleged conspiracy involving BBG, and the dismissal with prejudice as to other Cross-Defendants, the Cross-Plaintiffs filed an Amended Counterclaim and Crossclaims . . . against [Bridgeview]." (doc. 155 at 3).  It continues that the Kaplan Parties violated Rule 11 by "alleging the same causes of action without any time, place, and content specificity required by the Court and bringing additional claims against [Bridgeview] based on the same conduct already endorsed by the Court." (doc. 155 at 3).

The District Judge in her first dismissal order dismissed the Kaplan Parties' conspiracy to defraud claim without prejudice, stating "[w]hile it is not necessary for the specific person at [Bridgeview] to be identified at this stage, the Court expects some identification of time, place and content." (doc. 84 at 21).  The Kaplan Parties attempted to remedy this in its amended pleading (doc. 93).  In her second dismissal order, the District Judge denied Bridgeview's motion to dismiss the fraud, conspiracy to defraud, negligence, negligent misrepresentation, civil RICO, and civil RICO conspiracy claims (doc. 244), finding that the Kaplan Parties had asserted enough in their amended pleading to satisfy Rule 9(b)'s specificity requirements.  On this record, I cannot find that at the time the Kaplan Parties filed their amended claims against Bridgeview they knew the claims were objectively frivolous – not only did the District Judge grant the Kaplan Parties leave to amend their claims and give them guidance on how to do so, a year later the District Judge ruled that the claims passed muster.  *See Anderson*, 353 F.3d at 916 (reversing district court's Rule 11 sanctions award in a civil RICO case because the order dismissing the complaint "did not give such a clear warning not to refile"); *Stern*, 844 F.2d at 1005 (reversing district court's Rule 11 award because plaintiff was specifically given leave to replead).   It was not until summary judgment that Bridgeview defeated all the Kaplan Parties' claims against it.  While Bridgeview argues in its renewed sanctions motion

that the Kaplan Parties must have learned their claims were frivolous at some point during discovery but continued to litigate them, the bottom line is there is insufficient evidence that at the time Mr. Parrish certified the Kaplan Parties' amended counterclaim (doc. 93) under Rule 11, the Kaplan Parties knew or should have known the claims against Bridgeview were frivolous. Bridgeview's Rule 11 motion (doc. 155) should be denied.

        b.     *Bridgeview's renewed sanctions motion (doc. 839)*

The Rule 11 aspect of Bridgeview's renewed motion (doc. 839) should be denied for the reasons stated in the Kaplan Parties' response (doc. 842 at 2), namely that under Rule 11(c)(2) it was inappropriate for Bridgeview to seek Rule 11 sanctions after summary judgment had been entered. At that late stage, the Kaplan Parties did not have an opportunity to withdraw or amend its counterclaims to comply with Rule 11. This violates the safe harbor provision of Rule 11.

I recommend that the renewed motion be denied as to Section 1927 sanctions as well. Bridgeview contends that the Kaplan Parties' sanctionable conduct began when they filed their amended counterclaim that asserted many of the same causes of action against them that the Court had previously adjudicated deficient, and continued when they litigated these claims despite a lack of evidence to support them. It argues that it first realized the pervasiveness of this misconduct at Mr. Kaplan's April 2015 deposition. Under Section 1927 (which applies to attorneys only), a court can sanction an attorney for objectively abusing the judicial process through "conduct tantamount to bad faith." *Amlong & Amlong, P.A.*, 500 F.3d at 1239. A finding of bad faith is warranted where an attorney "knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citation and quotations omitted). Section 1927 also imposes a continuing duty to correct or withdraw once-viable claims after it becomes obvious that they are meritless. *See*

Joseph, Gregory, *Sanctions: The Federal Law of Litigation Abuse*, 5th ed., §23(A)(3) (2013).

Bridgeview lists 16 instances of Mr. Parrish vexatiously multiplying the proceedings (doc. 839 at 19-20).  As is the case with Regions's sanctions request, however, the Court's pretrial rulings belie the appropriateness of sanctions.  For example, Bridgeview contends that Mr. Parrish committed sanctionable misconduct when he continued to litigate his clients' claims after learning at Mr. Kaplan's April 2015 deposition that there was no evidence to support their claims "and that the entire case was based on conjecture and insinuation." (doc. 839 at 19).  The litigation landscape of April 2015, however, showed the Kaplan Parties pursuing claims the District Judge had upheld under Rule 9.  Objectively speaking, this is not behavior "tantamount to bad faith."  *Amlong & Amlong, P.A.,* 500 F.3d at 1239.  Bridgeview has not cited to any case in which a district judge has ruled that a fraud claim that satisfies Rule 9(b) on the one hand, also warrants sanctions on the other.

The critical question is whether there was a precise point in time when it became obvious that the Kaplan Parties' crossclaims against Bridgeview should have been abandoned.  Obviousness is a high standard that turns on a subjective fact (when did it become obvious to Mr. Parrish?).  *See* Joseph, Gregory, *Sanctions: The Federal Law of Litigation Abuse*, 5th ed., §23(A)(3) (2013).  The District Judge signaled to Mr. Parrish that there was a viable way his clients could allege that Bridgeview conspired against them, and she gave Mr. Parrish a chance to amend his pleading.  He did so in a failed attempt to conform his claims to the District Judge's instructions.  There is no on-point authority to guide a reasonable lawyer to the conclusion, on this record, that he had no reasonable chance of success.  His amended pleading survived a second round of motions to dismiss but succumbed to summary judgment.  Under an objective standard, Bridgeview has not convinced me that Mr. Parrish intentionally pursued claims against Bridgeview that were unwarranted in fact

or law.  *See Young Apartments, Inc.*, 503 F. App'x at 725 ("An attorney multiplies the proceedings unreasonably and vexatiously 'only when the attorney's conduct is so egregious that it is "tantamount to bad faith,"' which turns on the objective conduct of the attorney . . . . Bad faith is an objective standard that is satisfied when an attorney 'knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.'") (citations and quotations omitted).  On this record, Bridgeview has not met its burden of showing Mr. Parrish unreasonably or vexatiously litigated against it.

7.     *Conclusion*

        Upon consideration, I REPORT and RECOMMEND as follows:

   (1)    Regions and Shaw's motion for sanctions against the Kaplan Parties under 28 U.S.C. § 1927 and the Court's inherent authority (doc. 102) be DENIED;

   (2)    Regions's omnibus sanctions motion (doc. 823) be DENIED;

   (3)    Regions and Shaw's motion for Rule 11 sanctions against the Kaplan Parties and their counsel (doc. 119) be GRANTED in part and DENIED in part;

   (4)    The Court sanction Mr. Parrish and his firm under Rule 11 and order them to pay the Clerk of Court $1,000.00 within 30 days of the Order adopting this Report and Recommendation; and

   (5)    Bridgeview's motion for Rule 11 sanctions (doc. 155) and renewed sanctions motion (doc. 839) be denied.

   IT IS SO REPORTED in Tampa, Florida on March 1, 2018.

                                                *Mark A. Pizzo*
                                                MARK A. PIZZO
                                                UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.