UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

REGIONS BANK,

            Plaintiff,

v.                                    CASE NO. 8:12-CV-1837-T-17MAP

MARVIN I. KAPLAN, et al.,

            Defendants.

_____/

ORDER

This cause is before the Court on:

| | |
|---|---|
| Dkt. 895 | Motion for Supplemental Final Judgment Awarding Fees, Costs and Expenses Against Kaplan Parties (Regions) |
| Dkt. 896 | Notice (Regions) |
| Dkt. 913 | Response (Kaplan Parties) |
| Dkt. 914 | First Motion to Bifurcate Entitlement to Fees and Costs Regarding Regions Bank's Motion for Supplemental Final Judgment (Kaplan Parties) |
| Dkt. 940 | Opposition to Motion to Bifurcate (Regions) |
| Dkt. 948 | Supplemental Notice of Filing (Regions) |
| Dkt. 953 | Supplemental Memorandum and Objections(Kaplan Parties) |
| Dkt. 954 | Notice of Filing in Support of Supplemental Memorandum (Kaplan Parties) |
| Dkt. 956 | Report and Recommendation |
| Dkt. 982 | Corrected Objections to Report and Recommendation (Regions) |
| Dkt. 987 | Motion for Leave to Submit Unredacted Invoices For *In Camera* Review (Regions) |
| Dkt. 989 | Response to Corrected Objections (Kaplan Parties) |
| Dkt. 994 | Motion for Leave to Submit Reply Memorandum and Declaration (Regions) |

Dkt. 995  Response in Opposition to Motion for Leave
     to Submit Unredacted Invoices For *In Camera* Review
     (Kaplan Parties)
Dkt. 997  Response in Opposition to Motion for Leave to File
     Reply (Kaplan Parties)

Regions Bank's Motion for Supplemental Final Judgment Awarding Fees, Costs and Expenses Against Kaplan Parties (Dkt. 895), and Kaplan Parties' First Motion to Bifurcate Entitlement to Fees and Costs Regarding Regions Bank's Motion for Supplemental Final Judgment (Dkt. 914) were referred to the assigned Magistrate Judge for a Report and Recommendation. Oral argument was conducted on June 18, 2018. A Report and Recommendation (Dkt. 956) has been entered in which it is recommended that the Motion for Supplemental Final Judgment Awarding Fees, Costs and Expenses be granted in part and denied in part, and the First Motion to Bifurcate Entitlement to Fees and Costs Regarding Regions Bank's Motion for Supplemental Final Judgment be denied.

Magistrate Judge Pizzo concluded that Regions Bank is entitled to recover its reasonable attorney's fees and costs associated with the breach of deposit agreement counts, the UCC counts, and the defense of the counterclaims (negligence/negligent misrepresentation and defamation/invasion of privacy) the Kaplan Parties asserted against Regions, but is not entitled to recover the attorney's fees and costs incurred in prosecuting the tort claims. (Dkt. 956, p. 9). The tort claims include civil conspiracy, fraudulent concealment, conversion and aiding and abetting against the Kaplan Entities and Marvin I. Kaplan individually.

Regions Bank has filed Objections to the Report and Recommendation, objecting to some of the recommendations.

The Kaplan Parties have filed a response to the Objections.

I.      Standard of Review

Under the Federal Magistrates Act, Congress vested Article III judges with the power to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," subject to various exceptions.  28 U.S.C. 636 (b)(1) .  The Act further vests magistrate judges with authority to submit proposed findings of fact and recommendations for disposition by an Article III judge.  28 U.S.C. Sec. 636(b)(1)(B).  "Within fourteen days after being served with a copy [of a magistrate judge's Report and Recommendation], any party may serve and file written objections to [the magistrate judge's] proposed findings and recommendations."  28 U.S.C. Sec. 636(b)(1).  The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  Regarding the scope of review, litigants generally must present their evidence and arguments to the magistrate judge in the first  instance to preserve review; however, the district court may, in its discretion, consider arguments and evidence presented for the first time in an objection to a report and  recommendation. Williams v. McNeil, 557 F.3d 1287, 1291-92 (11th Cir. 2009).   After concluding its review, "[t]he district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

As the Eleventh Circuit Court of Appeals has explained, a party's objections must "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." Macort v. Prem, Inc., 208 Fed. Appx. 781, 783 (11th Cir. 2006) (quoting Heath v. Jones, 863 F.2d 815, 822 (11th Cir.1989)). "It is critical that the objection be sufficiently specific and not a general objection to the report."  Id. at 784 (citing Goney v. Clark, 749 F.2d 5, 7

Case No. 8:12-CV-1837-T-17MAP

(3d Cir.1984)).

II.  Dkt. 914   First Motion to Bifurcate Entitlement to
                Fees and Costs Regarding Regions Bank's
                Motion for Supplemental Final Judgment (Kaplan Parties)

In the Report and Recommendation, Magistrate Judge Pizzo recommended
that the Motion to Bifurcate Entitlement to Fees and Costs be denied.

The Court has independently reviewed the record and the pleadings.
No objections to the Report and Recommendation as to the Motion to Bifurcate
have been filed.  After consideration, the Court adopts the Report and
Recommendation as to this issue, and denies the First Motion to Bifurcate
Entitlement to Fees and Costs.  (Dkt. 914).

III. Dkt. 987   Motion for Leave to Submit Unredacted Invoices For
                *In Camera* Review

Regions seeks leave to submit the unredacted invoices of Trenam Law
to the Court for *in camera* review.

The Kaplan Parties oppose Regions' Motion.

The Report and Recommendation was entered on June 25, 2018.
Regions filed the Motion for Leave to Submit Unredacted Invoices for *In Camera*
Review on August 30, 2018.

Regions has objected to the recommendations of the Magistrate Judge
as to across-the-board reductions of reasonable hours expended.  (Dkt. 982).
In conjunction with Regions' objection to the reduction of the reasonable hours
of Trenam Law, Regions has requested leave to submit to the undersigned

unredacted invoices that were not furnished to the Magistrate Judge for his consideration before entering the Report and Recommendation.

The Eleventh Circuit has held that the district court has discretion to decline to consider a party's argument when that party's argument was first raised in the party's objections to the magistrate judge's report and recommendation. Williams v. McNeill, 557 F.3d 1287, 1291-92 (11th Cir. 2009); see also The Travelers Home and Marine Insurance Co. v. Calhoun, 2014 WL 1328968 (M.D. Fla. Apr. 2, 2014). The Eleventh Circuit recognizes that "[s]ystematic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." Williams at 1292 (quoting United States v. Howell, 231 F.3d 615, 622 (9th Cir. 2000)). Further, "it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an unfavorable recommendation—shift gears before the district judge." Id (quoting Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir.1988)).

The Court finds it inappropriate to consider evidence and arguments presented for the first time in Regions' Objections, and declines to do so. After consideration, the Court denies the Motion for Leave to Submit Unredacted Invoices for In Camera Review. (Dkt. 987).

IV.    Discussion - Regions' Objections

Regions Bank is seeking the award of attorney's fees and costs associated with successfully prosecuting its breach of contract and UCC claims through summary judgment, successfully defending the Kaplan Entities' counterclaims against it, and litigating the issue of attorney's fees. (Dkt. 895).

Regions was represented by Trenam Law ("TL"), and then by Garbett, Allen & Roza, P.A. ("GAR"). Regions initially requested the following amounts for attorney's fees and

costs:

|  | Fees | Costs |
|---|---|---|
| GAR | $1,548,356.56 | $168,052.09 |
| TL | $  101,200.97 | 932.00 |

At the hearing, Regions agreed to subtract the fees associated with Richard Fechter, $71,872.59 from its costs; Regions now seeks to recover $96,179.50 in costs.

The Report and Recommendation (Dkt. 956) recommends the following amounts for attorney's fees and costs:

|  |  |  |
|---|---|---|
| GAR | $604,692.50 | $ 48,089.75 |
| TL | $ 50,600.00 | $   932.00 |

Regions asserts that the recommendation should be rejected in part.

A.    General Principles

Florida has adopted the federal lodestar approach as the foundation for setting reasonable fee amounts. Fla. Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla.1985). This method requires the court to determine a "lodestar figure" by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney. Id, at 1151. See also Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828, 830–35 (Fla.1990)

The fee applicant bears the burden of presenting satisfactory evidence to establish that the requested rate is in accord with the prevailing market rate and that hours are reasonable. Fla. Patient's Compensation Fund v. Rowe, 472 So.2d at 1150-51. In addition, the court itself is an attorneys' fee expert and may consider its own knowledge and experience concerning reasonable and proper fees. Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988).

The Supreme Court has explained:

> **A request for attorney's fees should not result in a second major litigation.** Ideally, of course, litigants will settle the amount of a fee. Where settlement is not possible, the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates The applicant should exercise "billing judgment" with respect to hours worked, ...and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.

Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) (emphasis added).

B.     Reasonable Hourly Rates

Regions asserts that Magistrate Judge Pizzo recommended reducing these rates to the amounts actually charged to Regions, ignoring the alternative fee clause, which was found to be enforceable, and the Court's prior order, which was found to be non-binding. Regions objects to the Report and Recommendation as to recommended reasonable hourly rates, arguing that the Court has already found that the reasonable hourly rates for David Garbett and Joseph D. Perkins are $525 and $310 respectively. (Dkt.815). Regions incorporates by reference the prior Motion for Award of Attorney's Fees and Expenses For Cancelled Depositions and Declaration. (Dkt. 614, 614-1).

The Kaplan Parties respond that the hourly rates set by the Report and Recommendation are reasonable, and are based on the Magistrate Judge's review of the alternative fee clause and the Magistrate Judge's experience and knowledge of prevailing market rates for the type of litigation for which fees are being awarded. The Kaplan Parties assert that Regions' insistence that the rate awarded be the maximum is unfounded in case law, which demands that the Court reach a reasonable hourly rate.

In the Report and Recommendation, Magistrate Judge Pizzo found:

> ...If I were to find Mr. Garbett and his firm's proposed hourly rates reasonable, I would be awarding Regions more in fees than it actually paid.

> To be sure, I am not limited by the contractual fee agreement between Regions and Garbett, Allen & Roza, and am free to award a higher fee than the one the firm actually charged Regions. See First Baptist Church of Cape Coral, Fla. v. Compass Constr., Inc., 115 So.3d 978 (Fla. 1013) (alternative fee clause is valid and enforceable in Florida). But neither am I bound to the Court's prior hourly rate determination. See Thermoset Corp. v. Building Materials Corp. of Am., No. 14-60268-CIV-Cohn/Seltzer, 2016 WL 3944033, at *5 (S.D. Fla. Jan. 15, 2016 (court not required to calculate fees based on claimed hourly rates merely because an alternative fee agreement exists; the fee still must be reasonable) Mr. Garbett and Mr. Perkins are no doubt established, accomplished attorneys who obtained a satisfactory result for Regions. But my job remains to determine their reasonable hourly rate, and I find the rates they request miss that mark. See Norman, 836 F.2d at 1303 (the court itself is an expert).

> Based on the Court's own knowledge as to prevailing hourly rates charged in similar commercial litigation cases in this district, I conclude that the reasonable hourly rates approximate those actually paid by Regions: Mr. Garbett, $435 for work performed up to January 1, 2017, and $485 thereafter; Mr. Perkins, $220 for work performed up to January 1, 2017, and $310 thereafter; Mr.

> Kaskel, $240 for all work; Ms. Herrara, $116.25 for all work, Ms. Guzman, $112.50 for all work performed up to January 1, 2017 and $160 thereafter; Ms. Baskerville, $85 for all work.

(Dkt. 956, pp. 21-22).

The Court notes that "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir.1988). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.' " ACLU v. Barnes, 168 F.3d 423, 437 (11th Cir.1999) (quoting Cullens v. Ga. Dep't of Trans., 29 F.3d 1489, 1494 (11th Cir.1994)). "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437; see also Brooks v. Ga. State Bd. of Elections, 997 F.2d 857, 869 (11th Cir.1993) (upholding decision to award non-local rates based on the district court's finding that there were no local attorneys who could have handled the case); Am. Charities For Reasonable Fundraising Regulation, Inc. v. Pinellas County., 278 F.Supp.2d 1301, 1310 n. 4 (M.D. Fla. 2003).

The burden is on Regions to establish the claimed market rate. GAR argues that other courts in this district have awarded similar or higher rates for comparable counsel in complex litigation in this district. (Dkt. 614-1, pp. 5-6). Although Regions asserts familiarity with the "market in Central Florida for hourly rates for attorney professionals" the cases cited in the declaration (Dkt. 614-1, p. 4) resemble this case only in the general sense that the cases are complex, and the professionals are experienced. The Court has looked for supporting evidence that establishes the rates actually billed and paid in similar lawsuits in Tampa. While In re Dunkin's Diamonds, Inc., 420 B.R. 883 (Bankr. M.D. Fla. 2009) is a Tampa case, the rate of

$500 per hour was approved without objection. The Court further notes that Regions has not made any showing of a lack of local attorneys willing and able to handle this case. Hourly rates which are routinely found to be reasonable in Miami are not necessarily reasonable in Tampa.

The Court notes that there is no objection to the hourly rates of Trenam Law.

After consideration, the Court overrules Regions' objection as to reasonable hourly rates.

C.     Reasonable Hours

In the Report and Recommendation, in determining Regions' entitlement to fees and costs, Magistrate Judge Pizzo found:

> "Additionally, the fee provision is broad enough to include fees associated with Regions's UCC counts, which—along with Regions's defense of the counterclaims asserted against it— are all based on a common core of facts. "Florida law explicitly provides that 'claims arise out of a contract if they are inextricably intertwined with the contract.'"...(citations omitted). Although the UCC counts addressed the Kaplan Entities' failure to fulfill statutory obligations, these claims cannot be separated from the deposit agreements. Regions's damages are for the overdraft amounts it lost pursuant to the contract; in other words, Regions alleged no claim that could exist without the contract.
>
> The Kaplan Entities conceded this at the hearing. They also agreed that Regions's defense of the counterclaims was inextricably intertwined with the deposit agreements....
>
> Regions is entitled to recover its reasonable attorneys' fees and costs associated with its breach of deposit agreement counts, its UCC counts, and its defenses of the counterclaims the Kaplan Parties asserted against it. Regions is not entitled to

its fees and costs incurred in prosecuting the tort claims,
**a point it concedes**. (*Dkt. 956, pp. 8-9). (emphasis added).

1.      Garbett, Allen & Roza, P.A.


Regions objects to Report and Recommendation as to the recommended
reduction of GAR's reasonable hours expended.


After the hearing, Regions submitted a spreadsheet detailing the services
included in the fee application. (Dkt. 948). The total reflects $1,576,308.50 for
attorneys' fees incurred in prosecuting the contract and UCC claims, and
resisting the counterclaim, but excluding services dedicated solely to the tort
claims. Regions asserts that the requested fees include services dedicated
to both the non-tort and tort claims because the core facts are the same, and it
was not possible to separate the time. (Dkt. 982, p. 8).


Regions included the tort claims of conversion, fraudulent concealment,
aiding and abetting, and civil conspiracy in the Second Amended Complaint.
These claims are premised on a different theory than the non-tort claims and involve
different facts, such as :


11.     Kaplan Parties and Smith Advertising & Associates, Inc. ("SAA")
        conducted a massive kiting scheme between a deposit account
        maintained by SAA at Bridgeview Bank in Illinois and Kaplan
        Entities' deposit accounts with Regions as more particularly
        described below. (Dkt. 190).


Regions argues that Magistrate Judge Pizzo noted the detailed spreadsheet,
but concluded he did not have enough time to review the entries to determine
whether the tort services were excluded or whether GAR's entries duplicated any

of Trenam Law.

In the Report and Recommendation, Magistrate Judge Pizzo states:

The invoices from Mr. Garbett's firm span 494 pages (doc. 896-2); Trenam Law's invoices are 83 pages long (doc. 896-5). Mr. Garbett has redacted his firm's invoices so extensively (to omit charges related to trying Regions's unsuccessful tort claims) that it is impossible to verify his total fee request except by adding up each individual entry. Although he filed a spreadsheet after the hearing that contains just the time entries for which Regions seeks reimbursement, it is 295 pages long (doc. 948-1). Without a massive expenditure of time, I cannot figure out how Mr. Garbett arrived at his final lodestar figure, whether he accurately excluded entries (or portions of entries) related to Regions's tort claims, or whether multiple attorneys billed for the same task (either with Garbett, Allen & Roza or between that firm and Trenam Law).

Neither the invoices, the declarations, nor the spreadsheet summarizes the hours expended by the nature of the activity or stage of the case or the amount of time each attorney spent during that particular stage. The Court in Norman, 836 F.2d 1292 suggests such a format, noting that courts are often faced with inadequate fee applications. But aside from promoting this workable format, Norman teaches two other points. See Regions Bank v. Hyman, 2013 WL 12166237 at *2 n.1 (M.D. Fla. Aug. 26, 2013). Even if the fee petition lacks support, "the court is not relieved of its obligation to award a reasonable fee," assuming an award is appropriate. Id. (quoting Norman, 836 F.2d at 1303). And, the district court should be mindful of its neutrality and not depart from that position by coaching either party on the proper preparation of their pleadings. Id.

...To a large degree, however, this case evades the application of Norman....the burden is on Regions at this stage, and at bottom the format of Regions's fee petition makes my task much more difficult. "Where the fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994). "[I]t is sufficient for the court to provide a concise by clear explanation of its reasons for the reduction." Id. A court is permitted to make an across-the-board percentage cut in the number of hours claimed or in the final lodestar figure,

12

> so long as the court "concisely but clearly articulates their reasons for selecting specific percentage reductions." Id.

Dkt. 956, pp.11-12).

In Dillard v. City of Greensboro, 213 F.3d 1347, 1355 n. 9 (11th Cir. 2000), the Eleventh Circuit observed:

> "The district court adjusted the fee "above the line" by reducing the number of hours by 30% across the board before calculating the lodestar. In the end, of course, the result is the same whether you adjust the fee itself or the number of hours spent, and the Supreme Court has approved both approaches. See Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success.")

In this case, after calculating the lodestar, Magistrate Judge Pizzo made no further adjustments, due to the reduction in the reasonable number of hours billed. (Dkt. 956, p. 23). As to the tort claims, Magistrate Judge Pizzo reduced each timekeeper's hours by the amount of time spent on the tort claims, as indicated by the supplemental filing of the Kaplan entities. (Dkt. 953, p. 3; Dkt. 954).

a.     GAR - Tort Claims

Regions argues that Magistrate Judge Pizzo was in error in excluding 268 hours from the total of 4377.10 hours to account for services related to the tort claims for which Regions was not the prevailing party, and then recommending additional across-the-board reductions. Bivins v. Wrap It Up, Inc., 548 F.3d 1348 (11th Cir. 2008)("[I]n arriving at the lodestar, the district court conducted both an hour-by-hour analysis *and* applied an across-the-board

reduction of the requested compensable hours. Our circuit's precedent states that the district court is to apply either method, not both").

Regions also objects to the exclusion of any fees for entries mentioning kiting, because although kiting was related to the tort claims, kiting was also an affirmative defense to the negligence/negligent misrepresentation counterclaim asserted by the Kaplan Entities.

The Kaplan Entities respond that Regions has misconstrued the procedure undertaken by the Magistrate Judge. The Kaplan Parties rely on Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994)("Rather, once the district court determines how many hours were actually devoted to the conduct of the federal litigation, it may then reduce that figure in gross if a review of the resubmitted fee request warrants such a reduction"). In Loranger, the movant submitted a voluminous fee application requesting more than 2700 hours of time spent, where the actual time spent litigating the Federal action at issue was considerably less. The Kaplan Entities argue:

> Once the court reduced the compensable time by eliminating non-compensable entries, the Court was then permitted to engage in further percentage reductions (rather than hour-by-hour analysis as proposed by Regions) to reach a reasonable fee award. Id. at 783. That is precisely what the Magistrate Judge did here. It was undisputed by Regions that the [time] spent litigating the tort claims [was] not compensable, and Regions heavily redacted a large portion of the submitted time entries to omit entries that it deemed to be devoted to prosecution of those claims."
> (Dkt. 989, p. 3)

The Kaplan Entities marked a number of additional entries that they contended should have been omitted from the fee award as they too concerned the tort claims exclusively. (Dkt. 954). In the Report and Recommendation, Magistrate Judge Pizzo agreed and

omitted those entries.

The Kaplan Parties argue that this was not a prohibited combination of hour-by-hour analysis with a percentage reduction; it acknowledged a point that Regions had conceded: billing entries related solely to tort claims are categorically non-compensable. The Kaplan Parties argue that Magistrate Judge Pizzo then reviewed the remaining categories of expended hours and made across-the-board reductions to each category because many of the hours expended necessarily involved some non-compensable work, but it was either a waste of judicial resources to separate from the compensable hours, or the time spent was otherwise excessive for that particular category. The Kaplan Parties further argue that Magistrate Judge Pizzo provided clear and concise reasons for each of the reductions, keeping in mind the complexity of the case and limitations in scope for the compensable time, which was limited to Regions' statutory claims and defenses to the Kaplan Entities' negligence defenses and counterclaim. The Report and Recommendation recommended that the time requested by GAR be reduced from 4,368.40 hours to 2,161.20 hours, consistent with its discretionary ability under Loranger.

In the Declaration, GAR explains the methodology for the hours included in the fee petition:

> I have reviewed the Final Statements for services rendered or prebills if Final Statements were not yet available in order to determine the attorney's fees, costs and expenses for services relating to (a) the prosecution of the claims for breach of the governing agreements (the Deposit Agreement and Funds Transfer Agreement ("FTA") and the UCC claims; (b) defending against the initial and Amended Counterclaim/ Crossclaim; and (c) preparing this motion (collectively "Included Services"). On April 18, 2016, the Court entered Orders disposing of motions for summary judgment, the effect of which was to grant summary judgment to Regions on its

contract and UCC claims and to dismiss the negligence/
negligent misrepresentation claim against Regions
in the Amended Counterclaim/Crossclaim . This left
the remaining tort claims for trial. In reviewing the billing
data, I endeavored to eliminate entries and time (a)
solely dedicated to prosecuting the tort claims; and
(b) occurring after the Court entered the summary judgment-
related orders on April 18, 2016 because the remaining claims
for trial were tort claims for which Regions is not seeking
reimbursement of fees, costs and expenses through
this motion (collectively, "Excluded Services"), unless
the post-April 18, 2016 entries relate to the UCC and
contract claims, defending against the Counterclaim/
Crossclaim, or preparation of this motion, in which case
I included the entry in Included Services. If an entry
included both Included Services and Excluded Services,
but I could not parse out one from the other, I included
the entry. There are some entries that have both
Included Services and Excluded Services and the
delineation is clear. If so, I included only the
Included Services and excluded the Excluded Services.
I also caused redactions of entries constituting
work-product or attorney-client privileged communications.
(Dkt. 896-1, pp. 4-5).

The undersigned has reviewed the Supplemental Memorandum
(Dkt. 953) and Notice of Filing in Support of Supplemental Memorandum (Dkt. 954,
color coded , 497 pages)(yellow = tort-related, excludable; purple = summary
judgment, not tort-related only, partially excludable; green = trial preparation
(January, 2016 to May, 2016), tort-related, excludable; blue = sanctions-related).

Magistrate Judge Pizzo excluded  the hours as related to the unsuccessful
tort claims. (Dkt. 956, p. 14).

As noted above, the tort claims involve a different core of facts than the
contract and  UCC claim.   In the response to Kaplan Parties' Motion for Summary

Judgment, Regions argued that the conduct of the Kaplan Parties "went well beyond mere breach of contract." (Dkt. 576, p. 15). The Court found:

> Under Florida law, when there is some wrongful conduct
> which amounts to an independent tort in addition to the
> conduct resulting in a contractual breach, a tort claim
> can be appropriate...The facts in this case, which include
> an alleged check kiting scheme, multiple entities, multiple
> bank accounts, and intentional manipulation of the check
> collection process, with intent to defraud Regions, are
> beyond a breach of contract action for nonpayment of overdrafts.

(Dkt. 654, pp. 25-27).

In other unusual cases, the Court has found it necessary to make both types of reductions. See, e..g., American Charities For Reasonable Fundraising Regulation, Inc. v. Pinellas County, 278 F.Supp.2d 1301, 1323 (M.D. Fla. 2003). After consideration, the Court overrules Regions' objection as to this issue.

b       GAR - Summary Judgment

Regions further objects to the recommendation of an across-the-board reduction in connection with Regions' Motion for Summary Judgment. In the Report and Recommendation, Magistrate Judge Pizzo states that "Regions moved for summary judgment on all of its 32 counts and prevailed on 16 of them." Regions argues that the Court should not adopt the recommendation as to this issue, because Regions only sought summary judgment on the contract and the UCC claims, not on the tort claims. (Dkt. 543).

The Kaplan Parties respond that Regions' objection that the Report and Recommendation incorrectly reduced categories of awards for work for tort and non-

tort claims should be overruled. The Kaplan Parties argue that the substance of Regions' compensable claims and defenses was almost exclusively that the Kaplan Entities had bank accounts with Regions that became overdrawn after a series of outgoing wires and returned checks hit the accounts, and whether Regions was negligent in allowing multi-million dollar wires to leave the accounts without confirming that actual funds were in the accounts to support the outgoing wires. However, the non-compensable claims operated around a different core of facts, which included facts such as Marvin Kaplan and the Kaplan Entities were conspirators in a multi-million dollar check kiting scheme that ended with Smith Advertising & Associates, Inc. absconding with millions of dollars Regions' money. The Kaplan Parties argue that the Report and Recommendation correctly determined that these two sets of facts, while relating to the same people and subject matter, involved entirely different cores of facts and therefore percentage-based cuts to the categories of billing records were appropriate where the billing entries themselves did not clearly differentiate between the claims, and after the Magistrate Judge clearly held that an hour-by-hour review would be a waste of judicial resources.

The Court notes that Regions did not move for summary judgment on the tort claims. (Dkt. 543). However, the Kaplan Entities moved for summary judgment on the tort claims, (Dkt. 553, pp. 10-2), to which Regions filed a response (Dkt. 576). The Court granted in part and denied in part the Motion for Summary Judgment on the tort claims. (Dkt. 654).

Magistrate Judge Pizzo determined that a 50% reduction of summary-judgment related time entries was reasonable considering the relative success that Regions achieved at the summary-judgment stage, reducing the total hours by an additional 166.35 hours. (Dkt. 956, p. 16).

The Court has found that the tort claims involve a different core of facts than the contract and UCC claims. After consideration, the Court overrules Regions' objection as to this issue.

c.    GAR - Trial Preparation

Regions further objects to the recommendation of an across-the-board reduction as to trial preparation.    Regions argues that the contract and UCC claims, the negligence/negligent misrepresentation counterclaims, and the tort claims are inextricably intertwined as the claims are based on a common core of facts, and the time necessary to prepare for trial could not be separated. Regions argues that where the services are discrete, such as the trial, Regions excluded those time entries.

Magistrate Judge Pizzo noted that the purple-highlighted entries are trial-related, and, after reviewing the entries, found that the attorneys' and paralegals' block descriptions of their time did not permit him to separate hours spent preparing for the trial of Regions' contract and UCC claims (live claims until the April 2016 summary judgment Order) from hours spent preparing for the trial of its tort claims. Magistrate Judge Pizzo applied a 50% reduction of time from 999 hours to 499.5 hours.

The Court has found that the tort claims involve a different core of facts than the contract and UCC claims. The tort claims are not inextricably intertwined with the contract and UCC claims.    After consideration, the Court overrules Regions' objections as to this issue.

d.    GAR - Discovery

Regions further objects to the recommendation of an across-the-board reduction for the discovery phase.   Regions argues that discovery started in 2012, but Regions did not assert the tort claims until November 21, 2013.  (Dkt. 190). Regions argues that Magistrate Judge Pizzo's statement that a "significant portion of Regions' effort during the discovery phase was spent chasing its fraud and conspiracy theories" is not supported by citation to specific entries.  Further, Magistrate Judge Pizzo noted the counterclaim "broadened the scope of discoverable information and demanded Regions' attention."  (Dkt. 956, p. 18).

Regions again objects to the elimination of any entry mentioning kiting as solely related to unsuccessful tort claims, because Regions was entitled to gather evidence relating to its affirmative defense that the Kaplan Entities and Kaplan were involved in kiting, using the accounts for illegal purposes.  (Dkt. 388, pp. 39-40).

Regions objects that Magistrate Judge Pizzo's attempt to minimize this case to four days of simple money exchange transactions is unfair and not reflective of the complexity of the case, in light of the fact that the trial, which involved the same common core of facts in the UCC and contract claims and the negligence/ negligent misrepresentation counterclaim, lasted over three weeks.

The Kaplan Parties argued that all hours within the time period (December 2012 to October 2015) (2440.5 hours; all entries minus hours already  deducted as related to the tort claims.) should be reduced by 60%.

Magistrate Judge Pizzo found:

> Although impossible to parse from the invoices, a reasonable conclusion is that a significant portion of Regions's effort during the discovery phase was spent chasing its fraud and conspiracy theories. My review of the invoices also convinces me that Regions billed for time spent reviewing other parties' filings and formulating a joint strategy with them. Some amount of this is expected in a case involving as many parties and claims, counterclaims, and cross-claims as this one, but some of these hours are unnecessary and redundant. Much of Regions's effort during discovery (other than those clearly related to Regions's tort claims), however, also corresponds to the Kaplan Parties' counterclaims, which broadened the scope of discoverable information and demanded Regions's attention. (Dkt. 956, pp. 17-18).

Magistrate Judge Pizzo reduced the hours by 50%, from 2440.5 to 1220.25.

After consideration, the Court overrules the objections as to this issue.

2.    Trenam Law

Regions objects to the recommended 50% reduction to the hours reasonably expended by TL, solely because the invoices were redacted in part. Regions argues that the invoices include redactions to avoid disclosure of work-product and attorney-client privilege, the Kaplan Entities did not move to compel the un-redacted versions, and the Magistrate Judge did not ask for the un-redacted versions for *in camera* review, which Regions would have immediately done. Regions contends there is no basis for the recommended disposition; Regions will submit the un-redacted invoices to the Court for *in camera* review.

The Kaplan Parties respond that courts routinely hold that heavily redacted entries are non-compensable or otherwise will subject the fee application to a reduction.

In the Report and Recommendation, Magistrate Judge Pizzo noted that some of TL's hours (January, 2012 through October, 2012) appear redundant of time billed by GAR, whose representation began in July, 2012. Further, TL's invoices are heavily redacted, rendering it impossible to determine if the invoices are for compensable services under the deposit agreements. Magistrate Judge Pizzo could not determine "what the lawyers were researching, why they were conferencing, the topics of their numerous telephone conferences, or what they were analyzing or reviewing." (Dkt. 956, p. 19).

The burden is on Regions to establish that the hours expended were reasonable. The Court has denied Regions' post-Report and Recommendation Motion for leave to submit the unredacted invoices for *in camera* review.

After consideration, the Court overrules Regions' objection as to the recommended 50% reduction of TL's reasonable number of hours expended.

D.     Costs

Regions objects to the recommended 50% reduction of GAR's expenses, which is based solely on the Kaplan Entities' assertion that the expenses "seem too high," without any specific objection, and, as to travel, is contrary to the Court's ruling that this case was complex enough to warrant two attorneys at depositions. Regions argues that Regions "detailed with specificity the breakdown of the expenses and also provided supporting invoices." (Dkt. 895 at 22; Dkt. 896, par. 15 and Composite Exhibits A and B).

Regions argues that it had the burden of establishing its entitlement to recover expenses and detailing the amounts, and the Kaplan Entities then had the burden of challenging specific items. Peller v. KVH Indus., Inc., 2014

Case No. 8:12-CV-1837-T-17MAP

WL 12617558 at *2 (M.D. Fla. 2014).

The Kaplan Entities respond that other courts have rejected similar requests for costs due to lack of documentation. (Dkt. 989, p. 6). The Kaplan Parties argue that Magistrate Judge Pizzo independently determined that Regions' proposed costs were insufficiently substantiated, and were excessive.

In the Report and Recommendation, Magistrate Judge Pizzo states:

> This reduction is especially appropriate because the documentation supporting Regions's significant costs is scant. Mr. Garbett's declaration lists his firm's costs by category, and he attaches a spreadsheet that includes invoice dates and amounts. I cannot verify that these amounts correspond to the claims on which Regions prevailed, however, because there are no supporting documents. (Dkt. 956, p. 24).

Magistrate Judge Pizzo encountered the same problem as to costs that confronted Magistrate Judge Pizzo as to the attorney's fees, which is that there is no correlation linking the costs to the prosecution of the claims on which Regions was successful, and is entitled to the award of fees and costs. Magistrate Judge Pizzo therefore elected to use an across-the-board reduction.

After consideration, the Court overrules the objection as to this issue. Accordingly it is

**ORDERED** that the Corrected Objections of Regions Bank (Dkt. 982) are **overruled**, and the Report and Recommendation (Dkt. 956) is **adopted** and incorporated by reference; it is further

**ORDERED** that the Motion for Supplemental Final Judgment Awarding Fees, Costs and Expenses Against Kaplan Parties (Dkt. 895) is **granted in part and denied in part**; it is further

**ORDERED** that the First Motion to Bifurcate Entitlement to Fees and Costs (Dkt. 914) is **denied**; it is further

**ORDERED** that the Motion for Leave to Submit Unredacted Invoices for *In Camera* Review (Dkt. 987) is **denied**; it is further

**ORDERED** that the Motion for Leave to File Reply in Support of Regions Bank's Corrected Objections to Report and Recommendation (Dkt. 994) is **denied as moot.** It is further

**ORDERED** that Regions Bank **shall submit** a proposed **Amended Final Judgment** within fourteen days.

**DONE and ORDERED** in Chambers in Tampa, Florida on this 29th day of March, 2019.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies to:

All parties and counsel of record